**No. 22-55342**

In the

# United States Court of Appeals
## For the Ninth Circuit

_____

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee,*

v.

APEX CAPITAL GROUP, LLC, a Wyoming limited liability company, *et al.,*

*Defendants-Appellees.*

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., proposed Intervenors,

*Movants-Appellants,*

_____

THOMAS W. MCNAMARA,

*Receiver-Appellee.*

_____

On Appeal from the United States District Court
for the Central District of California
The Honorable John F. Walter
Case No. 2:18-cv-09573-JFW-JPR

_____

**OPENING BRIEF OF APPELLANTS WELLS FARGO & COMPANY AND
WELLS FARGO BANK, N.A.**

_____

*(Counsel listed on following page)*

_____

August 10, 2022

Kevin M. Lally
MCGUIREWOODS LLP
355 South Grant Avenue
Suite 4200
Los Angeles, CA 90071
T: (213) 457-9862
klally@mcguirewoods.com

David C. Powell
Alicia A. Baiardo
MCGUIREWOODS LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
T: (415) 844-9944
dpowell@mcguirewoods.com
abaiardo@mcguirewoods.com

Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1000
bschmalzbach@mcguirewoods.com

*Counsel for Movants-Appellants Wells Fargo & Co.*
*and Wells Fargo Bank, N.A.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Wells Fargo & Company and Wells Fargo Bank, N.A. state that:

1.  Wells Fargo Bank is a national banking association organized under the laws of the United States and is a wholly-owned subsidiary of Wells Fargo & Company.

2.  Wells Fargo & Company is the parent corporation of Wells Fargo Bank, N.A. Wells Fargo & Company is a publicly traded corporation organized under the laws of Delaware. No other publicly held corporation owns 10% of Wells Fargo's stock.

Dated: August 10, 2022    */s/ Brian D. Schmalzbach*
        Brian D. Schmalzbach

        *Counsel for Movants-Appellants*
        *Wells Fargo & Company and Wells Fargo Bank, N.A.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................1

JURISDICTIONAL STATEMENT ....................................................2

ISSUES PRESENTED........................................................................3

STATEMENT OF THE CASE............................................................4

I.     The FTC brings an enforcement action against principal Defendants. ..........4

     A.     The claims against Apex for fraud and credit card laundering. ...........4

     B.     Wells Fargo's role as third-party witness...............................................6

     C.     The *Apex* Defendants settle for over $100 million. ............................7

II.     The district court modifies the Stipulated Settlements to extend the receivership and allow for a suit against Wells Fargo....................................8

III.     The Supreme Court holds Section 13(b) never permitted recovery of equitable monetary relief. ............................................................10

IV.     The Receiver exercises his purported authority to sue Wells Fargo for money damages. ...................................................................13

V.     Wells Fargo timely secures material, under-seal documents. .....................14

VI.     The district court denies Wells Fargo's motion to intervene. ......................15

SUMMARY OF ARGUMENT ..........................................................18

STANDARDS OF REVIEW ...............................................................20

ARGUMENT ......................................................................................21

I.     Wells Fargo has Article III standing to intervene. .....................................21

     A.     The district court erred in disregarding Wells Fargo's injury of being subjected to a Receiver unlawfully appointed specifically to sue Wells Fargo based upon the Judgments. ...................................21

     B.     Wells Fargo's injury is redressable. .....................................................23

II.     Wells Fargo is entitled to intervene as of right............................................27

     A.     Wells Fargo has a significant protectable interest. .............................28

     B.     Wells Fargo cannot protect its interests without intervening.............30

     C.     Wells Fargo timely moved to intervene. .............................................31

1.      Wells Fargo could not intervene in 2020 before *AMG Capital* was decided or suit was filed against it. ....................33

2.      Wells Fargo could not intervene in July 2021 when the Wells Fargo Litigation was filed or when the SIA Transact Pro Defendants sought to amend their monetary judgment one day later............................................................36

3.      The district court's finding that the case is closed as to the Receivership and Wells Fargo is clearly erroneous...........39

D.      No existing party adequately protects Wells Fargo's interests.........42

III.    The district court abused its discretion in denying permissive intervention. ...................................................................43

CONCLUSION ....................................................................43

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMG Capital Management, LLC v. Federal Trade Commission*,
  141 S. Ct. 1341 (2021).................................................................*passim*

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*,
  712 F.3d 1349 (9th Cir. 2013) ...........................................................20

*Chavez v. PVH Corp.*,
  2014 WL 6617142 (N.D. Cal. Nov. 20, 2014) ...................................32

*Ciesniewski v. Aries Cap. Partners, Inc.*,
  No. 1:16-CV-817-WTL-TAB,
  2018 WL 4491211 (S.D. Ind. Sept. 19, 2018)..............................22, 29

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ...........................................3, 20, 28, 42

*Donnelly v. Glickman*,
  159 F.3d 405 (9th Cir. 1998) ...........................................................20

*Engelson v. Burlington N. R.R. Co.*,
  972 F.2d 1038 (9th Cir. 1992) ..........................................................20

*Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*,
  548 F.3d 1184 (9th Cir. 2008) ..........................................................24

*FTC v. AMG Cap.*,
  910 F.3d 417 (9th Cir. 2018) ......................................................34, 35

*FTC v. AMG Cap. Mgmt., LLC*,
  998 F.3d 897 (9th Cir. 2021) ............................................................11

*FTC v. Figgie Intern., Inc.*,
  994 F.2d 595 (9th Cir. 1993) ......................................................11, 26

*FTC v. Gem Merch. Corp.*,
  87 F.3d 466 (11th Cir. 1996) ......................................................11, 26

iv

*FTC v. Hoyal & Assocs., Inc.*,
   859 F. App'x 117 (9th Cir. 2021) ........................................................11

*FTC v. Ivy Cap., Inc.*,
   340 F.R.D. 602 (D. Nev. 2022) .........................................................39

*FTC v. Noland*,
   No. CV-20-00047-PHX-DWL,
   2021 WL 4318466 (D. Ariz. Sept. 23, 2021) ....................................29

*FTC v. Publishers Bus. Servs., Inc.*,
   849 F. App'x 700 (9th Cir. 2021) .................................................11, 12

*FTC v. Triangle Media Corp., et al.*,
   No. 3:18-cv-01388-LAB-WVG (S.D. Cal. filed June 25, 2018) ......14

*FTC v. U.S. Oil & Gas Corp.*,
   748 F.2d 1431 (11th Cir. 1984) ...........................................................5

*FTC v. VPL Med., Inc.*,
   846 F. App'x 561 (9th Cir. 2021) ......................................................12

*Idaho Farm Bureau Fed'n v. Babbitt*,
   58 F.3d 1392 (9th Cir. 1995) .............................................................23

*Juliana v. U.S.*,
   947 F.3d 1159 (9th Cir. 2020) ..........................................................24

*Kalbers v. U.S.*,
   22 F.4th 816 (9th Cir. 2021) .............................................................35

*Koon v. U.S.*,
   518 U.S. 81 (1996) ............................................................................20

*Lujan v. Defs. Of Wildlife*,
   504 U.S. 555 (1992) ..........................................................................24

*Made in the USA v. U.S.*,
   242 F.3d 1300 (11th Cir. 2001) ........................................................24

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .....................................................20, 24

*McNamara v. Wells Fargo, et al.*,
 No. 3:21-cv-1245-LAB (S.D. Cal. filed July 8, 2021) ................................13, 14

*McCraner v. Wells Fargo, et al.*,
 No. 3:21-cv-1246-LAB (S.D. Cal. filed July 8, 2021) ......................................13

*Mullis v. U.S. Bankr. Court for Dist. of Nev.*,
 828 F.2d 1385 (9th Cir. 1987) ...............................................................1, 27, 30

*Ord v. U.S.*,
 8 F. App'x 852 (9th Cir. 2001) ...........................................................................30

*Perry v. Schwarzenegger*,
 630 F.3d 898 (9th Cir. 2011) ..............................................................................27

*Scholes v. Tomlinson*,
 No. 89 C 8407, 1991 WL 152062 (N.D. Ill. July 29, 1991)..............................25

*Smith v. Los Angeles Unified Sch. Dist.*,
 830 F.3d 843 (9th Cir. 2016) ...........................................................19, 32, 33, 38

*Smith v. Pangilinan*,
 651 F.2d 1320 (9th Cir. 1981) ............................................................................43

*So. Cal. Edison Co. v. Lynch*,
 307 F.3d 794, *modified on other grounds*, 353 F.3d 648 (9th Cir. 2003) ..........28

*Sw. Ctr. for Biological Diversity v. Berg*,
 268 F.3d 810 (9th Cir. 2001) ..............................................................................28

*TransUnion LLC v. Ramirez*,
 141 S. Ct. 2190 (2021)........................................................................................21

