**No. 22-55342**

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

FEDERAL TRADE COMMISSION,

*Plaintiff-Appellee*,

v.

APEX CAPITAL GROUP, LLC, a Wyoming limited liability
company, *et al*.,

*Defendant-Appellee*.

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,
proposed Intervenors,

*Movants-Appellants,*

_____

THOMAS W. MCNAMARA,

*Receiver -Appellee.*

_____

On Appeal from the United States District Court
for the Central District of California
No. 2:18-cv-09573-JFW-JPR
The Honorable John F. Walter

_____

**APPELLEE'S ANSWERING BRIEF OF THOMAS W. MCNAMARA, AS
COURT-APPOINTED RECEIVER FOR APEX CAPITAL GROUP, LLC,
ET AL.**

_____

(*Counsel listed on following page*)
October 11, 2022

_____

Logan D. Smith
Cornelia J. B. Gordon
McNamara Smith, LLP
655 West Broadway, Suite 900
San Diego, CA 92101
Telephone: 619-269-0400
lsmith@mcnamarallp.com
cgordon@mcnamarallp.com

*Attorneys for Thomas W. McNamara, as the Court-Appointed Receiver for Apex Capital Group, LLC -Appellee*

## CORPORATE DISCLOSURE STATEMENT

Under Federal Rules of Appellate Procedure 26.1(a) and 28(a)(1), Appellee-Receiver Thomas W. McNamara (the "Receiver") certifies that he is a private attorney. The Receiver further certifies that none of the entities for which he serves as receiver—including Apex Capital Group, LLC; Capstone Capital Solutions Limited; Clik Trix Limited; Empire Partners Limited; Interzoom Capital Limited; Lead Blast Limited; Mountain Venture Solutions Limited; Nutra Global Limited; Omni Group Limited; Rendezvous IT Limited; Sky Blue Media Limited; Tactic Solutions Limited; Albright Solutions LLC; Apex Capital International Sarl; Asus Capital Solutions LLC; Brandooza LLC; DMB Marketing LLC; Element Media Group LLC; Jaci, LLC; Jaci Holding LLC; Jaci PR LL; NextG Payments, LLC; NextLevel Solutions LLC; Vortex Media Group LLC; Alpha Group LLC; Apres Vous Media, LLC; Based Capital LLC; Bold Media LLC; Capstone Capital, LLC; Cascade Canyon LLC; Confidential Holdings, LLC; Cornice Group LLC; Crest Capital, LLC; Fortune Ventures LLC; Future Holdings LLC; Grand Assets, LLC; Horizon Media, LLC; Interzoom, LLC; Lead Blast LLC; Lion Capital LLC; Macro Group LLC; Mountain Range Ventures LLC; Mountain Solutions, LLC; Nutra First LLC; Nutra Global LLC; Old West Equity LLC; Omega Assets LLC; Rendezvous IT, LLC; Shadow Peak, LLC; Singletrack Solutions LLC; Sky Media Group, LLC; Teton Pass LLC; Virtual Media LLC; Wonder Leads LLC; Wyoming

i

Freedom Group LLC; Zoom Media LLC; Ace Media Group Ltd; Alpha Corporate Ventures Ltd; Apres Vous Media Ltd; Based Capital Ltd; Capstone Capital Solutions Ltd; Clik Trix Ltd; Crest Capital Ventures Ltd; Digital X Solutions Ltd; Exclusive Media Group Ltd; Empire Partners Ltd; Energy Tomorrow Ltd; Fortune Ventures Ltd; Future Hold Ventures Ltd; Future Precision Ltd; G Force Max Ltd; Grand Assets Ventures Ltd; Horizon Media Partners Ltd; Interzoom Capital Ltd; Lead Blast Ltd; Lion Capital Solutions Ltd; Maverick Pro Ltd; Mountain Venture Solutions Ltd; New Idea Group Ltd; Nutra First Ltd; Nutra Global Ltd; Omega Assets Ltd; Online Product Group Ltd; Precision Tactic Group Ltd; Rendezvous IT Ltd; Sky Blue Media Ltd; Snowdrift Solutions Ltd; Tactic Solutions Ltd; Top Quality Group Ltd; Virtual Media Solutions Ltd; Visitron Capital Ltd; Web Media Depot Ltd; Zoom Media Ltd, and each of their subsidiaries, affiliates, successors, and assigns—is a parent, agent, subsidiary, or affiliate of any publicly owned corporation.

The Federal Trade Commission is a public Entity.

Date: October 11, 2022

/s/ Logan D. Smith
Logan D. Smith

*Attorneys for Thomas W. McNamara, as the Court-Appointed Receiver for Apex Capital Group, LLC -Appellee*

ii

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................1

JURISDICTIONAL STATEMENT .........................................................2

STATUTORY AND REGULATORY AUTHORITIES ..........................3

QUESTIONS PRESENTED......................................................................3

STATEMENT OF THE CASE..................................................................4

SUMMARY OF THE ARGUMENT ......................................................11

STANDARD OF REVIEW .....................................................................13

ARGUMENT ...........................................................................................14

    I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION
        WHEN IT DETERMINED THAT WELLS FARGO'S MOTION
        WAS NOT TIMELY ..................................................................14

        A.    The District Court Applied the Correct Legal Standard..........15

        B.    The District Court's Determination Was Not Illogical,
            Implausible, or Without Support in the Record ......................17

            1.    Wells Fargo Offers No Legitimate Reason for Its
                Delay............................................................................18

                i.    Wells Fargo Could and Should Have Moved
                    to Intervene When the Receiver Initiated
                    Pre-Litigation Settlement Discussions, or
                    Soon Thereafter. ..................................................20

                ii.    Wells Fargo Could and Should Have Moved
                      to Intervene Immediately After the *AMG
                      Capital* Decision..................................................23

           iii.    Wells Fargo Could and Should Have Moved to Intervene Immediately After the Receiver Filed His Lawsuit. ...............................................26

        2.    Wells Fargo's Motion Was Brought Late in the Proceedings.....................................................32

    C.    The Other Parties Will Be Prejudiced.......................................33

II.    THE DISTRICT COURT CORRECTLY HELD THAT WELLS FARGO MEETS NONE OF THE OTHER CRITERIA FOR INTERVENTION AS OF RIGHT .......................................................34

    A.    Wells Fargo Failed to Demonstrate a Significant Protectable Interest in This Case................................................................35

    B.    Wells Fargo Failed to Demonstrate That It Would be Unable to Protect Its Interests if the Action were to Proceed Without Intervention ................................................................................36

III.    THE DISTRICT COURT CORRECTLY HELD THAT WELLS FARGO LACKS ARTICLE III STANDING.....................................37

    A.    Wells Fargo Lacks a Concrete, Particularized, and Actual or Imminent Injury ........................................................................37

    B.    Wells Fargo's Alleged Injury Is Not Redressable by a Favorable Ruling........................................................................38

IV.    THE DISTRICT COURT CORRECTLY HELD THAT WELLS FARGO WAS NOT ENTITLED TO PERMISSIVE INTERVENTION ................................................................................41

CONCLUSION ......................................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alt v. U.S. E.P.A.*,
    758 F.3d 588 (4th Cir. 2014) ............................................................31

*AMG Capital Management, LLC* v. *Federal Trade Commission*,
    141 S. Ct. 1341 (2021) .......................................................... passim

*Animal Legal Def. Fund v. United States Food & Drug Admin.*,
    No. 12-CV-04376-EDL,
    2017 WL 11640662 (N.D. Cal. Apr. 24, 2017) ............................31

*Banco Popular de Puerto Rico v. Greenblatt*,
    964 F.2d 1227 (1st Cir. 1992) ........................................................29

*Calvert v. Huckin*s,
    109 F.3d 843 (9th Cir. 2016) .........................................................33

*Chavez v. PVH Corp.*,
    2014 WL 6617142 (N.D. Cal. Nov. 20, 2014) ..................................... 14, 32

*Cooper v. Newsom*,
    13 F.4th 857 (9th Cir. 2021) ............................................................2

*Donnelly v. Glickman*,
    159 F.3d 405 (9th Cir. 1998) ................................................. 34, 35

*Estrella v. Brandt*,
    682 F.2d 814 (9th Cir. 1982) ........................................................29

*Federal Trade Commission v. American Legal Distribs, Inc.*,
    890 F.2d 363 (11th Cir. 1989) .......................................................29

*Federal Trade Commission v. Electronic Payment Solutions of America, Inc.*,
    2019 WL 5884761 (Mot. for Recons. D. Ariz. Sept. 10, 2019) ....................22

*Federal Trade Commission v. Elegant Solutions, Inc.*,
    2020 WL 2125164 (Mot. to Dissolve Prelim. Inj. C.D. Cal. Jan. 20, 2020).22