*U.S. v. Alisal Water Corp.*,
 370 F.3d 915 (9th Cir. 2004) ..............................................................................28

*U.S. v. Oregon*,
 745 F.2d 550 (9th Cir. 1984) ..............................................................................32

*U.S. v. Palomar-Santiago*,
 141 S. Ct. 1615 (2021)........................................................................................30

*Venegas v. Skaggs*,
  867 F.2d 527 (9th Cir. 1989) ............................................................20

*W. Watersheds Project v. Haaland*,
  22 F.4th 828 (9th Cir. 2022) ....................................................37, 38

*Warth v. Seldin*,
  422 U.S. 490 (1975)............................................................................24

*Wilderness Soc. v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ...........................................................28

*Yniguez v. Arizona*,
  939 F.2d 727 (9th Cir. 1991) ........................................................22, 29

**Statutes**

15 U.S.C. § 45(a) ................................................................................2, 4

15 U.S.C. § 53(b) ...............................................................................2, 5

15 U.S.C. § 57b.................................................................2, 5, 11, 26

15 U.S.C. § 1693e(a) ..........................................................................2, 4

15 U.S.C. §§ 8401–04 .............................................................................4

15 U.S.C. § 8404(a) .................................................................................2

25 U.S.C. § 45(a)(2).............................................................................41

28 U.S.C. § 1291 ......................................................................................3

28 U.S.C. § 1331 ......................................................................................2

28 U.S.C. § 1337(a) .................................................................................2

28 U.S.C. § 1345 ......................................................................................2

28 U.S.C. § 1651 ......................................................................................5

**Rules**

Fed. R. App. P. 4(a)(1)(A) ........................................................................3

**Other Authorities**

Complaint, *McNamara v. Wells Fargo*,
    No. 3:21-cv-1245-LAB (S.D. Cal. July 8, 2021), Dkt. 1 ...................................14

Monitor's Final Report and Accounting, *FTC v. AMG Servs., Inc.*,
    No. 2:12-cv-00536-GMN-VCF (D. Nev. Nov. 23, 2021), Dkt. 1364...............35

Order, *FTC v. Cardiff*,
    No. 5:18-cv-02104-DMG-PLA (C.D. Cal. June 29, 2021), Dkt. 627 ...............13

Second Amended Order, *FTC v. AMG Servs., Inc.*,
    No. 2:12-cv-00536-GMN-VCF (D. Nev. Sept. 3, 2021), Dkt. 1338 ................12

Status Report, *FTC v. AMG Servs., Inc.*,
    No. 2:12-cv-00536-GMN-VCF (D. Nev. July 7, 2021), Dkt. 1333 ...................12

## INTRODUCTION

This appeal boils down to whether the target of an unlawfully appointed receiver may have its day in court to challenge the unlawful appointment orders. The district court appointed a federal equity receiver to pursue monetary claims against appellant Wells Fargo based on Section 13(b) of the Federal Trade Commission Act ("FTC Act"). But in *AMG Capital Management, LLC v. Federal Trade Commission*, 141 S. Ct. 1341 (2021), the Supreme Court demolished that cornerstone of the appointment orders by holding that Section 13(b) does not authorize monetary relief. When Wells Fargo moved to intervene to challenge the appointment orders under *AMG Capital*, the district court effectively barred the courthouse door and rendered *AMG Capital* a dead letter here. This Court should reverse that denial of Wells Fargo's motion to intervene and allow Wells Fargo to prove that the receiver's aggressive litigation campaign against it is unlawful, root and branch.

That exclusion is especially pernicious because Wells Fargo cannot challenge the receiver's appointment elsewhere. This Court's precedent requires Wells Fargo to seek redress from the appointment orders in *this* case—in which those orders issued. *See Mullis v. U.S. Bankr. Court for Dist. of Nev.*, 828 F.2d 1385, 1393 (9th Cir. 1987) ("[C]ollateral attacks on the judgments, orders, decrees or decisions of federal courts are improper"). So even though Wells Fargo is subject to separate lawsuits seeking nine figures in damages, Wells Fargo must challenge the receiver's

appointment here. The district court's refusal to let Wells Fargo intervene created a catch-22 that no litigant should be subjected to.

None of the district court's rationales for excluding Wells Fargo has merit. First, Wells Fargo has Article III standing because the appointment orders directed an aggressive litigation campaign at Wells Fargo in particular. Second, Wells Fargo timely moved to intervene once it completed the conference process required by local rules and learned that the existing parties were hostile to its interests. Third, the collateral attack doctrine means that Wells Fargo cannot challenge the appointment orders in other district court proceedings. And since Wells Fargo satisfied all the requirements for intervention here, the district court's ruling effectively foreclosed Wells Fargo from challenging the receiver's unlawful appointment anywhere. For these reasons and those below, this Court should reverse the district court.

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, as this is an action brought by the Federal Trade Commission under 15 U.S.C. §§ 45(a), 53(b), and 57b (FTC Act); 15 U.S.C. § 8404(a) (Restore Online Shoppers' Confidence Act ("ROSCA")); and 15 U.S.C. § 1693e(a) (Electronic Fund Transfer Act ("EFTA")). 3-ER-301–47.

The district court denied Wells Fargo's motion to intervene on March 10, 2022. 1-ER-3–9. Wells Fargo timely noticed this appeal on March 31, 2022. 5-ER-985–96; *see* Fed. R. App. P. 4(a)(1)(A).

This Court has jurisdiction because the denial of a motion to intervene as of right is a final appealable order. *See* 28 U.S.C. § 1291; *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 896 (9th Cir. 2011). This Court has jurisdiction over the denial of Wells Fargo's motion for permissive intervention because the denial was an abuse of discretion. *Id.*

## ISSUES PRESENTED

I. Whether Wells Fargo has Article III standing to challenge an order that unlawfully deputized a receiver to pursue monetary damages against Wells Fargo based on a conception of injunctive powers under Section 13(b) of the FTC Act that the Supreme Court overruled in *AMG Capital*.

II. Whether Wells Fargo has a right to intervene under Rule 24(a) to challenge the receiver's unlawful appointment where: (A) Wells Fargo has a significant protectable interest in freeing itself from the litigation campaign by an unlawfully appointed receiver; (B) Wells Fargo cannot protect that interest absent intervention because this Court's collateral attack doctrine requires challenging that appointment order in the case in which it was issued; (C) Wells Fargo timely moved to intervene as soon as it knew that its interests were not protected by the parties and local rules

allowed; and (D) it is undisputed that the existing parties now do not protect Wells Fargo's interests.

III.   Whether the district court abused its discretion in denying permissive intervention under Rule 24(b) based on the same legal errors that led it to deny intervention as of right.

### STATEMENT OF THE CASE

## I.   The FTC brings an enforcement action against principal Defendants.

### A.   The claims against Apex for fraud and credit card laundering.

On November 14, 2018, the Federal Trade Commission ("FTC") brought an enforcement action against Defendants Apex Capital Group, LLC, its principal owners Phillip Peikos ("Peikos") and David Barnett ("Barnett"), and 11 of its affiliated entities ("Corporate Defendants"; collectively, "Defendants"). 5-ER-946–84. The Complaint charged the Defendants with conducting a multi-tiered, multi-million-dollar fraud and credit card laundering scheme originating in early 2014 that centered on the use of deceptive acts or practices in the sale of a wide array of products. 5-ER-948–49. It alleged five separate violations of the FTC Act, 15 U.S.C. § 45(a), a single violation of the Restore Online Confidence Act ("ROSCA"), 15 U.S.C. §§ 8401–04, and a single violation of the Electronic Fund Transfer Act, 15 U.S.C. § 1693e(a). 5-ER-973–80. The Complaint sought both equitable and statutory relief, including disgorgement, restitution, and sales refunds under Section 13(b), 15

U.S.C. § 53(b), and consumer redress under Section 19. 5-ER-980–81.

Upon filing the Complaint, the FTC moved *ex parte* and under seal for a temporary restraining order ("TRO"), an asset freeze, and the appointment of a temporary receiver (among other things). 5-ER-805–06. In seeking the appointment of a receiver, the FTC advised the Court that Section 13(b) provides district courts with authority to grant permanent injunctions and "any ancillary relief necessary to accomplish complete justice . . . including a non-noticed TRO, a preliminary injunction, an asset freeze and the appointment of a receiver." 5-ER-781–82, 799. In doing so it cited a Section 13(b) case, *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432 (11th Cir. 1984), as support for the Court's equitable authority to appoint a receiver. 5-ER-781–82, 799. The FTC separately cited Section 19 as providing district courts with the more limited authority of granting asset freezes and preliminary injunctions to preserve resources for consumer redress. 5-ER-781–82.