*Federal Trade Commission v. Jason Cardiff,*
    2020 WL 8176097 (Mot. for Summ. J. C.D. Cal. Aug. 7, 2020).................22

v

*Federal Trade Commission v. Noland*,
    No. CV-20-00047-PHX-DWL,
    2021 WL 3290461 (D. Ariz. Aug. 2, 2021) ..................................... 24, 25, 26

*Federal Trade Commission v. Zurixx, LLC*,
    No. 2:19-CV-00713-DK-DAO,
    2021 WL 3510804 (D. Utah Aug. 10, 2021)......................................... 24, 25

*Forest Stewardship Council-U.S. v. Off. of U.S. Trade Representative*,
    405 F. App'x 144 (9th Cir. 2010)....................................................................39

*Hawaii v. U.S. Department of Education*,
    2010 WL 346445 (D. Haw. 2010)....................................................................33

*In re Bodeker*, 525 B.R. 770, 744 (D. Mont. 2015)................................................40

*Kalbers v. United States Dep't of Just.*,
    22 F.4th 816 (9th Cir. 2021) ..........................................................................16

*Key Bank of Puget Sound v. Alaskan Harvester*,
    738 F. Supp. 398 (W.D. Wash. 1989) ...................................................... 14, 23

*Kukui Gardens Corp. v. Holco Cap. Grp., Inc.*,
    261 F.R.D. 523 (D. Haw. 2009) ....................................................................19

*Lewis v. First Am. Title Ins. Co.*,
    No. 1:06-CV-478-EJF-LMB,
    2010 WL 3735485 (D. Idaho Aug. 5, 2010) ................................... 18, 29, 32

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................39

*Mayfield v. United States*,
    599 F.3d 964 (9th Cir. 2010) .........................................................................13

*Montgomery v. United States*,
    No. 09-CV-1588 JLS WVG,
    2012 WL 124854 (S.D. Cal. Jan. 17, 2012) ..................................................32

*Moten v. Bricklayers, Mason & Plasterers, Intern. Union of Am.*,
    543 F.2d 224 (D.C. Cir. 1976)........................................................................31

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
    926 F.3d 528 (9th Cir. 2019) .........................................................................13

*Orange County v. Air California*,
    799 F.2d 535 (9th Cir. 1986) .........................................................................33

*Oregon Prescription Drug Monitoring Program v. DEA*,
    860 F.3d 1228 (9th Cir. 2017) ................................................ 37, 38

*Perry v. Proposition 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009) .........................................................41

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
    584 F.3d 1 (1st Cir. 2009)........................................................ 29, 32

*San Diego Unified Port Dist. v. Monsanto*,
    309 F. Supp. 3d 854 (S.D. Cal. 2018) ...........................................38

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016) ................................. 11, 15, 16, 17

*Snoqualmie Indian Tribe v. Washington*,
    No. 3:19-CV-06227-RBL,
    2020 WL 4729178 (W.D. Wash. Apr. 16, 2020) .........................32

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)........................................................................38

*Stadnicki on Behalf of LendingClub Corp. v. Laplanche*,
    804 Fed. App'x 519 (9th Cir. 2020) ...................................... 14, 32

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
    137 S. Ct. 1645 (2017).....................................................................36

*U.S. v. Mylife.com, Inc.*,
    2020 WL 8483884 (Mot. to Dismiss Compl. C.D. Cal. Oct. 1, 2020)..........22

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ............................................... 11, 16

*United States v. State of Oregon*,
    913 F.2d 576 (9th Cir. 1990) ............................................... 11, 16

*United States v. State of Washington*,
    86 F.3d 1499 (9th Cir. 1996) .................................. 13, 18, 30, 33

*Venegas v. Skaggs*,
    867 F.2d 527 (9th Cir. 1989) .......................................................40

*W. Watersheds Project v. Haaland*,
    22 F.4th 828 (9th Cir. 2022) ............................................ 12, 16, 17

*Yakima Valley Memorial Hospital v. Washington State Dept. of Health*,
    2011 WL 13186149 (E.D. Wash. 2011) .......................................19

**Statutes**

15 U.S.C. § 1693o(c) ...........................................................................2

15 U.S.C. § 45(a) ................................................................................2

15 U.S.C. § 53(b) ...............................................................................2

15 U.S.C. § 57b ..................................................................................2

15 U.S.C. § 8404(a) ............................................................................2

28 U.S.C. § 1331 ................................................................................2

28 U.S.C. § 1337(a) ...........................................................................2

28 U.S.C. § 1345 ................................................................................2

## INTRODUCTION

Nearly *two years* after Thomas W. McNamara, the court-appointed federal equity receiver (the "Receiver") in two district court cases brought by the Federal Trade Commission ("FTC"), initiated pre-litigation settlement discussions with the proposed intervenors, Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Wells Fargo" or the "Bank"); more than *nine months* after the Supreme Court held that Section 13(b) of the FTC Act does not authorize the FTC to seek equitable monetary relief in *AMG Capital Management, LLC* v. *Federal Trade Commission*, 141 S. Ct. 1341, 1344 (2021) ("*AMG Capital*"); more than *six months* after the Receiver filed a lawsuit against Wells Fargo; and *five months* after Wells Fargo first indicated it was planning to intervene in the district court case, Wells Fargo *finally* filed its motion to intervene in January 2022, with the purported aim of challenging the scope of the Receiver's appointment based on the Supreme Court's April 2021 decision in *AMG Capital*.

The District Court below concluded that the untimeliness of Wells Fargo's motion alone merited a swift denial. In reaching that conclusion, it acted soundly within its discretion, as Wells Fargo let months go by after the opinion in *AMG Capital* was issued without moving to intervene as it had indicated it would. The District Court applied the correct legal standard in its analysis, and none of its reasoning was implausible, illogical, or without support in the record. On that

1

basis alone, this Court can easily affirm the lower court's denial of Wells Fargo's request to intervene. Even if this Court were to determine that Wells Fargo's motion had been timely filed, however, the District Court's Order should be affirmed based on its rulings that Wells Fargo failed to meet other criteria for intervention as of right and that Wells Fargo could not show it had Article III standing. The District Court likewise acted well within its discretion in denying Wells Fargo's alternative request for permissive intervention. The Receiver respectfully submits that the District Court's decision can be quickly affirmed and Wells Fargo's appeal dismissed.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1345, because the case was brought by a federal agency, the FTC, and arose under the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. §§ 45(a), 53(b), and 57b; Section 5(a) of the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404(a); and the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693o(c). 3-ER-301-47.

This Court has jurisdiction over the District Court's denial of proposed intervenor Wells Fargo's motion to intervene as of right as an "appealable 'final decision.'" *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021). The Court

"ha[s] jurisdiction over a district court's denial of permissive intervention only if [it] conclude[s] the district court abused its discretion." *Id.* at 868.

Wells Fargo's appeal of the District Court's denial of its motion to intervene on March 10, 2022, 1-ER-03-09, was timely filed pursuant to Fed. R. App. P. 4(a)(1)(B) on March 31, 2022, 5-ER-985-986.

## STATUTORY AND REGULATORY AUTHORITIES

Relevant statutes and regulations are included in an addendum to this brief.

## QUESTIONS PRESENTED

The District Court's Order concluded that Wells Fargo lacked Article III standing to intervene as required for intervention as a matter of right, but that even if Wells Fargo *did* have standing, it was still not entitled to intervene as of right because its motion was untimely, Wells Fargo failed to show it had a significant protectable interest in the case, and Wells Fargo failed to show that it would be unable to protect its interests if the case proceeded without intervention. The District Court also concluded that Wells Fargo was not entitled to permissive intervention because its motion was untimely, and for the same reasons it was not entitled to intervene as of right.

The questions presented are:

3

I.    Whether the District Court abused its discretion in finding that Wells Fargo was not entitled to intervene as a matter of right because its motion was untimely[1];

II.   Whether the District Court's holding that Wells Fargo also (a) lacked a significant protectable interest and (b) failed to demonstrate that it would be unable to protect its interests without intervention in this case (and therefore could not intervene as a matter of right) was correct;

III.   Whether the District Court correctly held that Wells Fargo lacked Article III standing because it has not suffered a concrete injury that could be addressed through intervention; and

IV.   Whether the District Court abused its discretion in finding that Wells Fargo was not entitled to permissive intervention.

## STATEMENT OF THE CASE

Thomas W. McNamara is the federal equity receiver appointed in two separate but similar cases: the lower court action, *Federal Trade Commission v. Apex Capital Group, LLC, et al.*, Case No. 2:18-cv-09573-JFW (JPRx) (C.D. Cal.) ("*Apex*"), and *Federal Trade Commission v. Triangle Media Corporation, et al.*,

---

[1] Since the determination that Wells Fargo's motion to intervene was not timely is reviewed under the most deferential standard, for abuse of discretion, the Receiver addresses that issue first.