In a sealed order, the district court granted the TRO, finding generally that the "Court has authority to issue this Order pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b; Federal Rule of Civil Procedure 65, and the All Writs Act, 28 U.S.C. § 1651," without tying any particular mandates of the order—including appointment of the receiver—to any specific source of statutory authority. 4-ER-653 (citing "[g]ood cause" for appointment of Thomas McNamara as Receiver). The TRO set forth the scope, duties and authority of the Receiver—terms

that have since remained substantively unchanged. 4-ER-667–79; 3-ER-438–50, 3-ER-365–76. The district court asserted "exclusive jurisdiction" over the Receivership's assets and designated the Receiver to serve "solely" as "the agent of this Court" with "the full powers of an equity receiver." 3-ER-365–66, 373. The district court further empowered the Receiver to pursue monetary relief by "su[ing] for, collect[ing], and receiv[ing] all Assets of the Receivership Entities . . ." and by "institut[ing . . .] or otherwise becom[ing] party to any legal action . . . to preserve or recover the Assets of the Receivership Entities, or to carry[ing] out the Receiver's mandate under this Order, including but not limited to, actions challenging fraudulent or voidable transfers." 3-ER-366, 368–69.

In December 2018, Peikos, Barnett and the Corporate Defendants stipulated to entry of a preliminary injunction. 4-ER-573, 4-ER-498. These orders contained language mirroring the TRO and extended the Receivership under the same terms in the TRO. 3-ER-438–50; 3-ER-365–76. In May 2019, the FTC charged two new defendants, SIA Transact Pro and Mark Moskvins, with violations of the FTC Act.[1] 3-ER-339–41.

### B.    Wells Fargo's role as third-party witness.

Neither the FTC's Complaint nor the First Amended Complaint ascribes any involvement in, or knowledge of, wrongdoing by Wells Fargo or its employees.

---

[1] The Receivership was never modified to include these two defendants. 2-ER-187.

Instead, Wells Fargo's limited involvement in the *Apex* proceedings was as a cooperative, third-party corporate witness that complied with Court processes by freezing accounts and providing information relating to select accounts opened by Defendants. As a non-party, Wells Fargo was not served with court filings.

### C.    The *Apex* Defendants settle for over $100 million.

On September 11, 2019, the district court entered separate stipulated orders for a permanent injunction and monetary judgment between the FTC and Peikos and the Corporate Defendants and between the FTC and Barnett (collectively, "Stipulated Settlements"). 3-ER-266–300, 2-ER-221–62. The Stipulated Settlements include awards of equitable monetary relief that were untethered to any one of the specific statutory violations alleged in the Complaint. 3-ER-267, 287–90; 2-ER-222, 242–48 (identifying monetary judgments of $47,300,000 imposed independently against Barnett, as "equitable monetary relief; $60,300,000, imposed jointly and severally among Peikos and the Corporate Defendants). These monetary judgments/"equitable monetary relief" were to be used for restitution, consumer redress, and disgorgement. 3-ER-266, 287–89; 2-ER-221, 242–48. In the Stipulated Settlements, the FTC agreed to suspend the monetary judgments that had been imposed after the FTC collected a small fraction of the judgments from Defendants. The Stipulated Settlements included language stating that the district court "retain[ed] jurisdiction of this matter for purposes of construction, modification, and

enforcement of [its Settlement Orders]." 3-ER-297; 2-ER-259. There is no indication the FTC has ever sought to lift the suspended judgments as to any Defendant. 2-ER-259.

On January 15, 2020, the district court entered a third stipulated settlement, which was between the FTC, Moskvins and SIA Transact Pro ("Moskvins Settlement"). 2-ER-191–220. This settlement included a $3,500,000 monetary judgment, payable in full that month. 2-ER-210–11. No payment was ever made and the FTC has taken no action to enforce this breach. 2-ER-103.

## II. The district court modifies the Stipulated Settlements to extend the receivership and allow for a suit against Wells Fargo.

The Barnett Settlement included a provision ordering the Receiver to wind down its operations within six months.[2] 3-ER-292–93. On February 4, 2020, the Receiver filed two separate motions—neither of which was served on Wells Fargo. The first requested the Receivership term be extended by one year to March 11, 2021; the second sought permission to retain contingency fee counsel to finance and file a lawsuit against Wells Fargo. 2-ER-183–85; 2-ER-180–82. This latter motion came with the Receiver's under seal declaration, which purportedly contained "a more detailed discussion of [the Receiver's] investigation, as well as a discussion of his litigation evaluation and strategy." 2-ER-179. In support of the sealing

---

[2] While issued as part of the Barnett Settlement, the provision expressly extended orders appointing the Receiver in the entire *Apex* case. 3-ER-292.

application, the Receiver represented that the non-public filing of the declaration was necessary because if "Wells Fargo were to obtain access to [the] information prior to the onset of litigation," it "could use the information contained in his declaration to its advantage." 2-ER-179. On March 9, 2020, at a hearing attended only by the Receiver and his counsel, the district court entered orders that modified the Barnett Settlement to extend the Receivership until March 11, 2021, and authorized the Receiver to retain contingent fee counsel to pursue litigation against Wells Fargo. 2-ER-157, 158, 159. The district court did not act on the Receiver's accompanying request to administratively close the case. 2-ER-189.

On March 5, 2021, the Receiver moved to continue the Receivership for six months. 2-ER-151–53. Again, the Receiver supported its request with a declaration that was filed under seal because its public disclosure could "compromise the Receiver's ability to pursue assets belonging to the Receivership Estate." 2-ER-155. On March 26, 2021 (15 days *after* the date the receivership was to have terminated under the district court's March 9, 2020, order), the district court issued a minute order modifying the Stipulated Settlements to extend the Receivership's completion date to September 11, 2021. 2-ER-145.

In July and August 2021, the Receiver sought, and the district court granted, another modification to the Stipulated Settlements to extend the Receivership by another year, mainly to give the Receiver additional time to prosecute its civil

lawsuit against Wells Fargo. 2-ER-110–12, 2-ER-108–09.

### III.  The Supreme Court holds Section 13(b) never permitted recovery of equitable monetary relief.

On April 22, 2021, the Supreme Court unanimously demolished the cornerstone of the Receiver's authority to bring suit to enforce the Stipulated Judgments against Wells Fargo by holding that Section 13(b) "does not grant the [FTC] authority to obtain equitable monetary relief." *AMG Capital,* 141 S. Ct. at 1352. In doing so, the Supreme Court acknowledged that its decision invalidated the principal enforcement mechanism the FTC had used for decades, albeit without lawful authority, to recover billions of dollars in damages and disgorgement. *Id.* at 1346–49. Central to the Supreme Court's holding was its finding that the FTC and the lower courts had profoundly misinterpreted the breadth of equitable authority that Section 13(b) provides when it was limited purely to prospective injunctive relief. *Id.* at 1349, 1350 ("the scope of equitable relief that a provision authorizes 'remains a question of interpretation in each case'"; "to read § 13(b) to mean what it says, as authorizing injunctive but not monetary relief. . ."). The *AMG Capital* Court, in turn, explained that the FTC Act gave district courts the authority to "impose limited monetary penalties" to redress consumer injuries—but did so under Section 19—which includes a series of substantive and procedural restrictions,

including a three-year statute of limitations.[3] *Id*. at 1348–49; *see also* 15 U.S.C. § 57b.

Following the *AMG Capital* decision, this Court vacated all FTC matters on direct appeal that included monetary awards based on Section 13(b) and remanded these matters for further proceedings consistent with *AMG Capital*. *See, e.g.*, *FTC v. AMG Cap. Mgmt., LLC*, 998 F.3d 897 (9th Cir. 2021) (summarily reversing district court's award of equitable monetary relief and remanding to district court for further proceedings); *FTC v. Hoyal & Assocs., Inc.*, 859 F. App'x 117 (9th Cir. 2021) (vacating the district court's equitable monetary judgment under *AMG Capital* but affirming the permanent injunction issued under Section 13(b)); *FTC v. Publishers*

---

[3] As the issue was not before it, the Supreme Court did not consider the scope of equitable authority provided by Section 19. But the language of the statute itself reveals that it falls well short of the broad equitable authority that incorrectly had been thought to exist in Section 13(b) (courts have "jurisdiction to grant such relief as the court finds necessary to redress injury to consumers . . . resulting from the rule violation or the unfair or deceptive practice . . . [and] such relief may include, but shall not be limited to . . . the refund of money . . . [and] the payment of damages . . . [but may not include] any exemplary or punitive damages." 15 U.S.C. § 57b(b); *see also FTC v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996) (comparing Section 13(b) and Section 19 and finding that Section 19's prohibition against punitive and exemplary damages constituted "a legislative command [that] expressly limits a court's equitable jurisdiction."); *FTC v. Figgie Intern., Inc.*, 994 F.2d 595, 606 (9th Cir. 1993) (disallowing disgorgement under Section 19 and finding that consumer redress under this provision requires "proof of injury caused by [the deceptive online practices]… [a]nd the relief must be necessary to redress the injury.").