Case No. 3:18-cv-01388 (LAB-LL) (S.D. Cal.) ("*Triangle*"). 1-ER-3-4; 2-ER-164-165. Both cases were brought by the FTC against businesses operating unlawful "free trial" scams. 2-ER-165. The FTC filed its complaint against the *Apex* defendants in November 2018, 5-ER-946-984, and against the *Triangle* defendants in June 2018, 1-R-SER-49-50. Here, in *Apex*, the FTC alleged that the defendants had violated provisions of the FTC Act, ROSCA, and EFTA, and sought injunctive and monetary relief, including under Section 13(b) of the FTC Act. 5-ER-948, 980-981.

After initiating the *Apex* and *Triangle* actions, the FTC sought and obtained the appointment of a receiver (Thomas W. McNamara) over the corporate defendants and related entities in both cases. 1-ER-3-4; 5-ER-803-945; 4-ER-666-667; 1-R-SER-50-52;. While the FTC amended its complaint in *Apex* in May 2019 to add a second group of defendants, SIA Transact Pro and its owner Mark Moskvins (the "Transact Pro Defendants"), based on allegations that the newly-added defendants had assisted the *Apex* principals in their fraud, the FTC did not seek a receivership over either Transact Pro or Moskvins. 1-ER-4; 2-ER-187; 3-ER-301-347. The FTC subsequently settled with the original *Apex* defendants in early September 2019 and the *Triangle* defendants in late May 2019, 1-R-SER-51, 53; stipulated orders for permanent injunctions and monetary relief were entered on September 11, 2019 in *Apex*, 1-ER-4; 2-ER-221-265; 3-ER-266-300, and on

May 30, 2019 in *Triangle*, 1-R-SER-53. Afterwards, in January 2020, the FTC settled with the Transact Pro Defendants through the entry of a separate stipulated order for permanent injunction and monetary relief. 1-ER-4; 2-ER-191-220. The case was then closed, as evidenced by the text of the docket entry for that order, which stated "Case Terminated." 5-ER-1013.

As the Receiver investigated the schemes at issue in both the *Apex* and *Triangle* actions, he realized that they had something in common beyond the similarity of their underlying business models: in both cases, Wells Fargo was the bank of choice for the scammers. 2-ER-165; 1-ER-4-5. That was no coincidence; as the Receiver ultimately determined, the *Apex* and *Triangle* frauds could not have persisted as long as they did without Wells Fargo's continued willingness to open new accounts for shell companies used in the fraud to process consumer credit and debit payments. *See* 1-ER-4-5; 2-ER-165-172.

In the *Apex* matter below, on February 4, 2020, the Receiver sought the District Court's permission to pursue claims against Wells Fargo on a contingency fee basis. 1-ER-4; 2-ER-180. After the District Court granted the Receiver's motion based on the "compelling evidence" presented by the Receiver in support of his putative claims against Wells Fargo, *see* 1-ER-4, the Receiver engaged the Bank in extensive pre-filing settlement discussions beginning in April 2020, 1-ER-7. When the settlement talks proved unsuccessful, the Receiver sued Wells Fargo

6

on July 8, 2021 on behalf of the Receivership Entities in the *Apex* and *Triangle*

matters. *See McNamara v. Wells Fargo & Company, et al.*, No. CV 21-1245 AJB

(JLB) (S.D. Cal.) (the "Wells Fargo Litigation"); 1-ER-4; 1-R-SER-42-130.

The Receiver brought claims for aiding and abetting fraud; conspiracy to

commit fraud; aiding and abetting breach of fiduciary duty; aiding and abetting

conversion; aiding and abetting fraudulent transfers; and negligence, among others.

*See* 1-R-SER-42-130 (referenced in the Order, 1-ER-4). As the Receiver alleged:

> Wells Fargo bankers were aware of the [*Apex* and *Triangle*]
> Enterprises' risk-free trial schemes, understood the people listed as
> "owners" of the Wells Fargo accounts did not actually own or control
> them, and knew the Enterprises were engaged in credit card
> laundering. Despite this knowledge, Well Fargo gladly opened ***more
> than 150 bank accounts for the shell companies and straw owners,
> sometimes opening as many as 6 bank accounts in one day***. Wells
> Fargo then allowed millions of dollars to be deposited in the accounts,
> knowing that these funds were unlawfully obtained in the risk-free
> trial schemes, and afterwards allowing the Enterprises' operators to
> transfer their ill-gotten gains from the shell accounts to third-party
> bank accounts, including accounts located outside of the United
> States.

1-R-SER-46; *see also* 1-ER-4 (noting that "[t]he complaint alleges that Wells

Fargo used 'atypical banking procedures'" and ignored "high charge back rates,

discrepancies in account information and the nature of the high risk internet

business, to aid the Apex Defendants in perpetuating their fraud"). Though the

Receiver sought monetary relief based in part on the judgments outstanding against

the *Apex* and *Triangle* Receivership Entities, none of his claims was premised on the FTC Act. 1-R-SER-113-130.

On April 22, 2021, roughly a year after the Receiver's counsel first contacted Wells Fargo, "the Supreme Court unanimously held that Section 13(b) of the FTC Act does not authorize the FTC to seek, or a court to award, equitable monetary relief" in *AMG Capital Management, LLC* v. *Federal Trade Commission*, 141 S. Ct. 1341, 1344 (2021) ("*AMG Capital*"). 1-ER-5. On July 9, 2021, the Transact Pro Defendants moved to modify their stipulated permanent injunction and monetary judgment based on the Supreme Court's decision in *AMG Capital*. *Id.*; 2-ER-113-144. The District Court denied the Transact Pro Defendants' motion on September 3, 2021, reasoning, in part, that "at the time they made the decision to settle [in January 2020] they were fully aware of the nature and extent of the challenges to the FTC's authority to recover equitable monetary relief pursuant to Section 13(b), and even used those challenges to negotiate a more favorable settlement." 1-ER-5.

In mid-August 2021, prior to the District Court's ruling on the Transact Pro Defendants' motion, counsel for Wells Fargo informed the Receiver's counsel that it would be seeking to intervene in order "to challenge the order appointing the receiver to pursue Wells Fargo and the previously entered stipulated judgment based on the recent AMG/FTC decision holding that the FTC does not have

authority under Section 13(b) to obtain equitable monetary relief" and asked to meet and confer regarding its putative motion. 1-R-SER-16.

Wells Fargo met and conferred with the Receiver and the FTC separately on August 23, 2021. 1-R-SER-26. During Wells Fargo's conference with the FTC, the FTC informed Wells Fargo that its motion to intervene was already untimely as of August 23, 1-R-SER-6; during the Bank's conference with the Receiver, Wells Fargo inquired about unsealing certain documents in connection with its motion, a request which the Receiver indicated that he would consider, 1-R-SER-27. Two days after the conferences, on August 25, 2021, Wells Fargo filed a motion to dismiss the Receiver's complaint in the Wells Fargo Litigation. 1-R-SER-36. On August 30, 2021, counsel for Wells Fargo informed the Receiver's counsel by email that it would not be filing a motion to intervene (though it vaguely referenced making a "future filing" at some point) and dropped its request for unsealing documents at that time. 1-R-SER-14.

Wells Fargo did not renew discussions regarding its motion to intervene until October 26, 2021. 1-R-SER-11-12. At the same time, it renewed its request for access to documents sealed in the District Court action: the Temporary Restraining Order ("TRO," 4-ER-659-723); the Receiver's declaration in support of his motion for authorization to engage contingency counsel (2-ER-160-176); and the Receiver's declaration in support of his March 2021 motion to extend the

*Apex* receivership (2-ER-146-150). 1-R-SER-11. Counsel for the FTC provided Wells Fargo with a copy of the TRO on November 10, 2021. 1-R-SER-9. After the FTC and the Receiver jointly requested their unsealing, the two sealed declarations were unsealed on December 10, 2021 (2-ER-92). Wells Fargo *still* did not move to intervene until a month later, on January 10, 2022. 2-ER-51-85.

After its initial filing was denied on procedural grounds, Wells Fargo re-filed its motion to intervene on January 18, 2022. 5-ER-1020. The FTC and the Receiver filed oppositions to the motion on February 7, and Wells Fargo filed a reply in support on February 21, 2022. 1-ER-3. The District Court issued its ruling (the "Order") on March 10, 2022. *See id.*

In its Order, the District Court listed multiple reasons for denying Wells Fargo's motion to intervene as of right. The Order began by concluding that Wells Fargo lacked the required Article III standing to intervene as of right because it "ha[d] not suffered a concrete injury that could be addressed through intervention." 1-ER-6. The District Court then determined that even if Wells Fargo did have Article III standing, its motion to intervene as of right would fail on other grounds. 1-ER-7. In particular, the District Court found that Wells Fargo let multiple months slip by after it became aware it might have an interest in the lower court action before it filed its motion to intervene, and as a result the motion was untimely. 1-ER-7-8. While that alone was enough to justify the District Court's

denial of Wells Fargo's request for intervention as of right, the District Court also held that Wells Fargo had failed to demonstrate it had a significant protectable interest for the same reasons it lacked Article III standing, and that it had failed to show there was no way for it to protect any interest it had absent intervention. 1-ER-8. Finally, the District Court exercised its discretion to deny Wells Fargo's alternative request for permissive intervention, for which an even higher standard of timeliness is applied. 1-ER-8-9.