*Bus. Servs., Inc.,* 849 F. App'x 700 (9th Cir. 2021) (same); *FTC v. VPL Med., Inc.,* 846 F. App'x 561 (9th Cir. 2021) (vacating monetary judgment under Section 13(b)).

The FTC, in turn, has conceded that Section 13(b) cannot be a basis for securing monetary relief in cases pending on direct review before a District or Circuit Court. *See, e.g.*, Second Amended Order, *FTC v. AMG Servs., Inc.*, No. 2:12-cv-00536-GMN-VCF (D. Nev. Sept. 3, 2021) ("*AMG Services Inc.*"), Dkt. 1338 at 22 ("[section] 13(b) as currently written does not grant the [FTC] authority to obtain equitable monetary relief . . . [a]ccordingly, the Court denies the FTC's request for equitable monetary relief under Section 13(b)."). In addition, two district courts, including the court in *AMG Capital*,[4] have terminated receiverships/monitorships when following the *AMG Capital* decision in Section 13(b) proceedings. *AMG Services, Inc.*, No. 2:12-cv-00536-GMN-VCF, Dkt. 1338 at 22–23, (granting summary judgment for defendants, denying re-instatement of $1.27 billion judgment, and ordering termination of monitorship, which had been involved in collections, settlement negotiations, and litigation against third parties); Order, *FTC*

---

[4] The Receiver here was also the court-appointed Monitor in *AMG Capital*. After the Supreme Court decided that case, he conceded that the Monitor "no longer has the authority to pursue the [related litigation stemming from the underlying FTC action which were initiated pursuant to the duties conferred upon him by the court] in light of the Supreme Court's reversal of the monetary judgment" and that he "is of the view that he must dismiss the actions as part of the wind down process." *See* Status Report, *AMG Services, Inc.*, Case No. 2:12-cv-00536-GMN-VCF (D. Nev. July 7, 2021), Dkt. 1333 at 1–2.

*v. Cardiff*, No. 5:18-cv-02104-DMG-PLA (C.D. Cal. June 29, 2021); Dkt. 627 at 2, 9–10, 12 (ordering termination of receivership after determining that no ROSCA-based damages would issue).

## IV. The Receiver exercises his purported authority to sue Wells Fargo for money damages.

The Receiver filed his lawsuit against Wells Fargo in the Southern District of California on July 8, 2021. (*McNamara v. Wells Fargo, et al.*, No. 3:21-cv-1245-LAB (S.D. Cal. filed July 8, 2021); "Wells Fargo Litigation"). The Receiver's contingency counsel also filed a separate putative class action the same day on behalf of consumers (*McCraner v. Wells Fargo, et al.*, No. 3:21-cv-1246-LAB (S.D. Cal. filed July 8, 2021)) despite the Receiver also bringing his action to make consumers "whole." Both lawsuits seek punitive and exemplary damages.

To maximize his leverage, the Receiver combined claims from the *Apex* and *Triangle* cases into the Wells Fargo Litigation and seeks to hold Wells Fargo accountable for the more than $200,000,000 in underlying monetary judgments. Those judgment were imposed pre-*AMG Capital* against the defendants in those cases—*i.e.*, the actual wrongdoers—and the FTC voluntarily elected to suspend those judgments as part of its Stipulated Settlements in each case. The Wells Fargo Litigation specifically concedes that the Receiver is seeking damages "to satisfy the FTC judgments" in order to "make whole the consumers who were defrauded as a

result of the *Apex* and *Triangle* [5] frauds that Wells Fargo facilitated," and to cover the FTC's costs of defending the *Triangle* and *Apex* matters (including Receivership costs in each matter). *See* Complaint at ¶ 240, *McNamara v. Wells Fargo*, No. 3:21-cv-1245-LAB (S.D. Cal. July 8, 2021), Dkt. 1. The Wells Fargo Litigation also seeks treble and punitive damages, increasing the Receiver's potential recovery from Wells Fargo to more than half a billion dollars.

## V. Wells Fargo timely secures material, under-seal documents.

After the Receiver filed his lawsuit in July 2021, Wells Fargo promptly contacted counsel for the Receiver and the FTC in August 2021 to engage in the prefiling conference required by the district court's Standing Order [4-ER-724–44] and Local Rule 7-3 "to discuss the issues with sufficient detail so that . . . the briefing may be directed to those substantive issues requiring resolution by the Court." 4-ER-730. Based on these discussions, Wells Fargo materially adjusted its approach. It no longer considered moving to vacate the judgments, but narrowed its focus to the

---

[5] The FTC filed a separate action against a separate set of defendants in *FTC v. Triangle Media Corp., et al.*, No. 3:18-cv-01388-LAB-WVG (S.D. Cal. filed June 25, 2018) ("*Triangle*"). As in the *Apex* case, the FTC's Complaint in the *Triangle* action did not ascribe any involvement in, or knowledge of, wrongdoing by Wells Fargo or its employees. As in the *Apex* case, McNamara served as the Receiver. After the FTC entered stipulated settlements in which the charged defendants secured suspended judgments after paying just $9,000,000 of the $171,000,000 in monetary judgments, McNamara sought to pursue Wells Fargo for the outstanding damages. As in the *Apex* case, Wells Fargo moved to intervene in the *Triangle* matter to raise its *AMG Capital*-based challenges to the Receivership. Wells Fargo's intervention motion has been under submission since January 29, 2022.

district court's subsequent orders providing the Receiver with the full powers of an equity receiver, authorizing litigation against Wells Fargo to prospectively enforce judgments secured in whole or in part through Section 13(b).

To properly advance these motions, Wells Fargo first needed to review three documents that had been sealed at the request of the FTC or the Receiver: (1) the TRO in which the district court appointed McNamara as Receiver and established the scope, duties and authority of the Receivership, and (2) the Receiver's two declarations containing details of his investigation and the strategy for the litigation against Wells Fargo. 4-ER-649–723, 2-ER-160–76, 2-ER-146–50. Wells Fargo prepared to separately intervene to secure these documents in October 2021, as a necessary first step towards proceeding with intervention. But through a series of meet and confer communications, the FTC and the Receiver agreed to jointly request the release of these sealed documents. 2-ER-93–99. On December 10, 2021, the district court granted the parties' request and ordered the three documents to be unsealed. 2-ER-92. The parties completed their meet and confer obligations on January 14, 2022, with the Receiver and the FTC continuing to oppose both Wells Fargo's motion to intervene and the substantive framework of the merits motion that Wells Fargo would file should intervention be granted. 2-ER-86–91.

## VI. The district court denies Wells Fargo's motion to intervene.

On January 18, 2022, Wells Fargo moved to intervene as of right, under

Federal Rule of Civil Procedure 24(a), and permissively, under Rule 24(b). 2-ER-51–85. After full briefing, the district court entered its Minute Order ("Order") denying this motion on March 10, 2022. 1-ER-3–9. The district court ruled that Wells Fargo lacked Article III standing, is not entitled to intervention as a matter of right, and is not entitled to permissive intervention.

First, as to Article III standing, the district court found that Wells Fargo had not made an adequate particularized showing of injury that could be redressed through a post-intervention ruling in its favor. On the issue of injury, the district court sidestepped Wells Fargo's principal challenge to the district court's overbroad orders, which was the court's empowerment of the Receiver to prospectively sue Wells Fargo for monetary relief to pay damage awards that were improperly secured under Section 13(b). Instead, the district court focused on (and rejected) litigation costs and reputational harm as a basis for standing. 1-ER-6. The district court then found that Wells Fargo failed to establish that its injury could be redressed through intervention, because any reputational harm was fully inflicted when the Receiver filed the Wells Fargo Litigation. In addition, the district court looked beyond the question of intervention and ruled on the merits of the underlying motion (without the benefit of full briefing), holding that the monetary judgments that the Receiver sought to enforce were predicated on both Section 13(b) and Section 19 such that "even if the [District] Court modified the Stipulated Judgments in this case to

preclude the Receiver from seeking monetary damages under Section 13(b), the Receiver could still pursue damages under Section 19 and ROSCA and the state law claims." 1-ER-6.