After the District Court's Order denying the motion was entered, Wells Fargo appealed.

## SUMMARY OF THE ARGUMENT

I.    First, the District Court did not abuse its discretion when determining that Wells Fargo's motion to intervene was untimely. Wells Fargo is wrong that the District Court applied the incorrect legal standard. While Wells Fargo claims that the Court should have used language from *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 859 (9th Cir. 2016) to assess the timeliness of Wells Fargo's motion to intervene, the District Court used the proper legal standard under *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004) (quoting *United States v. State of Oregon*, 913 F.2d 576, 589 (9th Cir. 1990)). The *Alisal/Oregon* standard (which is not inconsistent with the language quoted from *Smith*) has never been abrogated and was recently embraced by the Ninth Circuit earlier this year.

11

*See W. Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022) (cited in Appellant's Br. at 37).

Nor was the District Court's determination that Wells Fargo's motion was untimely illogical, implausible, or without support in the record. Wells Fargo failed to offer any legitimate reason for its delay in filing its motion after the Receiver initiated his pre-litigation settlement discussions in April 2020; after the Supreme Court issued its decision in April 2021 in the *AMG Capital* case; after the Receiver filed his lawsuit in July 2021; and, as the District Court found "[m]ost telling," even after Wells Fargo initially considered intervention in August 2021. Wells Fargo's continued delay is inexcusable, especially given the late stage in the proceedings at which its motion was brought, as well as the substantial prejudice that both the FTC and the Receiver would suffer if Wells Fargo were now permitted to intervene.

II.     Second, the District Court correctly held that Wells Fargo failed to meet the other criteria for intervention as of right. Wells Fargo lacked a significant protectable interest for the same underlying reasons it lacked standing. Additionally, its only remaining claimed "harm" was too vague to identify any viable interest for purposes of intervention. Wells Fargo also failed to demonstrate that it would be unable to protect its interests if the action were to proceed without intervention, given the existence of the Wells Fargo Litigation.

III.    Third, the District Court correctly held that Wells Fargo lacks Article III standing to intervene as of right.  Wells Fargo has no concrete, particularized, and actual or imminent injury, and any alleged injury it might arguably have would not be redressable by a favorable ruling.

IV.    Lastly, the District Court did not abuse its discretion by determining that Wells Fargo was not entitled to permissive intervention for the same reasons it denied Wells Fargo's request to intervene as of right.

## STANDARD OF REVIEW

A district court's determination that a proposed intervenor lacks constitutional standing is reviewed de novo, *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010), but "underlying factual findings are reviewed for clear error."  *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 531 (9th Cir. 2019) (citations and internal quotations omitted).

A district court's denial of a motion for intervention as of right is reviewed de novo.  *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997).  However, the district court's underlying timeliness determination is reviewed for abuse of discretion.  *Id.*; *United States v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996).  A district court's denial of a motion for permissive intervention is reviewed for abuse of discretion.  *League of United Latin Am. Citizens,* 131 F.3d at 1307.

13

**ARGUMENT**

## I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DETERMINED THAT WELLS FARGO'S MOTION WAS NOT TIMELY

Wells Fargo's appeal merits a swift denial for multiple reasons, but none more so than the untimeliness of its underlying motion to intervene either as of right or permissively. *See Stadnicki on Behalf of LendingClub Corp. v. Laplanche*, 804 Fed. App'x 519, 522 (9th Cir. 2020) (untimely motion to intervene as of right is "necessarily untimely" as a request for permissive intervention). The District Court recognized as much, finding that *even if* Wells Fargo did not "ha[ve] reason to know that [its] interests might be adversely affected by the outcome of the litigation," *Chavez v. PVH Corp.*, 2014 WL 6617142, at *5 (N.D. Cal. Nov. 20, 2014), until the filing of the Receiver Action in July 2021, "Wells Fargo [still] failed to act in a timely manner," 1-ER-7. In reaching that conclusion, the District Court found it "[m]ost telling" that Wells Fargo "contemplated filing a Motion to Intervene in August 2021" after the Transact Pro Defendants moved to modify their stipulated judgment based on *AMG Capital*, but that it still did not move to intervene "until [six months later in] ***January 2022***." 1-ER-7 (emphasis added); *see also, e.g.*, *Key Bank of Puget Sound v. Alaskan Harvester*, 738 F. Supp. 398, 405 (W.D. Wash. 1989) (leave to intervene denied where proposed intervenor

14

"failed to identify any specific facts pertaining to the nearly four month delay in filing" that could "explain[] its tardy prosecution of its claim").

In order to reverse the District Court's finding that Wells Fargo's motion to intervene was untimely, this Court would need to determine that the District Court abused its discretion either by "fail[ing] to apply the correct legal rule or standard," or by applying the correct rule in a way that was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 853-54 (9th Cir. 2016). For the reasons discussed below, the District Court did neither, and its decision can be affirmed on timeliness grounds alone.

## A. The District Court Applied the Correct Legal Standard

Recognizing, perhaps, that it has no hope of proving that the District Court's decision on timeliness was "illogical," "implausible," or "without support in inferences that may be drawn from the facts in the record," as discussed below in Part I.B, Wells Fargo now tries to claim that the Court applied the wrong legal standard for determining timeliness. Appellant's Br. 31-33. It attempts to draw a distinction between the standard cited by the District Court (requiring a potential intervenor to act when it "knows or has reason to know that [its] interests might be adversely affected by the outcome of the litigation," 1-ER-7-8) with its proposed standard (requiring action when proposed intervenor "should have been aware that

[its] interests would not be adequately protected by the existing parties,"

Appellant's Br. at 32 (quoting *Smith*, 830 F.3d at 858)).

Wells Fargo's argument on this point is simply wrong. The test applied by

the District Court—which is the same test used in *United States v. Alisal Water*

*Corp.*, 370 F.3d 915, 923 (9th Cir. 2004) (quoting *United States v. State of Oregon*,

913 F.2d 576, 589 (9th Cir. 1990)—has never been abrogated by this Court and

was, in fact, applied by the Court earlier this year *in a case that Wells Fargo itself*

*has cited*. In *W. Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2022)

(cited in Appellant's Br. at 37), the Court applied the standard used in *Alisal*

alongside Wells Fargo's "correct" standard, showing that both remain good law:

> ***"A party must intervene when he knows or has reason to know that his*** ***interests might be adversely affected by the outcome of litigation."*** ***United*** ***States v. Alisal Water Corp., 370 F.3d 915, 923 (9th Cir. 2004)*** (citation
> and quotation marks omitted). To determine whether a motion for
> intervention as of right is timely, we consider the totality of circumstances
> facing the would-be intervenor, with a focus on three primary factors: "(1)
> the stage of the proceeding at which an applicant seeks to intervene; (2) the
> prejudice to other parties; and (3) the reason for and length of the delay."
> *Smith*, 830 F.3d at 854. ***When evaluating these factors, courts should be*** ***mindful that "the crucial date for assessing the timeliness of a motion to*** ***intervene is when proposed intervenors should have been aware that their*** ***interests would not be adequately protected by the existing parties." Id.***
> (citation and alteration omitted).

*W. Watersheds Project*, 22 F.4th at 836 (emphasis added). *See also Kalbers v.*

*United States Dep't of Just.*, 22 F.4th 816, 822-23 (9th Cir. 2021) (citing

*Alisal*/*Oregon* test as support for the *Smith* standard). To the extent the standards

16

differ, it is a distinction without a difference. Moreover, Wells Fargo fails to show why its delay was justified when it both knew its interests would not be adequately protected by others and that its interests might be adversely affected by the outcome of the litigation months (if not years) before filing its motion. *See* 1-ER-7-8.

### B. The District Court's Determination Was Not Illogical, Implausible, or Without Support in the Record

Regardless, Wells Fargo does not attempt to argue (nor can it) that the District Court failed to consider the "three primary factors" identified in *Smith* and used to assess the timeliness of a motion to intervene: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *See* 1-ER-7 (internal quotation marks omitted); *see also W. Watersheds Project*, 22 F.4th at 836 (citing and quoting *Smith*, 830 F.3d at 854). For this Court to determine that the District Court abused its discretion, it would need to find that the District Court's conclusions were illogical, implausible, or without support in the record. *See Smith*, 830 F.3d at 854.

Contrary to what Wells Fargo argues in its brief, the District Court's analysis of each of the three factors was well-reasoned and sound. First, Wells Fargo did not offer *any* legitimate explanation for its protracted and repeated delays (occurring over a period of two years) before it moved for relief in this case;

17

second, Wells Fargo's intervention request came *after* the case has been administratively closed; and third, intervention would prejudice the FTC and the Receiver by, among things, seeking to upend a closed case and stipulated judgment and forcing parties to litigate across multiple actions. *See* 1-ER-7-8.