Second, the district court ruled that Wells Fargo's motion to intervene as of right failed because it was untimely, Wells Fargo lacked a significantly protectable interest for the same reason it lacked Article III standing, and Wells Fargo could protect its interests by contesting the monetary judgments and the Receiver's authority in the Wells Fargo Litigation. 1-ER-7–8. In making its timeliness determination, the district court listed a series of dates when Wells Fargo "should have been aware that its interests might be adversely affected by the proceedings in this case": (1) February 4, 2020, when the Receiver requested permission to sue non-party Wells Fargo; (2) April 2020, when the Receiver began pre-litigation negotiations with Wells Fargo about a threatened lawsuit; (3) July 8, 2021, when the Receiver filed its lawsuit against Wells Fargo; and (4) July 9, 2021, when the Transact Pro Defendants moved to modify the Stipulated Judgments. 1-ER-7–8. The district court further found that Wells Fargo's failure to intervene before entry of the Stipulated Settlements in September 2019 "weighs heavily against intervention" as the *Apex* case is now closed. 1-ER-7–8.

As to permissive intervention, the district court stated, "[f]or the reasons discussed above with respect to intervention as a matter of right under Rule 24(a),

the Court exercises its discretion and denies Wells Fargo's request for permissive intervention under Rule 24(b)." 1-ER-9.

Wells Fargo timely noticed its appeal. 5-ER-985–96.

## SUMMARY OF ARGUMENT

**I.**     The district court erred in holding that Wells Fargo lacks Article III standing to intervene. First, Wells Fargo established a concrete injury that is fairly traceable to the district court's orders below defining the overbroad scope of the Receivership. Wells Fargo's injury is being subjected to a monetary damages campaign by a Receiver appointed based on the erroneous construction of Section 13(b) that the Supreme Court rejected in *AMG Capital.* That injury can be redressed by the district court—and, under this Court's collateral attack rule, *only* the district court—so it is redressable by a favorable decision. Second, the district court erred in holding that injury was *not* redressable by impermissibly jumping straight to the merits. It thus denied intervention even before letting Wells Fargo present its full merits case, which will establish that the Receiver lacks the authority it purports to exercise.

**II.**     The district court also erred in denying Wells Fargo's motion to intervene under Rule 24(a) because Wells Fargo satisfies all the requirements for intervention as of right. First, the district court held that Wells Fargo lacked a protectable interest, which was error for the same reasons that Wells Fargo has the requisite Article III injury. Wells Fargo also has a basic due process right to litigate the issues arising

from an unlawful lawsuit lodged against it by a representative of the district court.

Second, the district court erred in holding that Wells Fargo could protect its interests by challenging the Receivership in the separate Wells Fargo Litigation. The collateral attack doctrine requires that an entity seeking to directly challenge an order do so in front of the court that issued the order in the case in which the original order was issued. This doctrine compelled Wells Fargo to challenge the district court's orders related to the Receivership in this case—not in the Wells Fargo Litigation.

Third, the district court abused its discretion in holding that Wells Fargo's motion to intervene was untimely. The court applied an incorrect legal standard to that timeliness inquiry by holding that Wells Fargo must have intervened when it "[knew] or [had] reason to know that [its] interests might be adversely affected by the outcome of the litigation," 1-ER-7, rather than when Wells Fargo "should have been aware that their interests would not be adequately protected by the existing parties." *Smith v. Los Angeles Unified Sch. Dist.,* 830 F.3d 843, 858 (9th Cir. 2016), And the district court compounded this error with a series of unsupportable factual errors that would saddle would-be intervenors with an improper burden.

Fourth, it is undisputed that the existing parties do not adequately protect Wells Fargo's interests—and are indeed actively opposing Wells Fargo's interests.

**III.** The district court abused its discretion in denying permissive intervention under Rule 24(b) because it relied on the same legal errors that made it deny Wells Fargo's motion under Rule 24(a).

<u>STANDARDS OF REVIEW</u>

This Court reviews a district court's determination that a proposed intervenor lacks constitutional standing *de novo*. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

This Court reviews a district court's denial of a motion for intervention as of right *de novo*, except that it reviews questions of timeliness for abuse of discretion. *Citizens for Balanced Use*, 647 F.3d at 896; *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). A denial of a motion for permissive intervention is reviewed for abuse of discretion. *Venegas v. Skaggs,* 867 F.2d 527, 529 (9th Cir. 1989).

A district court abuses its discretion if it applies clearly erroneous facts or fails to apply the correct legal rule or standard, or if the court's application of the correct rule or standard "was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013) (citations omitted); *Engelson v. Burlington N. R.R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992). "[T]he abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Koon v. U.S.*, 518 U.S. 81, 100 (1996).

<u>**ARGUMENT**</u>

**I.    Wells Fargo has Article III standing to intervene.**

Wells Fargo satisfied each Article III standing requirement by showing: "(i) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Yet the district court excluded Wells Fargo for lack of standing by ignoring its principal injury—being subject to a Receiver unlawfully appointed to pursue Wells Fargo—and by jumping the gun on the merits before Wells Fargo was even allowed to intervene to present its case.

**A.    The district court erred in disregarding Wells Fargo's injury of being subjected to a Receiver unlawfully appointed specifically to sue Wells Fargo based upon the Judgments.**

The district court's Article III analysis ignores Wells Fargo's principal injury: the continuing harm directly imposed on Wells Fargo as a result of the erroneous orders issued by the district court. These orders are now being applied prospectively against Wells Fargo and improperly provide the Receiver with powers that fall beyond the permissible scope of equitable authority under Section 13(b), which are manifested in the district court's order authorizing the Receiver to sue Wells Fargo. Subjecting Wells Fargo to a lawsuit founded on overbroad applications of equitable authority that were invalidated by the Supreme Court in *AMG Capital* is sufficient

injury to establish Article III standing. *See, e.g.*, *Ciesniewski v. Aries Cap. Partners, Inc.*, No. 1:16-CV-817-WTL-TAB, 2018 WL 4491211, at *2 (S.D. Ind. Sept. 19, 2018) (finding standing where plaintiff had to defend himself in a prior garnishment action later found to be brought by parties who were not entitled to collect).

In the context of challenging an order, this Court requires an intervening party to show standing "by alleging a threat of particularized injury from the order they seek to reverse that would be avoided or redressed if their appeal succeeds." *Yniguez v. Arizona*, 939 F.2d 727, 731–32 (9th Cir. 1991). There is no dispute that the orders in question were issued at least in part under the overbroad application of equitable authority under Section 13(b) that the Supreme Court invalidated in *AMG Capital*. The FTC conceded that: (1) the *AMG Capital* decision "ended the FTC's ability to obtain monetary relief under Section 13(b) of the FTC Act"; (2) "the stipulated orders imposing permanent injunction and monetary relief rely," at least in part, on Section 13(b); (3) the order appointing and authorizing the Receiver "with the full powers of an equity receiver" was based, at least in part, on Section 13(b); and (4) the Receiver's ongoing efforts to "monetize" its "claims against Wells Fargo is an essential part of the preliminary injunctions and final judgments [in the *Apex* case.]" 2-ER-26, 29–30. The district court, in response to the SIA Transaction Pro Defendants' Rule 60 Motion, found that "[in light of *AMG Capital*] that portion of

the Stipulated Judgment granting the FTC equitable monetary relief was erroneous because it was not authorized by Section 13(b)." 2-ER-103.

Furthermore, this injury is not only "fairly traceable" to the *Apex* case, but it is *directly* traceable because the district court appointed the Receiver to serve as its "agent" to resolve matters arising from the district court's "exclusive jurisdiction" over the Receivership assets. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1399 (9th Cir. 1995) ("an intervenor seeking to establish standing under Article III must show a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action."). Exercising the authority that the district court provided, the Receiver secured access to the documents, witnesses and other evidence on which the Wells Fargo Litigation is based. It is to this district court, in this case, that the Receiver has repeatedly returned—as it must—to provide status reports, secure approvals for major case developments and extend its authorization to operate. Accordingly, Wells Fargo's resulting injury is "fairly traceable" to the challenged action because the Wells Fargo Litigation stems from the district court's orders deputizing the Receiver as an "agent" to pursue damages from Wells Fargo. 2-ER-70.

**B. Wells Fargo's injury is redressable.**

Wells Fargo easily established that a successful challenge to the appointment orders would redress that injury—a conclusion the district court avoided by

impermissibly skipping to the merits of the dispute. To establish redressability, a party must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted). Partial redress, as well as full redress, is sufficient to confer standing. *Made in the USA v. U.S.*, 242 F.3d 1300, 1311 (11th Cir. 2001). And it is well established that this simply is a preliminary determination, with a determination of the merits to be decided through full briefing of the substantive issues post-intervention. *Warth v. Seldin*, 422 U.S. 490, 497 (1975) (standing "in no way depends on the merits of the [] contention that particular conduct is illegal."); *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) ("Rather, [t]he jurisdictional question of standing precedes, and does not require, analysis of the merits.'") (quoting *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n. 10 (9th Cir. 2008)).