### 1. Wells Fargo Offers No Legitimate Reason for Its Delay

Most crucially, Wells Fargo fails to provide any legitimate reason for its prolonged delay in filing. The majority of its excuses are presented as legal argument in its brief without evidentiary support, and none can counter the reality that Wells Fargo chose to sit on the sidelines as key dates passed—month, after month, after month, after month, after month, after month. The only possible conclusion based on the record before the Court is that Wells Fargo delayed intervening in this case until it had judged that doing so would be to its strategic advantage.

That kind of reason for delay does not make a filing "timely." Rather, it renders Wells Fargo's motion untimely on its face. *See, e.g.*, *Lewis v. First Am. Title Ins. Co.*, No. 1:06-CV-478-EJF-LMB, 2010 WL 3735485, at *4 (D. Idaho Aug. 5, 2010), *report and recommendation adopted*, 2010 WL 3735712 (D. Idaho Sept. 14, 2010) (denying motion to intervene where proposed intervenors could "offer nothing beyond tactical reasoning as the reason for the delay"); *Yakima Valley Memorial Hospital v. Washington State Dept. of Health*, 2011 WL

18

13186149, at *2 (E.D. Wash. 2011) (finding that the proposed intervenor's "proffered explanation for delay does not excuse its failure to apply for leave to intervene during the past thirty-one months"); *Kukui Gardens Corp. v. Holco Cap. Grp., Inc.*, 261 F.R.D. 523, 528 (D. Haw. 2009) (affirming magistrate judge's finding that the intervenor's motion was untimely "because of the over one-year delay in filing the Motion and the activity in the case over that period, the potential prejudice to the parties if [the intervenors] were allowed to intervene at that point, and *the lack of any reason from [the intervenors] for not seeking to intervene sooner*." (emphasis added)).

As the District Court recognized, there were a number of dates where Wells Fargo could and should have brought a motion to intervene but chose not to do so:

> The record … demonstrates that Wells Fargo was on notice that its interests could be affected far earlier.  The Receiver filed a Motion asking the Court for permission to sue Wells Fargo on **February 4, 2020,** and fully disclosed the results of the Receiver's investigation into the potential claims against Wells Fargo. In addition, the Receiver entered into negotiations with Wells Fargo to explore resolution of the Receiver's potential claims against it in **April 2020**. Docket No. 144-1 & 225-2. After the parties' negotiations failed to result in a resolution, the Receiver filed the San Diego Action against Wells Fargo on **July 8, 2021**. In addition, the Transact Pro Defendants moved to modify the Stipulated Judgments based on the [*AMG Capital*] decision–the same relief Wells Fargo intends to seek if permitted to intervene--on **July 9, 2021**.

1-ER-7 (emphases added); *see also* 2-ER-180; 1-R-SER-143-149; 1-R-SER-30-37; 2-ER-113-144.

19

By each of these dates, Wells Fargo should have been well aware that its interests would not be adequately protected by the existing parties in the case and that its interests might be adversely affected by the outcome of the litigation. Yet Wells Fargo delayed filing its motion for several more months. In its response, Wells Fargo offers excuse after excuse. None is valid.

> i. Wells Fargo Could and Should Have Moved to Intervene When the Receiver Initiated Pre-Litigation Settlement Discussions, or Soon Thereafter.

The Receiver first made his intention to pursue claims against Wells Fargo public on February 4, 2020, when he "filed a Motion asking the [District] Court for permission to sue Wells Fargo…and fully disclosed the results of the [his] investigation into the potential claims against Wells Fargo." 1-ER-7. While the Receiver's declaration in support of the motion was filed under seal, the publicly-filed memorandum of points and authorities in support of that motion named Wells Fargo as the target of the proposed litigation multiple times, including in the opening paragraph. *See* 1-R-SER-143-149. At the time the Receiver's intent to pursue Wells Fargo was made public, moreover, Wells Fargo already had a vested interest in the case: it was a "cooperative, third-party corporate witness that complied with Court processes by freezing accounts and providing information relating to select accounts opened by [the *Apex*] Defendants." Appellant's Br. at 7.

20

Wells Fargo knew about the Receiver's proposed lawsuit by April 2020 at the *latest*. That was the month in which the Receiver contacted Wells Fargo directly to initiate pre-litigation settlement discussions, and he provided the Bank with a copy of a draft complaint in that initial correspondence. 1-R-SER-18-23, 25-29. At that point, Wells Fargo had direct notice that its interest (to the extent it has one, *see* Part II.A) in this case could be affected. But despite knowing that the Receiver intended to pursue claims against it based on his appointment in the *Apex* and *Triangle* actions, *see* 1-R-SER-18-23, 25-29, Wells Fargo did not move to intervene in *Apex* until nearly two years later, in January 2022. *See* 1-ER-7.

Wells Fargo claims that it "lacked the information necessary to trigger an obligation to intervene in April 2020" because the Supreme Court had not yet issued its decision in *AMG Capital*, and that before *AMG Capital*, "challeng[ing] either the scope of the Receiver's equitable authority or his ability to prospectively seek enforcement of the monetary judgments issued under Section 13(b) would have been futile, bordering on frivolous." Appellant's Br. at 34-35.

Wells Fargo's argument in this regard is based on the flawed premise that its hands were somehow tied until the Supreme Court's decision was issued. They were not. Wells Fargo had the right to challenge existing Ninth Circuit law, just as multiple defendants within this Circuit did pre-*AMG Capital*. *See, e.g., FTC, Plaintiff, v. Electronic Payment Solutions of America, Inc., et al., Defendants*, 2019

WL 5884761 (Mot. for Recons. D. Ariz. Sept. 10, 2019) (seeking reconsideration of motion for judgment on the pleadings in light of the Seventh Circuit's holding in *FTC v. Credit Bureau Center, LLC*, 937 F.3d 764 (7th Cir. 2019), that Section 13(b) did not give FTC the ability to seek monetary restitution); *FTC, Plaintiff, v. Elegant Solutions, Inc., et al.*, *Defendants*, 2020 WL 2125164 (Mot. to Dissolve Prelim. Inj. C.D. Cal. Jan. 20, 2020) (citing *Credit Bureau* and arguing that Section 13(b) does not authorize monetary relief); *FTC, Plaintiff, v. Jason Cardiff, et al., Defendants*, 2020 WL 8176097 (Mot. for Summ. J. C.D. Cal. Aug. 7, 2020) (same); *U.S., Plaintiff, v. Mylife.com, Inc.*, *a Delaware Corporation, and Jeffrey Tinsley, Individually and as an Officer of Mylife.com, Inc., Defendants*, 2020 WL 8483884 (Mot. to Dismiss Compl. C.D. Cal. Oct. 1, 2020) (same).

Wells Fargo was almost certainly aware of the arguments it now makes before the Supreme Court's opinion came down. *AMG Capital* resolved a high-profile circuit split that was being closely watched by every litigant in an FTC case and every large law firm in the country—including, presumably, by Wells Fargo's esteemed counsel. Litigants were already making (and had been making for years) the very arguments that Wells Fargo is now trying to leverage. Particularly once the Supreme Court granted certiorari on July 9, 2020, *see AMG Capital Management, LLC v. Federal Trade Commission*, No. 19-508 (S. Ct.), *available at* https://www.supremecourt.gov/docket/docketfiles/html/public/19-508.html, Wells

Fargo had a good faith basis to intervene and make these arguments. Instead, Wells Fargo opted to wait.

> ii. Wells Fargo Could and Should Have Moved to Intervene Immediately After the *AMG Capital* Decision.

Wells Fargo and its counsel were on notice of *AMG Capital*'s holding almost as soon as the opinion was issued.[2] If Wells Fargo had really viewed *AMG Capital* as the watershed event that it now claims it to be, *see, e.g.*, Appellant's Br. at 34, it should have immediately moved to intervene in this action following that decision. Instead, Wells Fargo waited ***nine months*** after issuance of the *AMG Capital* decision to move to intervene in the lower court action—even though Wells Fargo knew that the Receiver was still actively pursuing his claims against it during the entire time, both because Wells Fargo continued to negotiate with the Receiver (including at an in-person mediation session in April 2021) and because the Receiver filed suit against it in July 2021. 1-R-SER-26-27; 1-R-SER-42-130. Such delay merits denial of Wells Fargo's motion as untimely.

Courts require proposed intervenors to move to intervene with far greater alacrity than Wells Fargo did here. In *Key Bank of Puget Sound v. Alaskan*

---

[2] For example, Wells Fargo's counsel in this action, McGuireWoods, immediately published a News Alert regarding the decision on its website dated April 22, 2021. *See* https://www.mcguirewoods.com/client-resources/Alerts/2021/4/us-supreme-court-rejects-federal-trade-commissions-restitution-authority.