There is no question that Wells Fargo's claim is *likely* to be redressed through a positive ruling in this case—which is the only question required to establish redressability for purposes of Article III standing. *Juliana v. U.S.*, 947 F.3d 1159, 1170 (9th Cir. 2020) ("To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award."). The district court has the power to modify its existing orders, as it specifically reserved jurisdiction over the orders for

this purpose and has repeatedly engaged in such modifications at the Receiver's request. 3-ER-297; 2-ER-158; 2-ER-145; 2-ER-108–09. Granting Wells Fargo's requests in whole, or in part, to modify this Court's Receivership orders so they reflect the proper scope of equitable authority under Sections 13(b) and 19 as understood after *AMG Capital* would: (1) remove, or curtail, the financial basis at the foundation of the Wells Fargo Litigation; (2) limit the amount and kinds of damages the Receiver can actively pursue; (3) limit or reduce the costs of Wells Fargo defending itself in the Wells Fargo Litigation; and (4) extinguish Wells Fargo's due process concerns that are inherent to having to defend itself in a lawsuit brought by this Court's representative that is built on, and continues to be propped up by, orders of the district court that are now known to be erroneous. *C.f. Scholes v. Tomlinson*, No. 89 C 8407, 1991 WL 152062, at *2, n.3 (N.D. Ill. July 29, 1991) (noting that the court's order appointing receiver granted authority that "exceeds that permitted by law" and required modification in the underlying suit to prohibit receiver from instituting actions it did not legally have authority to initiate).

Strikingly, and contrary to precedent, the district court focused on the merits of whether Wells Fargo ultimately would *succeed* in its post-intervention challenges rather than whether the injury *likely* would be resolved by a favorable ruling. 1-ER-6; 2-ER-71. For example, the district court concluded that Wells Fargo cannot "show the relief it seeks in this case would affect its exposure to potential damages in the

[Wells Fargo Litigation]" because the FTC also brought claims for equitable monetary relief under Sections 19 and ROSCA. 1-ER-6.

The district court's merits-based analysis essentially imposes a new requirement on prospective intervenors like the standard of likelihood of success on the merits required for a preliminary injunction or futility in seeking to amend a pleading. But that standard is *not* required to establish a prospective intervenor's Article III standing. Instead, precedent requires only a likelihood that the injury may be redressed, and reserves merit determinations until those issues are briefed. The importance of doing so is illustrated by the district court's error here. By prematurely resolving Wells Fargo's challenges without full merits briefing, the district court effectively equated Section 19 as being coterminous with the pre-*AMG Capital* application of Section 13(b), when it is not. The statute and precedent establish that it is far more limited in scope. *See* 15 U.S.C. § 57b(b); *Figgie*, 994 F.2d at 606; *Gem Merchandising Corp.*, 87 F.3d at 469. Beyond the bar that limits recovery to consumer redress and precludes pursuing exemplary and punitive damages, Section 19's three-year statute of limitations would further limit recovery of potential consumer redress, as the Complaint in the Wells Fargo Litigation alleges significant conduct before the three-year statutory cutoff of November 13, 2015. 5-ER-948, 959–60, 983–84. Thus, even if the Receiver could continue to pursue monetary

damages against Wells Fargo under Section 19, the Receiver would be far more limited in its ability to do so.

Moreover, the collateral attack doctrine compels Wells Fargo to seek redress before the district court in this case—not in the Wells Fargo Litigation. *See Mullis v. U.S. Bankr. Court for Dist. of Nev.*, 828 F.2d 1385, 1393 (9th Cir. 1987) ("[C]ollateral attacks on the judgments, orders, decrees or decisions of federal courts are improper," so such challenges should be made in the case in which the order issued). Wells Fargo can only defend itself if it can challenge the validity of the Receiver's authority, which has been cutoff by the district court's decision to block Wells Fargo's intervention. For these reasons, the district court erred in holding that Wells Fargo's injury related to the lawsuit cannot be redressed in this case. To the contrary, Wells Fargo satisfied all the requirements of Article III standing.

## II. Wells Fargo is entitled to intervene as of right.

The district court erred in denying Wells Fargo's motion to intervene. Rule 24(a) entitles a party to intervene as a matter of right when: "(1) he has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011) (internal quotation marks and

citation omitted). Those "requirements for intervention are [to be] broadly interpreted in favor of intervention." *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004); *see also Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011). A district court must "take all well-pleaded, nonconclusory allegations in the motion . . . as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 820 (9th Cir. 2001). Under those standards, Wells Fargo satisfied each requirement for intervention by right.

### A. Wells Fargo has a significant protectable interest.

First, just as the district court erred in holding that Wells Fargo lacked standing, it erred in holding that Wells Fargo lacked a protectable interest warranting intervention. This Court reviews that error *de novo*. *Citizens for Balanced Use*, 647 F.3d at 896.

"[A]n applicant for intervention has a significantly protectable interest if the interest is protected by law and there is a relationship between the legally protected interest and the [] claims." *Alisal Water Corp.*, 370 F.3d at 919 (citing *So. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803, *modified on other grounds*, 353 F.3d 648 (9th Cir. 2003)). Moreover, "because the Article III standing requirements are more stringent than those for intervention under rule 24(a)," a significant protectable

interest for intervention as of right follows from Article III standing. *See Yniguez*, 939 F.2d at 735.

The district court found that "Wells Fargo's litigation exposure fails to establish an injury sufficient to confer standing" and therefore "Wells Fargo lacks a significantly protectable interest." 1-ER-8. This finding is erroneous for two separate reasons. First, it incorrectly equates the more stringent threshold for injury required for Article III standing with the similar, but lesser, threshold for establishing a significant protectable interest under Rule 24(a). Second, as fully set out in Section I, *supra*, Wells Fargo met the higher Article III threshold and therefore has necessarily established a significant protectable interest for intervention as of right.

At a bare minimum, Wells Fargo has the basic due process right of litigating these issues so that, if it is to be sued by a representative of the district court, it be done based on orders consistent with current law. Put simply, Wells Fargo has a significant protectable interest to not have unlawful orders applied and enforced against it. *See Ciesniewski*, 2018 WL 4491211, at *2. Intervention is necessary so that Wells Fargo can raise these claims with the district court and address measures that should be taken to correct these errors. *See, e.g.*, *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 4318466, at *1–4 (D. Ariz. Sept. 23, 2021) (recognizing that post-*AMG Capital*, the scope of a receiver's duties is to prevent

receivership entities from engaging in ongoing and future harm, not to pursue monetary relief).

### B. Wells Fargo cannot protect its interests without intervening.

Second, the district court erred in finding that "Wells Fargo can adequately protect that interest [in the Wells Fargo Litigation]." 1-ER-8. To the contrary, controlling precedent requires that direct challenges to a district court's order be made before the issuing court. The collateral attack doctrine generally prohibits parties from attacking judgments or orders issued in a separate proceeding. *U.S. v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021) ("When a challenge to an order takes place in a separate 'proceeding that has an independent purpose,' . . . it is a 'collateral attack.'"); *Mullis*, 828 F.2d at 1393-93 (collateral attack on an order from a different court is generally impermissible). The doctrine protects the integrity of judicial decisions and avoids the circumstance in which entities affected by a district court's order seek competing rulings from another district court that alter, undo, or render unenforceable the prior order. *See Ord v. U.S.,* 8 F. App'x 852, 854 (9th Cir. 2001).

The merits motion that Wells Fargo intended to file after intervening in the *Apex* case would have directly targeted the enforceability of the order that endowed the Receiver with the "full powers of an equity receiver" and authorized the Receiver to sue Wells Fargo for those financial judgments. These orders were based in whole

or in part on Section 13(b) and, post-*AMG Capital*, are now known to be overbroad. Under the collateral attack doctrine, the correct forum for this motion was the district court because it issued the orders in the *Apex* case. The district court's finding to the contrary ignored both this doctrine and the fact that it continues to exercise direct authority over the Receivership. By doing so, the district court has created the circumstance that the collateral attack doctrine exists to avoid: having a second district court determine the continued enforceability of the first district court's orders by addressing the scope and authority of the receivership based on the second court's independent determinations about the Receivership (*e.g.,* the basis for the Receiver's appointment; the proper scope of the Receivership post-*AMG Capital*; whether the Receiver properly can prospectively pursue monetary relief against Wells Fargo to backfill financial judgments in the *Apex* case that were incorrectly secured, at least in principal part, under Section 13(b); and if so, what portion of the *Apex* judgments the Receiver can properly pursue against Wells Fargo). It was both necessary and appropriate for Wells Fargo to seek protection of its interests by seeking to intervene in the *Apex* case. The district court erred by finding otherwise.