*Harvester*, 738 F. Supp. 398 (W.D. Wash. 1989), for example, the court denied leave to intervene where the proposed intervenor "failed to identify any specific facts pertaining to the nearly four month delay in filing" that could "explain[] its tardy prosecution of its claim." *Id.* at 405; *see also League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1304 (9th Cir. 1997) (affirming district court's denial of intervention when proposed intervenor admitted to knowing about case when it was first filed, but decided to wait twenty-seven months to file its motion).

Wells Fargo's delay is particularly long here when compared to that of other potential intervenors who similarly tried and failed to blame their late requests for intervention on the *AMG Capital* opinion. These intervenors have had their motions deemed untimely despite moving *much* faster than Wells Fargo did here. *See, e.g.*, *FTC v. Zurixx, LLC*, No. 2:19-CV-00713-DK-DAO, 2021 WL 3510804, at *4 (D. Utah Aug. 10, 2021) (motion to intervene citing *AMG Capital* filed on May 11, 2021—less than three weeks after decision—denied as untimely); *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 3290461, at *4 (D. Ariz. Aug. 2, 2021) (motion to intervene citing *AMG Capital* filed on June 1, 2021—less than six weeks after decision—denied as untimely).

*Zurixx* and *Noland*, both cases in which faster movers than Wells Fargo saw their intervention motions denied, are instructive. In *Zurixx*, the proposed intervenors tried to intervene 18 months after the receiver suspended their

24

operations and less than three weeks after *AMG Capital* was issued, arguing that their motion was timely because of the "'landmark shift' occasioned by the *AMG Capital Management* case." *See Zurixx*, 2021 WL 3510804, at *4. The court dismissed the proposed intervenors' argument, concluding that "even if *AMG Capital Management* does weaken [the FTC's] case, it does not change the nature of [the intervenors]' interest in this proceeding." *Id.* at *4. As the court explained, the *AMG Capital* decision "[a]t best…affect[ed] the strength of [intervenors]' position," and thus it did "not excuse or explain the lateness of th[e] intervention motion." *Id.*

Similarly, in *Noland*, the proposed intervenors attempted without success to argue that *AMG Capital* "shifted the legal landscape" and justified their delay in seeking to intervene. *See* 2021 WL 3290461, at *4. As in *Zurixx*, the court dismissed these arguments and found that "the Proposed Intervenors became aware as early as January 2020 (and by no later than September 2020) that their protected interests were being affected by this litigation and that the existing parties were purportedly not protecting those interests," and that "[a]lthough the Proposed Intervenors may view *AMG Capital* []as providing additional support for the arguments they wish to advance, they have been aware of those arguments for a very long time." *Id.*

25

Just like the proposed intervenors in *Zurixx* and *Noland*, Wells Fargo "ha[d] been aware of those arguments [made in *AMG Capital*] for a very long time" before the Supreme Court's opinion in *AMG Capital* was issued. *See Noland*, 2021 WL 3290461, at *4. Unlike the proposed intervenors in *Zurixx*, who moved to intervene less than three weeks after *AMG Capital*, and *Noland*, who moved to intervene less than six weeks after *AMG Capital*, however, Wells Fargo waited *nine full months* to file its motion.

Wells Fargo tries to explain its delay in part by arguing that it could not have intervened until after the Receiver filed his lawsuit in July 2021, because it was not until then "that an actionable dispute warranting intervention arose." Appellant's Br. at 35. Wells Fargo provides no supporting case law for what is, in essence, its own proposed standard for intervention: that proposed intervenors are not required to intervene until there is some "actionable dispute," which is not a standard this Court has used (nor even one for which Wells Fargo advocates, *see* Appellant's Br. at 32-33). Regardless, as the District Court recognized and as discussed below, "[e]ven if the key event here was the filing of the [Receiver] Action, Wells Fargo failed to act in a timely manner." 1-ER-7.

### iii. Wells Fargo Could and Should Have Moved to Intervene Immediately After the Receiver Filed His Lawsuit.

Wells Fargo appears to concede that it had some obligation to intervene beginning in July 2021, after the Receiver filed suit. *See* Appellant's Br. at 36

26

("[I]t was not until the Wells Fargo Litigation was filed in July 2021 that an actionable dispute warranting intervention arose."). But instead of moving to intervene promptly after the Receiver filed his lawsuit on July 8, 1-R-SER-130, Wells Fargo weighed its options and decided to wait another *six months* before moving to intervene. *See* 1-ER-7 ("Even if the key event here was the filing of the [Wells Fargo Litigation], Wells Fargo failed to act in a timely manner….[D]espite clear evidence that it knew its interests would be affected, Wells Fargo did not bring its Motion to Intervene until January 2022[.]"). This delay dooms Wells Fargo's motion, because, as the District Court recognized, *even if* the filing of the Receiver's lawsuit was the "key event" for purposes of assessing Wells Fargo's timeliness in moving, the Bank still "failed to act in a timely matter." *Id.*

The record below establishes that Wells Fargo could have intervened at any number of points after the Wells Fargo Litigation was filed. It could have moved to intervene, but did not, on July 23, 2021, when the Receiver filed a motion to extend the completion deadline for the receivership, *see* 1-R-SER-135-142; on November 10, 2021, when Wells Fargo filed its motion to intervene in *Triangle*, *see* 1-R-SER-36 and when counsel for the FTC provided Wells Fargo with a copy of the TRO, *see* 1-R-SER-9, 28; or on December 10, 2021, when the District Court granted the FTC and the Receiver's joint motion to unseal the declarations

27

requested by Wells Fargo, *see* 2-ER-92.  Instead of acting, Wells Fargo let weeks and then months slip by.

Wells Fargo could have intervened at any of these points (and even earlier, of course), but the District Court found it "most telling" that Wells Fargo considered—but abandoned—plans to move for intervention in August 2021.  *See* 1-ER-7; *see also* Appellant's Br. at 36; *see* 1-R-SER-14, 16.  Wells Fargo tries to explain its continued delay past this point by arguing that it did not move to intervene immediately after "engag[ing] in good-faith discussions with the FTC and the Receiver about its initial framing of a motion to intervene in August 2021" because it reconsidered its approach after these discussions by "research[ing] and assess[ing] alternative theories."  Appellant's Br. at 37.  Yet Wells Fargo cites no authority (nor can it) for the proposition that "research[ing] and assess[ing] alternative theories," *see* Appellant's Br. at 37, following a meet-and-confer process can serve as a legitimate excuse for delay—and regardless, those broad assertions unsupported by declarations (Wells Fargo's only record cite to support this point is to its own briefing, *see id.*, citing 2-ER-86, which is itself unsupported by any actual evidence) are insufficient to provide evidentiary support for Wells Fargo's position.  *See*, *e.g.*, *Estrella v. Brandt*, 682 F.2d 814, 819-20 (9th Cir. 1982) (holding legal memoranda and oral argument not evidence).

Wells Fargo provides no information as to the substance of those meet-and-confer discussions, which is telling. It was during those discussions that counsel for the FTC specifically told Wells Fargo that any motion to intervene it wanted to file would ***already*** be untimely as of that date. *See* 1-R-SER-6. If Wells Fargo really believed it had grounds to intervene, the FTC's comment should have lit a fire under the Bank; instead, Wells Fargo did nothing for *five more months*. Especially where the proposed intervenor is a multinational bank represented by a national law firm, the idea that delay was merited because the Bank needed some additional time to consider the issues strains credulity. *See, e.g., R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 8 (1st Cir. 2009) (finding two-and-a-half-month delay unreasonable where proposed intervenor – "a sophisticated financial institution with lawyers on staff" – had threatened intervention on August 14 based on facts known in July, but "inexplicably waited until October 2 before moving to intervene"); *Banco Popular de Puerto Rico v. Greenblatt*, 964 F.2d 1227, 1231 (1st Cir. 1992) (affirming denial of request to intervene three months after notice of action); *FTC v. American Legal Distribs, Inc.,* 890 F.2d 363, 365 (11th Cir. 1989) (per curiam) (delay of two months); *see also Lewis*, 2010 WL 3735485, at *4.

Perhaps realizing as much, Wells Fargo then tries to blame its delay on its lack of "access to material documents"—the initial TRO (which Wells Fargo

29

already had, *see* 1-R-SER-40*,* and two declarations by the Receiver—which were filed under seal in the lower court action. *See* Appellant's Br. at 37. But this is no excuse for delay where (1) Wells Fargo could have, but did not, seek to unseal these documents at any point prior, and (2) Wells Fargo's claim that "[a]ccess to these documents was necessary for Wells Fargo to assess Wells Fargo's substantive *AMG Capital* claim underlying the intervention" is not supported by a cite to the record (and never explained further, for that matter). Appellant's Br. at 37; *see also* 1-ER-7 ("Wells Fargo has failed to offer an adequate explanation for this inordinate delay.") (citing *United States v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996)). As noted, such unsupported statements in legal memoranda cannot serve as evidence. *See*, *e.g.*, *Estrella*, 682 F.2d at 819-20.