### C. Wells Fargo timely moved to intervene.

Third, the district court abused its discretion in deeming Wells Fargo's motion untimely. In determining the timeliness of a motion to intervene, the district court must consider the totality of the circumstances, including three primary factors:

"(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith,* 830 F.3d at 854. This Court has held that "the timeliness requirement for intervention as of right should be treated *more leniently* than for permissive intervention because of the likelihood of more serious harm." *U.S. v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984) (emphasis added). The "[m]ere lapse of time alone is not determinative" in deciding the timeliness of a motion to intervene. *Id.*

This Court has made clear that "the crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests *would not be adequately protected by the existing parties*." *Smith*, 830 F.3d at 858. Failing to follow that "basic principle" of timeliness is an abuse of discretion. *Id.* at 854.

Yet the district court did not apply that standard of timeliness. Instead, it concluded that Wells Fargo had to intervene as soon as it knew or should have known that its "interests might be adversely affected by the outcome of the litigation." 1-ER-7 (citing *Chavez v. PVH Corp.*, 2014 WL 6617142, at *5 (N.D. Cal. Nov. 20, 2014)). Applying that incorrect standard—which focuses on the hypothesized

outcome of the litigation, rather than the incentives of the existing parties—was itself an abuse of discretion. *Smith*, 830 F.3d at 858.

The district court also abused its discretion in applying that incorrect standard. The district court held that Wells Fargo was on notice that its interests might be adversely affected and should have intervened when: (1) the Receiver filed his motion requesting permission to sue Wells Fargo on February 4, 2020 (even though Wells Fargo was not a party to the litigation or served with the orders); (2) the Receiver entered into pre-litigation negotiations with Wells Fargo to explore resolution of the Receiver's threatened claims in April 2020; (3) the Receiver filed the Wells Fargo Litigation on July 8, 2021; and (4) the SIA Transact Pro Defendants moved to modify the Stipulated Judgments in the *Apex* case on July 9, 2021. The district court also held that Wells Fargo's intervention was untimely because the case was closed. But intervention at any of those times would have been premature, and the case is still open.

### 1. Wells Fargo could not intervene in 2020 before *AMG Capital* was decided or suit was filed against it.

Contrary to the district court's determination, Wells Fargo did not have grounds to intervene in the case as early as February 2020, when the Receiver sought the district court's permission to hire contingent fee counsel. As a non-party, Wells Fargo was never served with this filing and did not know of its existence while it was pending. To that end, the district court's supporting finding that this filing "fully

disclosed the results of the Receiver's investigation into the potential claims against Wells Fargo" is clearly erroneous. The Receiver filed the declaration containing this information under seal expressly to prevent Wells Fargo from learning this information. 2-ER-179. In fact, the Receiver kept this declaration under seal through December 2021 and only moved to unseal it after Wells Fargo, as part of the meet and confer process, explained why it needed to review the document in advance of its motion to intervene. 2-ER-93–99. Thus, this filing could not have provided the requisite notice to Wells Fargo.

Wells Fargo, likewise, lacked the information necessary to trigger an obligation to intervene in April 2020, when the Receiver initiated pre-litigation settlement negotiations. 1-ER-7. It was not *until April 2021* that the Supreme Court clarified that the FTC lacked authority to obtain equitable monetary relief under Section 13(b) of the FTC Act. *AMG Capital* set aside 25 years of Ninth Circuit precedent holding that Section 13(b) empowered courts with the full breadth of equitable authority—including the ability to impose monetary relief and appointing receivers. *See AMG Capital,* 141 S. Ct. at 1352. Any motion to intervene brought before the Supreme Court's *AMG Capital* decision to challenge either the scope of the Receiver's equitable authority or his ability to prospectively seek enforcement of the monetary judgments issued under Section 13(b) would have been futile, bordering on frivolous. *See, e.g.*, *FTC v. AMG Cap.*, 910 F.3d 417, 426 (9th Cir.

2018) ("we have repeatedly held that § 13(b) 'empowers district courts to grant any ancillary relief necessary to accomplish complete justice.'"). Moreover, even when the Supreme Court issued its opinion, the Receiver had yet to institute its action against Wells Fargo, and it was far from clear how the FTC would treat Receiverships founded under a misapplication of Section 13(b) equitable authority or pursuing Section 13(b)-based judgments. 2-ER-73–74. For example, following remand in the *AMG Capital* case, the FTC contended that the Monitorship should be terminated.[6]

These factors weigh heavily in determining whether Wells Fargo's intervention was timely. This Court has held that "[i]n analyzing timeliness, [the Court is] also mindful of the balance of policies underlying intervention" such that the Court "'discourage[s] premature intervention' that unnecessarily 'squander[s] scarce judicial resources and increase[s] litigation costs.'" *Kalbers v. U.S.*, 22 F.4th 816, 823 (9th Cir. 2021) (citations omitted). So intervention in April 2020 would

---

[6] *See* Monitor's Final Report and Accounting, *FTC v. AMG Servs., Inc.*, No. 2:12-cv-00536-GMN-VCF (D. Nev. Nov. 23, 2021), Dkt. 1364. ("And while it became clear after the Supreme Court's decision in *AMG Capital Management, LLC, et al. v. Federal Trade Commission* ("AMG Capital"), No. 19-508, slip op. (Apr. 22, 2021) that the Monitorship itself would need to be terminated, the funds collected by the Monitor will, by and large, be transferred to the Department of Justice pursuant to a Preliminary Order of Forfeiture.").

have been premature, and the district court's decision that Wells Fargo's motion was untimely because it did not intervene at that time was an abuse of discretion.

> **2.  Wells Fargo could not intervene in July 2021 when the Wells Fargo Litigation was filed or when the SIA Transact Pro Defendants sought to amend their monetary judgment one day later.**

The district court also held that Wells Fargo's intervention was untimely because Wells Fargo did not intervene when the Wells Fargo Litigation was filed in July 2021. But the district court ignored how its own rules and orders acted to delay intervention at that time. 2-ER-63.

First, it was not until the Wells Fargo Litigation was filed in July 2021 that an actionable dispute warranting intervention arose. Before it could move to intervene, Wells Fargo was required by the district court's Standing Order to engage in meaningful meet and confer discussions. *See* 4-ER-730 ("Counsel should discuss [in the pre-filing conference] the issues with sufficient detail so that if a motion is still necessary, the briefing may be directed to those substantive issues requiring resolution by the Court.") (citing L.R. 7-3). This record shows that the district court strictly enforces the requirement set forth in the Standing Order. *See* 5-ER-1013, 1017 (striking motions for failure to comply with the Standing Order at Dkts. 134, 136, and 178). Thus, Wells Fargo engaged in good-faith discussions with the FTC and the Receiver about its initial framing of a motion to intervene in August 2021. Like most such motions of the time, the planned motion was targeted at vacating the

36

Stipulated Settlements in their entirety. However, after considering the FTC's and the Receiver's stated grounds for opposing this motion, Wells Fargo researched and assessed alternative theories, which ultimately resulted in the more narrow approach litigated before the district court. 2-ER-74.

Second, when the Wells Fargo Litigation was filed, and throughout the meet and confer process, Wells Fargo was without access to material documents because the FTC and the Receiver filed those documents under seal. The Court sealed the TRO setting forth the scope of the Receivership and the Receiver's two declarations laying out details about his investigation and the reasons for proceeding with litigation against Wells Fargo. *See* 2-ER-93–99, 2-ER-92, 2-ER-68. Access to these documents was necessary for Wells Fargo to assess Wells Fargo's substantive *AMG Capital* claim underlying the intervention. The Court only unsealed the materials in December 2021. The district court's Order did not address or acknowledge these barriers that Wells Fargo faced in intervening and therefore amounted to an abuse of discretion. *See, e.g.*, *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022) (finding that the district court abused its discretion in finding movant's motion to intervene was untimely, in part, because the district court "simply overlooked [] evidence.").

Lastly, contrary to the district court's finding, Wells Fargo did not unduly prejudice the parties by failing to intervene and/or failing to join the SIA Transact

Pro Defendants' Rule 60 motion based on the *AMG Capital* decision. 1-ER-7–8. This Court has held "that the second timeliness factor, prejudice to existing parties, is 'the most important consideration in deciding whether a motion for intervention is untimely.'" *Haaland*, 22 F.4th at 838 (citing *Smith*, 830 F.3d at 857). "Under this factor, the only relevant 'prejudice' is 'that which flows from a prospective intervenor's failure to intervene after he knew, or reasonably should have known, *that his interests were not being adequately represented*.'" *Id.* (emphasis added). For several reasons, not intervening at this point did not prejudice any party, and would have been premature by Wells Fargo given the different arguments from Wells Fargo, as well as the Court's meet and confer obligations.