Wells Fargo also tries to unfairly discredit the District Court's Order by claiming that the "Order did not address or acknowledge these barriers [*i.e.*, the unsealing of the declarations] that Wells Fargo faced in intervening and therefore amounted to an abuse of discretion." Appellant's Br. at 37. That is incorrect: the District Court considered and rejected this proffered excuse for Wells Fargo's delay. *See* 1-ER-7 ("[Wells Fargo] filed the Motion [to Intervene] after the Receiver filed the [Receiver] Action in July 2021, ***and after it investigated a few matters supposedly relevant to its Motion***." (emphasis added)).

30

As the District Court recognized, all of these justifications ring especially hollow in light of the July 9, 2021 filing by the Transact Pro Defendants of a motion seeking "to modify the Stipulated Judgments based on the [*AMG Capital*] decision—the same relief Wells Fargo intends to seek if permitted to intervene." 1-ER-7. Had Wells Fargo moved to intervene in a timely manner, "before the [District] Court issued its ruling denying the Transact Pro Defendants' Motion to Modify Judgment," the District Court "could have considered its motion at the same time it heard the Transact Pro Defendants' Motion to Modify Judgment." *See id*. Wells Fargo, however, did nothing.

Each of these "reasons" for delay is, at its core, the result of a deliberate tactical decision by Wells Fargo. Wells Fargo chose not to intervene at each of these points, because it believed the benefits of waiting outweighed the benefits of moving. Such maneuvering is widely recognized as insufficient to justify a delay. *See, e.g.*, *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014) (finding motion untimely where proposed intervenor "gambled and lost in the execution of its litigation strategy"); *Moten v. Bricklayers, Mason & Plasterers, Intern. Union of Am.*, 543 F.2d 224, 228 (D.C. Cir. 1976) (holding motion untimely when intervenors' decision "not to seek intervention much earlier" was "informed" and "tactical"). But whether Wells Fargo's delay was the *de facto* result of its lack of diligence or intended as a tactical maneuver—only Wells Fargo knows for sure—is

31

ultimately irrelevant: neither is an acceptable reason for delay in this Circuit. *See, e.g., Animal Legal Def. Fund v. United States Food & Drug Admin.*, No. 12-CV-04376-EDL, 2017 WL 11640662, at *2 (N.D. Cal. Apr. 24, 2017) ("The diligence of the would-be intervenor after he has received actual or constructive notice of the impending threat to his interests forms the focus of the timeliness inquiry."); *see also Lewis*, 2010 WL 3735485, at *4; *R & G Mortg. Corp*. 584 F.3d at 8; *see also Stadnicki*, 804 F.Appx. 521 (affirming that the proposed intervenor was on notice of the lawsuit more than eighteen months before deciding to intervene, thus the motion was untimely). The District Court's finding that the (claimed) reasons for and length of Wells Fargo's delay were insufficient to render its belated motion timely was well supported by the evidence in the record and should be affirmed.

## 2. Wells Fargo's Motion Was Brought Late in the Proceedings

The District Court correctly concluded that the "stage of the proceedings at which [Wells Fargo] seeks to intervene," *see Chavez*, 2014 WL 6617142, at *5, too, weighed against Wells Fargo's intervention, finding that "the fact that this case has been closed since January 2020 weighs heavily against intervention." 1-ER-8; *see also, e.g.*, *Snoqualmie Indian Tribe v. Washington*, No. 3:19-CV-06227-RBL, 2020 WL 4729178, at *1 (W.D. Wash. Apr. 16, 2020) ("The general rule [is] that a post-judgment motion to intervene is timely if filed within the time allowed for the filing of an appeal, which is 30 days for most civil cases.") (internal

quotation marks and citation omitted); *Montgomery v. United States*, No. 09-CV-1588 JLS WVG, 2012 WL 124854, at *8 (S.D. Cal. Jan. 17, 2012) ("[W]here a lot of water has passed under the bridge and the case has proceeded to settlement, this factor [stage of the proceedings] weighs heavily against finding [an intervenor's] motion is timely.").

Furthermore, as the District Court recognized, "[i]n considering motions to intervene, courts have long recognized the importance of protecting settlements" like that between the FTC and the Defendants in the lower court action. *See id.* (citing *Orange County v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986); *California Department of Toxic Substances*, 309 F.3d 1113, 1119 (9th Cir. 2002); *Washington*, 86 F.3d at 1504)). While Wells Fargo attempts to thread the needle and claims that it is "no longer…moving to vacate the judgments," *see* Appellant's Br. at 14-15, it is clear (as the District Court recognized) that granting the relief Wells Fargo seeks would undoubtedly affect the stipulated judgments, *see* 1-ER-8. Those judgments were entered on September 11, 2019, *see* 1-ER-4; 2-ER-221-265; 3-ER-266-300, well over two years before Wells Fargo filed its motion to intervene, and should not be disturbed at this point.

### C. The Other Parties Will Be Prejudiced

The prejudice to both the Receiver and the FTC is significant and apparent on its face. As the District Court found, "Wells Fargo's failure to timely intervene

33

so that the Court could have considered its motion at the same time it heard the

Transact Pro Defendants' Motion to Modify Judgment demonstrates the prejudice

to the parties in this litigation." *See* 1-ER-7 (citing *Hawaii v. U.S. Department of*

*Education*, 2010 WL 346445 at *3 (D. Haw. 2010) (finding prejudice in having to

relitigate old issues where the case is already closed and the judgment had been

entered a year earlier)); *Calvert v. Huckin*s, 109 F.3d 843, 854 (9th Cir. 2016)

(intervention after final judgment is highly disfavored because it results in severe

prejudice to the parties to the action)).

Furthermore, in taking the actions it has, Wells Fargo has chosen to burden

two separate District Courts with motions to intervene, and now the Ninth Circuit

instead of making its arguments in a single case—the Receiver's case—when filing

its pending motion to dismiss. The same prejudice applies to the Receiver, who is

being forced to litigate motions to intervene across two separate cases in addition

to pursuing his case against Wells Fargo.

## II. THE DISTRICT COURT CORRECTLY HELD THAT WELLS FARGO MEETS NONE OF THE OTHER CRITERIA FOR INTERVENTION AS OF RIGHT

In addition to timely filing a motion to intervene, a potential intervenor must

have a significant protectable interest in the suit in which he is seeking to

intervene, and the disposition of the suit must potentially "impair or impede the

applicant's ability to protect its interest." *See Donnelly v. Glickman*, 159 F.3d 405,

409 (9th Cir. 1998). The District Court correctly found that Wells Fargo should

not be entitled to intervene as a matter of right because it failed to meet these

additional requirements. *See* 1-ER-8.

### A. Wells Fargo Failed to Demonstrate a Significant Protectable Interest in This Case

"An applicant has a 'significant protectable interest' in an action if (1) it

asserts an interest that is protected under some law, and (2) there is a 'relationship'

between its legally protected interest and the plaintiff's claims." *Donnelly*, 159

F.3d at 409. In its briefing here and below, Wells Fargo has defined its interest as

"the basic due process right of litigating these [unspecified] issues so that, if it is to

be sued by a representative of the district court, it be done based on orders

consistent with current law." Appellant's Br. at 29. That vague description

identifies neither the law under which that interest is protected nor the relationship

between the purported interest "and the plaintiff's claims." *See Donnelly*, 159 F.3d

at 409. The District Court correctly ruled that Wells Fargo's alleged "interest" was

insufficient "[f]or the same reason that Wells Fargo's litigation exposure fails to

establish an injury." 1-ER-8.

Wells Fargo argues that the District Court "incorrectly equates the more

stringent threshold for injury required for Article III standing with the similar, but

lesser, threshold for establishing a significant protectable interest under Rule

24(a)." Appellant's Br. 29. The District Court's Order, however, does not state

35

that the court found no protectable interest *because* Wells Fargo had not demonstrated it had a sufficient injury-in-fact under Article III; instead, it simply states that Wells Fargo lacked a significant protectable interest "[f]or the *same reason*" it lacked an injury in fact. *See* 1-ER-8 (emphasis added). That reason is self-evident: Wells Fargo's inchoate "interest" is too nebulous to consider as a real interest under either standard.

Regardless, Wells Fargo's formulation of its alleged interest is fatally deficient. It claims it has a "due process right [to] litigat[e]" issues that, as the District Court acknowledged, it "will be able…to make…in its defense in the [Receiver] Action." 1-ER-8. The District Court's conclusion that Wells Fargo lacked a significant protectable interest in the *Apex* action was correct and should be affirmed.