First, the SIA Transact Pro Defendants were not brought into the Receivership, so they have no interest in the orders addressing the Receiver's authority. On top of not being part of the Receivership, the SIA Transact Pro Defendants were situated materially differently from Wells Fargo. These Defendants were seeking to modify the Final Stipulated Settlement that they, as parties to the action, entered into with the FTC before the Supreme Court's decision in *AMG Capital.* 1-ER-7; *see also* 2-ER-113–44. In other words, the SIA Transact Pro Defendants were attempting to *retroactively* apply *AMG Capital* to unwind the Final Stipulated Judgment they knowingly and voluntarily entered into, at a time when they knew the validity and permissibility of the FTC's ability to recover monetary

judgments under Section 13(b) was being challenged. *See* 2-ER-105–06. This was at the core of the Court's ruling denying the SIA Transact Pro Defendants' motion. Wells Fargo, on the other hand, was not a party to the Stipulated Judgments and sought intervention to challenge the permissibility of the district court's orders empowering the Receiver to *prospectively* pursue Wells Fargo in a separate action to recover the suspended damages involving the non-SIA Transact Pro Defendants in light of *AMG Capital. Cf. FTC v. Ivy Cap., Inc.*, 340 F.R.D. 602, 607 (D. Nev. 2022) (denying a Rule 60(b) motion to reopen a ten-year-old final judgment after *AMG Capital* was decided). Because the SIA Transact Pro Defendants' legal and factual basis for applying *AMG Capital* were materially different from Wells Fargo's underlying intervention claims, there is no prejudice to the parties by Wells Fargo's intervention at this time. The district court's order finding Wells Fargo's intervention untimely amounts to an abuse of discretion.

### 3. The district court's finding that the case is closed as to the Receivership and Wells Fargo is clearly erroneous.

The district court's final basis for finding Wells Fargo intervention untimely—because the "case has been closed since January 2020,"[7] 1-ER-8—was clearly erroneous and therefore an abuse of discretion. The district court expressly

---

[7] It appears that the district court is using the month when SIA Transact Pro entered its settlement with the FTC, but that defendant was never brought into the Receivership and this settlement does not factor into the Receiver's action against Wells Fargo.

retained jurisdiction for "purposes of construction, modification, and enforcement of [the Stipulated Settlements]." 3-ER-297, 2-ER-259, 2-ER-217. In fact, the district court declined the Receiver's invitation to administratively close all but the Receivership portion of the case ("[s]ince all other facets of the case have been completed aside from the Receivership obligation, perhaps a similar approach makes sense, such that this case could be administratively closed but the Court should retain jurisdiction and permit the Receivership to continue to complete the Receiver's tasks"). 2-ER-189, 2-ER-159, 2-ER-158. Instead, the district court left the case open. Moreover, the district court has entered three separate orders at the Receiver's request to modify the Stipulated Settlements to extend the termination date for the Receivership: initially extending authorization until March 11, 2021, then again until September 11, 2021, and most recently until September 12, 2022. *See* 2-ER-158, 2-ER-145, 2-ER-108. While this appeal is pending, the Receiver will be returning to the district court for a fourth time, at which time the district court presumably will issue yet another order modifying the Stipulated Settlements to extend the Receiver's authorization to continue its litigation against Wells Fargo. Likewise, it will be the district court operating in this case—not the Receiver—that will have final disposition authority over any eventual resolution of the Wells Fargo Litigation.

That this case remains open is also confirmed by the Receiver's filings over the past three months without seeking leave to reopen the case. The Receiver

requested the district court's approval of a settlement with a non-party that the Receiver has identified as "qualify[ing] under the Preliminary Injunction [] as both a Corporate Defendant (a designation which includes 'Apex Capital Group, LLC . . . and each of [its] subsidiaries, affiliates, successors, and assigns')[]." 2-ER-15. The Receiver's filings note that he is "currently unaware of any 'opposing party' to [the] motion" and that the FTC was informed of, and did not oppose, this request for settlement approval. 2-ER-15. Likewise, while the district court at first denied this request, it did so *not* because the case was closed, but because the Receiver had not provided it with the necessary copy of the proposed settlement agreement. 2-ER-13.

Simply stated, the case remains open as to matters related to the Receivership, and the district court clearly erred in concluding that the case was closed.

The district court further clearly erred in finding that Wells Fargo could, and should, have sought to intervene before the FTC entered into settlements with the principal *Apex* defendants. 1-ER-8. Wells Fargo could not have intervened before the entry of Stipulated Settlements because Wells Fargo was not a party to the *Apex* action. Indeed, the FTC Act, 25 U.S.C. § 45(a)(2), statutorily prohibits the FTC from including banks, including Wells Fargo, in its enforcement actions. The Receiver's first reference to potential litigation against Wells Fargo (which in effect circumvents the statutory prohibition against FTC actions against banks) did not come until February 2020—five months *after* the principal *Apex* defendants entered

41

the Stipulated Settlements that provide the purported factual basis and financial foundation for the Receiver's action against Wells Fargo. Wells Fargo, likewise, has caused no undue prejudice as it only seeks to challenge application of the Court's prior orders and the entered judgments as prospectively applied to it in contravention of the principles set forth in *AMG Capital.* As the district court's findings are factually unfounded, they cannot support an untimeliness finding.

### D. No existing party adequately protects Wells Fargo's interests.

Last, the existing parties do not adequately represent Wells Fargo's interest. *See Citizens for Balanced Use*, 647 F.3d at 897 (holding government agency would not adequately represent proposed intervenor's interests even if they "share[d] the objective of defending the legality of" a court's order because, among other things, the parties sought to assert different arguments in support of the order). The district court did not dispute this point, and none of the existing parties claim to represent Wells Fargo's interests. Nor could they. Wells Fargo seeks to confine the FTC to its limited authority as recognized in *AMG Capital*, and seeks to prevent the Receiver from exercising unlawful authority. Wells Fargo thus satisfies this last requirement under Rule 24(a), and the district court's denial of Wells Fargo's motion for intervention as of right was error.

**III.    The district court abused its discretion in denying permissive intervention.**

The district court denied permissive intervention under Rule 24(b) "[f]or the reasons discussed above with respect to intervention as a matter of right under Rule 24(a)." 1-ER-9. Because the district court's denial of Wells Fargo's motion as of right under Rule 24(a) was based on legal error, the denial of Wells Fargo's motion under Rule 24(b) rests on the same erroneous foundation. *Smith v. Pangilinan*, 651 F.2d 1320, 1325–26 (9th Cir. 1981) (noting the same analysis under Rule 24(a) applied with greater force to permissive intervention). Thus, the denial of permissive intervention was an abuse of discretion requiring remand at a minimum.

<u>CONCLUSION</u>

For these reasons, this Court should reverse the district court's order denying Wells Fargo's intervention as of right and by permission.

Dated: August 10, 2022                    Respectfully submitted,

                                          */s/ Brian D. Schmalzbach*
                                          Brian D. Schmalzbach
                                          MCGUIREWOODS LLP
                                          800 East Canal Street
                                          Richmond, VA 23219
                                          T: (804) 775-1000
                                          bschmalzbach@mcguirewoods.com

                                          David C. Powell
                                          Alicia A. Baiardo
                                          MCGUIREWOODS LLP
                                          Two Embarcadero Center

43

Suite 1300
San Francisco, CA 94111
T: (415) 844-9944
dpowell@mcguirewoods.com
abaiardo@mcguirewoods.com

Kevin M. Lally
MCGUIREWOODS LLP
355 South Grant Avenue
Suite 4200
Los Angeles, CA 90071
T: (213) 457-9862
klally@mcguirewoods.com

*Counsel for Movants-Appellants Wells Fargo & Co. and Wells Fargo Bank, N.A.*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the length limitations in 9th Cir. R. 32-1(a) and Fed. R. App. P. 32(a)(7) because it contains 10,431 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point size Times New Roman font.

Dated:  August 10, 2022              */s/ Brian D. Schmalzbach*
                                      Brian D. Schmalzbach

# APPENDIX A

## STATUTORY AUTHORITIES

The relevant portions of the Federal Rules of Civil Procedure read in full:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

 (1) is given an unconditional right to intervene by federal statute; or

 (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) Permissive Intervention.

 (1) *In General*. On timely motion, the court may permit anyone to intervene who:

  (A) is given a conditional right to intervene by a federal statute; or

  (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(a)-(b).

The relevant portions of Section 13(b) of the FTC Act read in full:

**Temporary restraining orders; preliminary injunctions.** Whenever the Commission has reason to believe

> (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
>
> (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public [-]

the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: *Provided, however*, That if a complaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction.

15 U.S.C. § 53(b).

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2022, the foregoing was filed with the Clerk of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

Dated: August 10, 2022          */s/ Brian D. Schmalzbach*
                                                  Brian D. Schmalzbach