### B. Wells Fargo Failed to Demonstrate That It Would be Unable to Protect Its Interests if the Action were to Proceed Without Intervention

The District Court also correctly concluded that Wells Fargo could adequately protect its interests outside of this litigation. Though the District Court made a point of "not[ing] that Wells Fargo chose not to raise the [*AMG Capital*] issue in its Motion to Dismiss the Receiver's Complaint in the Receiver Action," 1-ER-8 n.2, it found that nothing had prevented Wells Fargo from doing so at the time. *See* 1-ER-8; *see also Triangle*, No. 18-CV-1388-LAB-WVG, 2022 WL

36

4793457, at *4 (S.D. Cal. Sept. 30, 2022). The District Court's conclusion that Wells Fargo was not without recourse to protect its alleged interests is correct, and it serves as another reason that the Order should be affirmed.

## III. THE DISTRICT COURT CORRECTLY HELD THAT WELLS FARGO LACKS ARTICLE III STANDING

To intervene as of right, Wells Fargo must have Article III standing. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1651 (2017). As the District Court correctly found, however, "Wells Fargo has not suffered a concrete injury that could be addressed through intervention." 1-ER-6. That remains the case more than one year after the Receiver formally filed suit, as Wells Fargo is *still* unable to articulate a "concrete, particularized and actual or imminent" injury that it has suffered, let alone one which could be "redress[ed] by a favorable ruling" post-intervention. *See Oregon Prescription Drug Monitoring Program v. DEA*, 860 F.3d 1228, 1234-35 (9th Cir. 2017). The District Court's ruling that Wells Fargo lacks Article III standing should be affirmed.

### A. Wells Fargo Lacks a Concrete, Particularized, and Actual or Imminent Injury

Before the lower court, Wells Fargo identified its injuries as "the Receiver's authority to pursue litigation against Wells Fargo pursuant to an invalidated legal principle, and the resulting reputational harm and litigation costs." 2-ER-69-70. It has apparently conceded that neither its alleged reputational harm nor its litigation

costs in the Receiver Action qualify as the kind of "harm" that provides Article III standing,[3] as it discusses neither as an injury-in-fact in its appellate brief. Instead, Wells Fargo now argues that the District Court "ignore[d] Wells Fargo's principal injury: the continuing harm directly imposed on Wells Fargo as a result of the erroneous orders [it] issued."

Having apparently dropped its argument for reputational harm and litigation costs as damages, however, it is unclear what injury remains for Wells Fargo to claim. It is obvious that Wells Fargo takes umbrage with (in its words) "being subject to a Receiver unlawfully appointed to pursue Wells Fargo," Appellant's Br. at 21, but that kind of perceived inequity is not the kind of "concrete, particularized and actual or imminent" injury that is required to establish Article III standing. *See Oregon Prescription Drug Monitoring Program*, 860 F.3d at 1234-35.

### B. Wells Fargo's Alleged Injury Is Not Redressable by a Favorable Ruling

Even if Wells Fargo had shown a cognizable injury, it failed to establish "a likelihood that an injury-in-fact will be redressed by a favorable decision." *San Diego Unified Port Dist. v. Monsanto*, 309 F. Supp. 3d 854, 867 (S.D. Cal. 2018);

---

[3] As the District Court succinctly explained, "injuries stemming from the cost or potential damages of litigation are insufficient to confer standing," and Wells Fargo had "fail[ed] to make a particularized showing of any reputational harm as a result of the [Receiver] Action." 1-ER-6.

*see also Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). As the District Court found, Wells Fargo's requested relief—a "modif[ication of] this Court's Receivership orders so they reflect the proper scope of equitable authority under Sections 13(b) and 19 as understood after *AMG Capital*," Appellants' Br. at 25—would not redress the harms the Bank has alleged.

Wells Fargo argues that the District Court "impermissibly skipp[ed] to the merits of the dispute" in reaching its conclusion that Wells Fargo's alleged injury would not be redressable by a favorable ruling, but it never explains *how* the District Court's order was deficient. Wells Fargo claims that the District Court's finding that it cannot "show that the relief it seeks in this case would affect its exposure to potential damages in the [Receiver Action]" somehow skipped to the merits and imposed a new standard on would-be intervenors. Appellant's Br. at 25-26. But the District Court's conclusion—that *even if* the relief Wells Fargo sought were granted in full, the harm it alleges would not be redressable— necessarily means that the lower court found it was not "likely…that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation marks omitted); *compare, e.g.*, *Forest Stewardship Council-U.S. v. Off. of U.S. Trade Representative*, 405 F. App'x 144, 146 (9th Cir. 2010) ("*Even if* we were to order USTR to conduct a NEPA analysis, Appellants cannot point to any specific measures USTR can take…to mitigate any alleged

environmental harm," and "Appellants therefore fail to show how the relief requested will make mitigation of their alleged injury *likely*, or even possible." (emphases added)).

The District Court's ruling was not inconsistent with the standard; rather, in the passages cited by Wells Fargo, the District Court was simply explaining its reasoning for reaching the conclusions it did. That reasoning was sound. Nothing in the orders that Wells Fargo purports to challenge (*i.e.*, the "appointment orders") makes the Receiver's ability to pursue claims against third parties strictly dependent upon the continued viability of Section 13(b) or suggests that *AMG Capital* in any way affects his powers—a conclusion that is all the more compelling where, as here, the underlying action was resolved by entry of a stipulated settlement. *Cf. In re Bodeker*, 525 B.R. 770, 744 (D. Mont. 2015), *aff'd*, 689 F. App'x 879 (9th Cir. 2017) ("Rule 60(b)(6) was not intended to relieve a party from a settlement agreement voluntarily entered with the advice of counsel."). Rather, the appointment orders that Wells Fargo challenges empower the Receiver to bring claims on behalf of the Receivership Defendants: "[t]he Receiver shall have full power to sue for, collect, and receive, all Assets of the Receivership Entities." *See* 4-ER-667. The Receiver would still be able to bring claims against Wells Fargo under state law, and Wells Fargo can cite to no case law that states the Receiver cannot use the judgments to which the Receivership

Entities are subject (and which Wells Fargo claims it is not challenging, *see* Appellants' Br. at 14-15) as a basis for liability. The District Court's conclusion that "Wells Fargo fail[ed] to establish that its injury could be redressed through intervention in this case," 1-ER-6, as required for Article III standing, was correct and should be affirmed.

## IV. THE DISTRICT COURT CORRECTLY HELD THAT WELLS FARGO WAS NOT ENTITLED TO PERMISSIVE INTERVENTION

A denial of a motion for permissive intervention is reviewed for abuse of discretion. *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989). Permissive intervention *may* be granted when "(1) [there are] independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common," *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009), but "even if these requirements are met, the district court still has discretion to deny intervention," 1-ER-8 (citing *Perry*).

Here, the District Court acted well within its discretion when denying Wells Fargo's request for permissive intervention. The District Court "exercise[d] its discretion and denie[d] Wells Fargo's request for permissive intervention under Rule 24(b)" for same reasons as it denied "intervention as a matter of right," 1-ER-9, but its analysis focused in particular on timeliness. That factor "appl[ies] to [both] requests for intervention as of right and permissive intervention," but it is

41

analyzed more strictly in the latter context.  *See id.* (citing and quoting *League of United Latin Am. Citizens*, 131 F.3d at 1308).  Because Wells Fargo's motion to intervene as of right is untimely, its request for permissive intervention likewise falls on that ground.

## CONCLUSION

For the foregoing reasons, the Receiver respectfully submits that the District Court's Order should be affirmed in all respects.


Date: October 11, 2022

/s/ Logan D. Smith
Logan D. Smith
Cornelia J. B. Gordon
McNamara Smith, LLP
655 West Broadway, Suite 900
San Diego, CA 92101
Telephone: 619-269-0400
lsmith@mcnamarallp.com
cgordon@mcnamarallp.com

*Attorneys for Thomas W. McNamara, as the Court-Appointed Receiver for Apex Capital Group, LLC -Appellee*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s) 22-55342**

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**  /s/ Logan D. Smith                     **Date:** October 11, 2022

43

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s): 22-55342**

I am the attorney or self-represented party.

**This brief contains _____9,946____ words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _/s/ Logan D. Smith_____ **Date:** _October 11, 2022_____

44

**ADDENDUM**

**STATUTES AND REGULATIONS**

Fed. R. Civ. P. 24 provides:

(a) INTERVENTION OF RIGHT.

On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) PERMISSIVE INTERVENTION.

(1) *In General*.  On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) *By a Government Officer or Agency*.  On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order

45

administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) *Delay or Prejudice*.  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) NOTICE AND PLEADING REQUIRED.  A motion to intervene must be served on the parties as provided in Rule 5.  The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2022, the foregoing was filed with the

Clerk of the United States Court of Appeals for the Ninth Circuit using the

appellate CM/ECF system, which will also serve counsel of record.

Dated: October 11, 2022        /s/ Logan D. Smith

                                    Logan D. Smith