No. 22-55342

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

FEDERAL TRADE COMMISSION,
*Plaintiff-Appellee*,

v.

APEX CAPITAL GROUP, LLC, *et al.*,
*Defendants-Appellees*,

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,
*Proposed Intervenors-Movants-Appellants*.

Appeal from the United States District Court
for the Central District of California
No. 2:18-cv-09573-JFW-JPR
Hon. John F. Walter

## ANSWERING BRIEF OF THE FEDERAL TRADE COMMISSION

ANISHA S. DASGUPTA
*General Counsel*

JOEL MARCUS
*Deputy General Counsel*

Of Counsel:
JONATHAN W. WARE
SARAH WALDROP
*Attorneys*

FEDERAL TRADE COMMISSION
Washington, D.C. 20580

MICHAEL BERGMAN
*Attorney*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580
(202) 326-3184
mbergman@ftc.gov

# TABLE OF CONTENTS

Table of Authorities ........................................................................ iii

Introduction ...................................................................................1

Statutory and Regulatory Authorities ...........................................3

Questions Presented .......................................................................3

Statement of the Case.....................................................................4

     A.   The FTC's Enforcement Suit Against Apex Capital.................4

     B.   The Receiver's Suit Against Wells Fargo. .................................9

     C.   The *AMG* Decision. ..............................................................11

     D.   The Transact Pro Defendants' Failed Motion to Set Aside
           Their Monetary Obligation Based on the *AMG* Decision.......................12

     E.   Wells Fargo's Motion to Intervene. ........................................13

Summary of The Argument ..........................................................14

Standard of Review.......................................................................17

I.    The District Court Correctly Held That Wells Fargo Lacks Article
      III Standing To Intervene...........................................................17

     A.   Wells Fargo Failed to Show a Cognizable Injury ...................18

     B.   Intervention Would Not Likely Redress Any Injury...............22

II.   The District Court Correctly Denied Wells Fargo's Motion to
      Intervene .................................................................................25

     A.   The District Court Properly Exercised its Discretion in
           Finding Wells Fargo's Motion Untimely ................................26

          1.   Wells Fargo sought to intervene long after it had
                reason to know that its interests were at stake................27

          2.   Intervention would have prejudiced the parties................32

i

3.    Wells Fargo gave no valid reason for its delay. ...............................33

B.    Wells Fargo had no "significantly protectable" interest. .........................35

C.    Wells Fargo's Ability to Protect Its Interest Is Not Impaired. .................35

III.  The District Court Properly Denied Permissive Intervention .........................36

Conclusion ............................................................................................................37

# TABLE OF AUTHORITIES

## CASES

*Alaniz v. Tillie Lewis Foo*ds,
   572 F.2d 657 (9th Cir. 1978)........................................................ 25, 31

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ...............................................................17

*AMG Cap. Mgmt., LLC v. FTC*,
   141 S. Ct. 1341 (2021) .......................................................................11

*Bradley v. School Bd. of City of Richmond*,
   416 U.S. 696 (1974)........................................................................ 21, 22

*Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc.*,
   2017 WL 4769439 (C.D. Cal. 2017)....................................................34

*Cal. Dept. of Toxic Subst. Control v. Comm. Realty Projects, Inc.*,
   309 F.3d 1113 (9th Cir. 2002) ............................................ 26, 31, 32

*Calvert v. Huckins*,
   109 F.3d 636 (9th Cir. 1997)............................................................ 25, 32

*Ciesniewski v. Aries Cap. Partners, Inc.*,
   2018 WL 4491211 (S.D. Ind. Sept. 19, 2018) .....................................20

*Clapper v. Amnesty International USA*,
   133 S. Ct. 1138 (2013) ................................................................ 18, 20

*Cooper v. Newsom*,
   13 F.4th 857 (9th Cir. 2021) ......................................... 3, 17, 25, 37

*Cotton v. Wells Fargo Bank N.A.*,
   2011 WL 13227816 (C.D. Cal. Feb. 22, 2011) .................................28

*FTC v. AH Media Grp., LLC*,
   339 F.R.D. 612 (N.D. Cal. 2021).......................................................24

*FTC v. AMG Cap. Man.*,
   910 F.3d 417 (9th Cir. 2018) ...........................................................30
   141 S. Ct. 194 (U.S. July 9, 2020) (No. 19-508) ...............................30

*FTC v. Cardiff*,
   2021 WL 3616071 (C.D. Cal. June 29, 2021) ...................................12

*FTC v. Credit Bureau Center, LLC*,
   937 F.3d 764 (7th Cir. 2019) ...............................................30
   141 S. Ct. 194 (U.S. July 9, 2020) (No. 19-825) ...................30

*FTC v. Elegant Sols., Inc*.,
   No. 20-55766, 2022 WL 2072735 (9th Cir. June 9, 2022)...................................12

*FTC v. H. N. Singer, Inc.*,
   668 F.2d 1107 (9th Cir. 1982) ...............................................6

*FTC v. Hanley*,
   No. 20-15143, 2022 WL 187848 (9th Cir. Jan. 20, 2022)...................................12

*FTC v. Ivy Cap., Inc.*,
   340 F.R.D. 602 (D. Nev. 2022)...............................................21

*FTC v. John Beck Amazing Profits, LLC*,
   2021 WL 4313101 (C.D. Cal. Aug. 19, 2021)...............................................24

*FTC v. Triangle Media Corp., et al.*,
   No. 3:18-cv-01388-LAB-WVG (S.D. Cal. filed June 25, 2018).......................11
   2022 WL 4793457 (S.D. Cal. Sept. 30, 2022)........................................ 11, 34, 36

*Harper v. Va. Dep't of Taxation*,
   509 U.S. 86 (1993)...............................................21

*Herb Reed Enter., Inc. v. Bennet*,
   2012 WL 5989632 (D. Nev. Nov. 29, 2012) ......................................34

*Jones v. Wells Fargo Bank, N.A.*,
   666 F.3d 955, (5th Cir. 2012) ...............................................28

*Juliana v. U.S.*,
   947 F.3d 1159 (9th Cir. 2020) ...............................................22

*Kalbers v. United States Dep't of Just.*,
   22 F.4th 816 (9th Cir. 2021) ........................................ 26, 27

*Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*,
   2020 WL 1052518 (D. Or. Mar. 4, 2020)...............................................36

*League of Latin Am. Citizens v. Wilson*,
   131 F.3d 1297 (9th Cir. 1997) ........................................ 26, 33, 36

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................ 20, 24

*McNamara v. Wells Fargo & Co., et al.*,
   No. 3:21-cv-1245-LAB-DDL (S.D. Cal. filed July 8, 2021)...............................................9

*Meland v. WEBER*,
    2 F.4th 838 (9th Cir. 2021) ...................................................................17

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
    926 F.3d 528 (9th Cir. 2019)..............................................................17

*Orange County v. Air California*,
    799 F.2d 535 (9th Cir. 1986).............................................................31

*Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*,
    860 F.3d 1228 (9th Cir. 2017) ...........................................................18

*Palmer v. Nelson*,
    160 F.R.D. 118 (D. Neb. 1994)..........................................................36

*Perlman v. Wells Fargo Bank, N.A.*,
    559 F. App'x 988 (11th Cir. 2014) ....................................................28

*Perry v. Proposition 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009)......................................................... 25, 36

*Reynoldsville Casket Co. v. Hyde*,
    514 U.S. 749 (1995)...........................................................................21

*Smith v. Los Angeles Unified Sch. Dist.*,
    830 F.3d 843 (9th Cir. 2016).................................................. 17, 26, 27

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) .......................................................................19

*Stadnicki on Behalf of LendingClub Corp. v. Laplanche*,
    804 F. App'x 519 (9th Cir. 2020) ......................................................32

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998).............................................................................18

*Sw. Ctr. for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001)..............................................................35

*Teague v. Lane*,
    489 U.S. 288 (1989)...........................................................................21

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017) .......................................................................17

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004)..............................................................26

*United States v. N. Colorado Water Conservancy Dist.*,
    251 F.R.D. 590 (D. Colo. 2008) ........................................................36

v

*United States v. State of Oregon*,
  913 F.2d 576 (9th Cir. 1990) .................................................................. 26, 27, 31

*W. Watersheds Project v. Haaland*,
  22 F.4th 828 (9th Cir. 2022) ............................................................................26

*Wiand v. Wells Fargo Bank, N.A.*,
  86 F. Supp. 3d 1316 (M.D. Fla. 2015) .............................................................28
  677 F. App'x 573 (11th Cir. 2017) ...................................................................28

*Wright v. Serv. Emps. Int'l Union Loc. 503*,
  2022 WL 4295626 (9th Cir. Sept. 19,  2022) ..................................................20

## STATUTES

12 C.F.R. § 1005.10(b) ...........................................................................................5

15 U.S.C. § 1693e(a) ..............................................................................................5

15 U.S.C. § 1693o(c) ..........................................................................................2, 5

15 U.S.C. § 45(a) ...............................................................................................2, 4

15 U.S.C. § 53(b) ..............................................................................................2, 5

15 U.S.C. § 57b ..................................................................................................2, 5

15 U.S.C. § 8403 .....................................................................................................4

15 U.S.C. § 8404 ...............................................................................................2, 5

28 U.S.C. § 1331 ....................................................................................................2

28 U.S.C. § 1337(a) ...............................................................................................2

28 U.S.C. § 1345 ....................................................................................................2

28 U.S.C. § 1651 ....................................................................................................6

## RULES

Fed. R. App. P. 4(a) ...............................................................................................3

Fed. R. Civ. P. 24 ...............................................................................25, 35, 36, 37

Fed. R. Civ. P. 60 .......................................................................................... 12, 23

Fed. R. Civ. P. 65 ...................................................................................................6

**INTRODUCTION**

In November 2018, the FTC charged a group of defendants operating as Apex Capital with falsely promising "free trials" of personal care products to obtain consumers' credit and debit card information and then placing unauthorized recurring charges on their accounts. The district court enjoined the scheme and appointed an equity receiver to recover assets of the corporate defendants. The Apex defendants settled and the ensuing stipulated judgment continued the receivership and ordered that payments be used to redress injured consumers. The receiver then brought suit based on state law claims against Wells Fargo, which was not a party to the FTC case, for aiding the deceptive scheme. Wells Fargo was charged with opening up a large number of fraudulent, shell accounts for the defendants in which to process unapproved payments despite knowing that the Apex defendants operated unlawfully.

Two years after the FTC and Apex Capital settlement became final and the case was closed, Wells Fargo attempted to intervene to challenge the settlement judgment agreed to by the parties and accepted by the district court. It argued that the amount of the judgment entered against the perpetrators of the consumer deception scam should be reduced because a Supreme Court decision rendered

1

months earlier in 2021, long after the judgment had become final, removed one of the two independent grounds on which the judgment had been based.

In the order on review, the district court denied intervention. For one thing, Wells Fargo lacked a concrete, non-speculative, and redressable injury sufficient to convey standing. The judgment was sustainable on an independent ground, and the threat of potential damages from the Receiver's suit was too uncertain. Wells Fargo did not meet the criteria for intervention in any event. Its motion was untimely and would prejudice the parties to the settlement; further, the bank had no protectable interest because intervention would not reduce the amount of monetary liability Wells Fargo might face in the Receiver's action.

The district court's decision was sound and should be affirmed. Wells Fargo's claimed harm is speculative and depends on a long chain of events, each one far from assured. And even if Wells Fargo had standing, it has no excuse for waiting as long as it did to seek relief.

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337(a), and 1345, because the case arose under the Federal Trade Commission Act, 15 U.S.C. §§ 45(a), 53(b), and 57b, the Restore Online Shoppers' Confidence Act, 15 U.S.C. § 8404(a), and the Electronic Fund Transfer Act, 15 U.S.C. § 1693o(c), and was brought by the Federal Trade Commission, a federal agency.

3-ER-301-47.[1] This Court has jurisdiction over the district court's denial of a motion to intervene as of right as an "appealable 'final decision.'" *Cooper v. Newsom*, 13 F.4th 857, 864 (9th Cir. 2021). The FTC submits that the Court does not have jurisdiction over the district court's denial of a motion for permissive intervention because the district court properly exercised its discretion. *See id*. at 868. The district court's order denying Wells Fargo's motion to intervene was issued on March 10, 2022, 1-ER-03-09, and Wells Fargo timely filed its notice of appeal pursuant to Fed. R. App. P. 4(a)(1)(B) on March 31, 2022. 5-ER-985-986.

## STATUTORY AND REGULATORY AUTHORITIES

Relevant statutes and regulations are set forth in the addendum.

## QUESTIONS PRESENTED

The district court denied Well Fargo's motion to intervene, holding that Wells Fargo lacked Article III standing, that the motion was untimely, and that Wells Fargo intended to raise arguments that the court had already rejected. The questions presented are:

1. Whether the district court correctly held that Wells Fargo lacked Article III standing to intervene because it failed to show a redressable injury;

---

[1] "X-ER-X" refers to pages in Appellants' Excerpts of Record; "FTCSER-X" refers to the FTC's Supplemental Excerpts of Record; page cites are to ECF-generated page numbers; "Br." refers to the Appellants' August 10, 2022 Brief.

2.     Whether the district court correctly held that Wells Fargo was not entitled to intervene as of right in this case because (i) its request to intervene was untimely; (ii) it did not have a significant protectable interest at stake; and (iii) it could protect its interest by raising its arguments in a different case;

3.     Whether the district court properly exercised its discretion to deny permissive intervention to Wells Fargo for the same reasons it rejected intervention as of right.

## STATEMENT OF THE CASE

### A.     The FTC's Enforcement Suit Against Apex Capital.

*Complaints, TRO, and Preliminary Injunction.* In November 2018, the FTC sued Apex Capital Group, LLC; its two owners, Phillip Peikos and David Barnett; and a collection of shell companies operating under a corporate owner named Omni Group Ltd. (collectively "Apex"). 5-ER-946-984. The complaint charged that Apex conducted a deceptive scheme in which it offered consumers "free trials" of various products, but once it collected the consumers' credit or debit card information (allegedly for shipping and handling charges) it placed recurring monthly charges on consumers' accounts without their consent. 5-ER-958-973. Those acts assertedly violated Section 5(a) of the Federal Trade Commission (FTC) Act, 15 U.S.C. § 45(a); Section 4 of the Restore Online Shoppers' Confidence Act (ROSCA), 15 U.S.C. § 8403; Section 907(a) of the Electronic

4

Fund Transfer Act (EFTA), 15 U.S.C. § 1693e(a); and "Regulation E," which implements EFTA, 12 C.F.R. § 1005.10(b).[2] 5-ER-948. The complaint sought injunctive and monetary relief, including "relief . . . necessary to redress injury to consumers," such as "restitution, [and] the refund of monies paid," under Sections 13(b) and 19(b) of the FTC Act, 15 U.S.C. §§ 53(b), 57b(b); Section 5 of ROSCA, 15 U.S.C. § 8404 ("ROSCA § 8404"), and Section 918(c) of EFTA, 15 U.S.C. § 1693o(c). 5-ER-948, 980-981. Section 13(b) authorizes a court to grant a "permanent injunction," Section 19(b) provides "such relief as the court finds necessary to redress injury to consumers," and ROSCA § 8404 allows the FTC to enforce that statute through the mechanisms of the FTC Act, including Sections 13(b) and 19.[3]

---

[2] Wells Fargo states that the complaint alleged "a single violation of [ROSCA]," Br. 4, and while the ROSCA violations are charged in a single count (Count VI), the complaint charges "numerous" ROSCA violations that cost consumers "tens of millions of dollars." *See* 5-ER-949, 978.

[3] Section 5(a) of ROSCA, 15 U.S.C. § 8404(a), provides that a "[v]iolation of this [statute] or any regulation prescribed under this [statute] shall be treated as a violation of a rule under section 18 of the [FTC] Act regarding unfair or deceptive acts or practices. The [FTC] shall enforce this [statute] in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the [FTC] Act . . . were incorporated into and made a part of this [chapter]."

Section 19(b) of the FTC Act, 15 U.S.C. § 57b(b), provides that a "court in an action under [Section 19(a)] shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers . . . Such relief may include, but not be limited to . . . the refund of money . . ."

The FTC asked the district court for a temporary restraining order freezing the defendants' assets and appointing a receiver to run the business. 5-ER-803-945. Courts have long granted such preliminary relief under Section 13(b) reasoning that permanent injunctive relief authorizes by implication ancillary preliminary relief to ensure effective final relief. *See FTC v. H. N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982). Section 19 likewise permits preliminary remedies necessary to secure ultimate relief. *See id.* at 1109-1110, 1112.

The district court granted the TRO, froze the assets, and appointed a receiver after concluding there was "good cause to believe" that the defendants had violated ROSCA, the FTC Act, EFTA, and Regulation E, and that the FTC would "therefore likely prevail on the merits" of the case. 4-ER-651-652. It based those actions on Sections 13(b) and 19, as well as Fed. R. Civ. P. 65 and the All Writs Act, 28 U.S.C. § 1651. 4-ER-653. The court appointed a temporary receiver as the court's "agent" and "with full powers of an equity receiver" over the corporate defendants and their affiliates ("Receivership Entities" or "receivership companies"). 4-ER-666-667. Wells Fargo received notice of the FTC's lawsuit, the TRO, and the asset freeze. FTCSER-17 ¶¶ 4, 5.

In December 2018, Apex and the FTC stipulated to preliminary injunctions continuing the receivership and asset freeze. The district court granted the injunctions after finding that the FTC was likely to prove the alleged violations. 3-

ER-350; 3-ER-423-424. The court relied on the same provisions of law as before for its authority to issue the orders. 3-ER-351; 3-ER-424. With respect to the Receiver, the court stressed again the Receiver's role as its "agent," "with full powers of an equity receiver." 3-ER-365, 3-ER-438-439. The court empowered the Receiver to (among other things) "employ attorneys . . . as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order," "to sue for, collect, and receive, all Assets of the Receivership Entities," and to "[i]nstitute, . . . appear in, . . . or otherwise become party to any legal action in state [or] federal, . . . courts . . . as the Receiver deems necessary . . . to preserve or recover the Assets of the Receivership Entities[.]" 3-ER-365-370; 3-ER-439-443. "Assets" include "any legal or equitable interest in, right to, or claim to, any property," 3-ER-351, 3-ER-425.

*Amended Complaint*. In May 2019, the FTC amended its complaint to add a second group of defendants, SIA Transact Pro and its owner Mark Moskvins ("the Transact Pro defendants"). 3-ER-301-347. The complaint alleged that the Transact Pro defendants helped Apex carry out the scheme through credit card laundering and chargeback manipulation. The amended complaint alleged the same violations of law as the original complaint and requested relief under the same enforcement provisions. 3-ER-343-345. The Transact Pro defendants were not included in the receivership. 2-ER-187.

*Stipulated Final Judgments*. The FTC and Apex settled, and in September 2019, the district court entered Stipulated Orders for Permanent Injunction and Monetary Judgments ("Stipulated Judgments") against the Apex defendants. 3-ER-266–300; 2-ER-221–263. Pursuant to the settlement agreement, the Stipulated Judgments imposed monetary liability against the defendants, which was suspended (subject to reinstatement upon certain conditions) conditioned on payment and the transfer to the Commission of assets listed in the judgments. 2-ER-242-252, 3-ER-287-289. Payments made to satisfy the judgment would be used for "consumer redress. 2-ER-253; 3-ER-290. The Stipulated Judgments also continued the receivership, but with modifications that authorized "[t]he Receiver . . . to liquidate the assets of the [corporate defendants] and . . . remit the net proceeds to the Commission or its designated representative as payment toward the monetary judgments entered against Defendants." 3-ER-292. The Receiver maintained his authority to hire attorneys to carry out his duties and to file any lawsuits necessary to "recover the [a]ssets of the [corporate defendants]," which would include any claims against third parties such as Wells Fargo. *See* 3-ER-366-367; 3-ER-439-440. As described further below, the Receiver exercised that authority in suing Wells Fargo, and the receivership has been extended several times; it now expires in September 2023. *See* FTCSER-3; 2-ER-108-112; 2-ER-145; 2-ER-158; 2-ER-183-85.

8

The FTC later settled with the Transact Pro defendants through a Stipulated Judgment for $3.5 million entered on January 15, 2020. 2-ER-191–220. The court closed the case by docket entry showing "Case Terminated" that day.

## B.    The Receiver's Suit Against Wells Fargo.

In February 2020, the Receiver publicly sought court approval to hire counsel to bring claims "against Wells Fargo for its conduct in connection with the [Apex] 'risk-free' trial scheme." ER-180-82; FTCSER-127. The district court authorized the suit the next month (2-ER-157, 159) on the ground (as the court explained later in the decision on review) that the Receiver had "presented compelling evidence that the Apex Defendants used Wells Fargo to open up a large number of fraudulent, shell accounts which were used to process consumers' credit and debit card payments." 1-ER-4 (citing FTCSER-126–132).[4]

On April 1, 2020, the Receiver sent to Wells Fargo the draft complaint it proposed to file relating to its conduct in the Apex scheme. FTCSER-10 ¶ 10. After unsuccessful settlement negotiations, the Receiver sued Wells Fargo in July 2021 alleging that the bank committed torts and violated state law when it opened shell accounts to enable the defendants' schemes. *See McNamara v. Wells Fargo & Co., et al*., No. 3:21-cv-1245-LAB-DDL (S.D. Cal. filed July 8, 2021) (Dkt. 1)

---

[4] The court also extended the receivership and the Receiver's authority under the preliminary injunctions until March 2021, 2-ER-158-159, and as explained later, received additional extensions through September 2023.

FTCSER-19–107. The Receiver charged Wells Fargo with knowingly using "atypical banking services, widely deviating from accepted banking standards and violating applicable banking laws," despite knowledge of Apex's high chargeback rates, discrepancies in account information, and the nature of the high-risk internet business, to assist Apex in prolonging its deceptive conduct. FTCSER-20 ¶¶ 1-15, 17-21, 39-140, 187-231. By doing so, the Receiver charged, Wells Fargo aided and abetted fraud, breach of fiduciary duty, conversion, and fraudulent transfers, engaged in civil conspiracy, and violated other state law.[5] FTCSER-90-105 ¶¶ 236-310.

For relief, the Receiver's complaint seeks a judgment including "damages to the [receivership companies] proximately caused by Wells Fargo's tortious conduct . . . in an amount to be determined at trial," and "the return of funds acquired by Wells Fargo" fraudulently from the receivership companies, FTCSER-106–107 (prayer for relief). Damages include bank service fees, defense costs, receivership set up costs, and the receivership companies' "legal obligations to

---

[5] The court dismissed several other asserted claims, Dkt. 20, so the state law charges recited in the text remain live before the trial court.

10

satisfy the FTC judgments" in order "to make whole" consumers duped by the scheme. FTCSER-26 ¶ 15, -91 ¶ 240.[6]

A month later Wells Fargo notified the Receiver's counsel that it intended to file a motion to intervene, *see* FTCSER-4–6, FTCSER-12–13 ¶¶ 30-31, but delayed doing so for several months.

## C.    The *AMG* Decision.

On April 22, 2021, the Supreme Court held that Section 13(b) of the FTC Act does not authorize monetary remedies. *AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341, 1344, 1347, 1352 (2021). The Court recognized, however, that Section 19 of the Act expressly provides for "monetary relief," including "the refund of money." *Id*. at 1348-49. The Court emphasized that "nothing" in its decision "prohibits the Commission from using its authority under . . . § 19 to obtain restitution on behalf of consumers." *Id*. at 1352. Since then, this Court and others

---

[6] The complaint also alleges that Wells Fargo played the same role assisting another phony "free trial" scheme involving a different set of defendants sued separately in *FTC v. Triangle Media Corp., et al.*, No. 3:18-cv-01388-LAB-WVG (S.D. Cal. filed June 25, 2018). Wells Fargo also sought intervention in that case, which was recently denied. *Id.,* 2022 WL 4793457 (S.D. Cal. Sept. 30, 2022). The court held that: (1) Wells Fargo lacked standing because its asserted injury was too speculative and not redressable by a favorable decision, *id*. at *2-3; (2) Wells Fargo was not entitled to intervene as of right because its motion was untimely and prejudicial and the bank failed to show a protectable interest that could not be protected without intervention, *id.* at *3-*4; and (3) "permitting permissive intervention is unnecessary and would result in further delay and avoidable litigation." *Id*. at *6.

have acknowledged that *AMG* does not affect the availability of monetary relief under Section 19, ROSCA, or statutes applying enforcement language analogous to that used in ROSCA (set forth in note 3 above). *See FTC v. Hanley*, 2022 WL 187848 (9th Cir. Jan. 20, 2022); *FTC v. Elegant Sols., Inc*., 2022 WL 2072735 (9th Cir. June 9, 2022); *FTC v. Cardiff*, 2021 WL 3616071 (C.D. Cal. June 29, 2021).

**D.    The Transact Pro Defendants' Failed Motion to Set Aside Their Monetary Obligation Based on the *AMG* Decision.**

Several months after *AMG*, the Transact Pro defendants moved to modify or vacate the monetary portion of the January 2020 Stipulated Judgment against them. 2-ER-113-144. They argued that: (1) the district court lacked jurisdiction as a result of *AMG*, rendering the monetary judgment void under Fed. R. Civ. P. 60(b)(4); (2) *AMG* made prospective enforcement of the monetary judgment inequitable under Rule 60(b)(5); and (3) *AMG* created "extraordinary circumstances" that required relief under Rule 60(b)(6). 2-ER-129-143.

The district court denied the motion in September 2021, ruling that: (1) circuit precedent predating *AMG* provided an "arguable basis" for the court's exercise of jurisdiction to issue the Stipulated Judgment, so Rule 60(b)(4) does not apply; (2) unpaid monetary judgments are not "prospective" within the meaning of Rule 60(b)(5) and thus do not qualify for relief under that rule; and (3) there is no extraordinary circumstance under Rule 60(b)(6) because defendants settled even

12

though they knew the FTC's authority to obtain monetary relief was under challenge. 2-ER-102-107.

**E.     Wells Fargo's Motion to Intervene.**

On January 18, 2022 – more than two years after the district court had entered final judgment and closed the case, and more than four months after the court had rejected Transact Pro's attempt to escape the judgment – Wells Fargo moved to intervene to challenge the Apex monetary judgments under *AMG*. The bank contended that *AMG* had invalidated the monetary judgment on which the Receiver's suit against Wells Fargo was based and it sought the same relief the district court had denied to the Transact Pro defendants. 2-ER-59, 69-83.

In the order on review, the district court denied intervention. 1-ER-3-9. The court first held that Wells Fargo failed to show Article III standing. The claimed injury – the costs, potential damages, and purported reputational harm from the Receiver's suit – were neither cognizable for standing purposes nor redressable through intervention. The court explained that *AMG* affected only monetary judgments entered under Section 13(b), but not those entered under Section 19, which was an alternate ground for the Stipulated Judgments. Moreover, the Receiver's claims rested on state law and not the FTC Act. 1-ER-6.

Even if Wells Fargo had standing, the court held, Wells Fargo was not entitled to intervention as a matter of right under the established four-part test.

13

Principally, the motion to intervene was untimely, coming over two years after the case was closed, and nearly that long after the receiver sought permission to sue Wells Fargo, without any excuse for Wells Fargo's delay. 1-ER-7. Further, untimely intervention would prejudice the parties by requiring relitigation of arguments already raised and denied and possibly upending settled judgements. 1-ER-7-8. Wells Fargo also lacked a significantly protectable interest in this case for the same reason it failed to show injury under Article III; and any interest could be protected in Wells Fargo's defense against the Receiver's suit. 1-ER-8. The court denied permissive intervention for the same reasons. 1-ER-8-9. This appeal followed.

## SUMMARY OF THE ARGUMENT

1. Wells Fargo lacks Article III standing to intervene because it failed to show a concrete injury that would likely be redressed by a favorable decision. Wells Fargo suffers no concrete injury from facing a potential judgment resting in part on Section 13(b) of the FTC Act because the underlying judgment also rested independently on Section 19 of the Act, which Wells Fargo does not challenge. Furthermore, the Stipulated Judgments were lawful when issued and the case had been long closed when the Supreme Court decided *AMG*. But even if the underlying judgment could be subject to challenge, Wells Fargo still has no injury because any monetary judgment resulting from the Receiver's suit is speculative.

14

Redress is also purely speculative. Were Wells Fargo permitted to intervene, it would be unlikely to convince the district court to reopen the Stipulated Judgments and apply *AMG* retroactively to remove Section 13(b) as a source of monetary relief. Indeed, the court has already rejected the very same argument. And the Receiver could still bring state law claims and recover funds to satisfy part of the remaining monetary judgments.

2.a. Wells Fargo's motion to intervene as of right was plainly untimely. The clock began to run when the bank should have been aware that its interests might be adversely affected by the case, and it knew or should have known as much multiple times. Wells Fargo knew that accounts it established for Apex were at issue before the enforcement case even began, when the FTC subpoenaed information about the accounts. Wells Fargo was similarly put on notice when the TRO froze the accounts. Wells Fargo was undoubtedly notified that its interests could be affected no later than when the Receiver sought permission to sue the bank in February 2020. Public filings discussed Wells Fargo's allegedly improper conduct with the Apex accounts and the bank's potential monetary liability. The Receiver soon afterwards provided its proposed complaint to Wells Fargo and began settlement discussions. Yet Wells Fargo did not attempt to intervene at any of those multiple opportunities. Even when the Receiver filed suit in July 2021,

15

Wells Fargo still waited six months before attempting to intervene. The district court was well within its discretion to conclude that the bank's filing was untimely.

The district court correctly held that intervention would have prejudiced the FTC and Apex by reopening their agreed-upon Stipulated Judgments, thereby "threaten[ing] the parties' settlement" reached years earlier. Additionally, intervention would have prejudiced the parties by potentially requiring the relitigation of arguments raised in the Transact Pro defendants' motion to modify, which the court had rejected months earlier.

Wells Fargo provides no good reason for its delay. Waiting for the decision in *AMG* is not an excuse because the case had been pending long beforehand and its potential effects were obvious. Nor did meet-and-confer obligations prior to filing the motion justify a six-month delay. The same goes for Wells Fargo's requests to see the TRO and Receiver's declarations, neither of which was necessary for Wells Fargo to know that its interests were at stake.

b. The district court correctly concluded that Wells Fargo failed to show it has a significant protectable interest in this case. Arguments based on *AMG*, which does not apply retroactively to the Stipulated Judgments, would not likely convince the court to decrease the bank's potential monetary liability in the Receiver's suit.

c. Wells Fargo did not show that disposing of this case will impair its ability to protect its interests. No issues remain to be decided in the underlying litigation.

16

3. The district court properly denied Wells Fargo's motion for permissive intervention for the same reasons that it denied intervention as of right. Wells Fargo showed no abuse of discretion in that decision. This Court therefore lacks jurisdiction to review that decision.

## STANDARD OF REVIEW

This Court reviews a district court's denial of Article III standing *de novo*, *Meland v. WEBER*, 2 F.4th 838, 843 (9th Cir. 2021), but "underlying factual findings" regarding standing are reviewed "for clear error." *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc*., 926 F.3d 528, 531 (9th Cir. 2019). The Court reviews a denial of a motion to intervene as of right *de novo*, *Cooper*, 13 F.4th at 864, but rulings on timeliness are reviewed for abuse of discretion. *Smith v. Los Angeles Unified Sch. Dist*., 830 F.3d 843, 853 (9th Cir. 2016). Denial of a motion for permissive intervention is reviewed for abuse of discretion. *Allen v. Bedolla*, 787 F.3d 1218, 1222 (9th Cir. 2015).

## ARGUMENT

## I.  THE DISTRICT COURT CORRECTLY HELD THAT WELLS FARGO LACKS ARTICLE III STANDING TO INTERVENE

A would-be intervenor as of right seeking "relief that is different from that being sought by" a party to the case must independently satisfy the requirements of Article III standing. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017). Doing so requires showing an injury that is: (1) "concrete,

particularized and actual or imminent" and not "speculative"; (2) "fairly traceable to the challenged action"; and (3) "redressable by a favorable ruling." *Oregon Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin*., 860 F.3d 1228, 1234-35 (9th Cir. 2017) (quoting *Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1147 (2013)). On that test, the district court correctly held that Wells Fargo lacked standing because it failed to show a concrete injury redressable by a favorable decision. 1-ER-4.

### A. Wells Fargo Failed to Show a Cognizable Injury

Wells Fargo's claim of injury below was that the Receiver improperly exercised "authority to pursue litigation against Wells Fargo pursuant to an invalidated legal principle" — *i.e*., that Section 13(b) could serve as the basis for a monetary judgment — and that as a result Well Fargo suffered "reputational harm[,] litigation costs [and] potential damages" from the Receiver's lawsuit. *See* 1-ER-6. The district court concluded that Wells Fargo "fail[ed] to make a particularized showing of any reputational harm" from being subject to that suit, and that any litigation costs and potential damages from that case also were insufficient to constitute injuries cognizable for Article III purposes. *Id*.; *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) (litigation costs do not provide standing).

18

Wells Fargo does not challenge the findings that reputational harm and litigation costs do not establish standing. Instead it claims that the court erred because it failed to consider the bank's "principal injury", consisting of "the continuing harm" it faces from being subject to the court's "erroneous orders," which "improperly provide[d] the Receiver with powers that fall beyond the permissible scope of equitable authority under Section 13(b)[.]" Br. 21. The essence of the theory is that Wells Fargo suffered an Article III injury by being "subject[ed] . . . to a lawsuit founded on overbroad applications of equitable authority that were invalidated by the Supreme Court in *AMG Capital*[.]" Br. 21.

To the degree Well Fargo argues that the court erred by failing to address its claim of injury, the argument fails. The district court directly addressed and rejected the claim. Wells Fargo simply does not like the answer. 1-ER-6. Wells Fargo provides a slightly different description of its injury on appeal, but it is simply a repackaging of the claim addressed and rejected below. *See* 2-ER-69-70.

On the merits, the district court correctly found the asserted injury insufficient. The court concluded that any potential damages arising from the Receiver's suit were too speculative to confer standing. 1-ER-6; *see Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("injury in fact must be both concrete *and* particularized; concrete means "it must actually exist."). Any liability or damages judgment Wells Fargo might face in the Receiver's suit are speculative, and not —

19

as the Constitution requires — "concrete" and "imminent." It is far from clear that Wells Fargo will eventually be found liable and required to pay damages. Any eventual liability depends on a chain of events far too conditional to meet the requirement that injury be "actual" or "imminent." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Wright v. Serv. Emps. Int'l Union Loc. 503*, 2022 WL 4295626, at *4 (9th Cir. Sept. 19,  2022) (former employee's "fear of future unauthorized [union] dues deduction is too speculative to confer standing," because it "rests on a 'highly attenuated chain' of inferences," "which rest on . . . rank speculation.") (citing *Clapper*, 133 S. Ct. at 1147-1151). Indeed, even if Wells Fargo could show that the Receiver was operating under an unlawful judgment, it would still lack standing for the same reason.

Further, *AMG* did not affect the state law claims under which the Receiver is seeking monetary relief against the bank (nor does Wells Fargo allege it did). Those claims survive whether or not there is an FTC monetary judgment or receivership, points with which Wells Fargo never grapples. Wells Fargo suffers no injury from the Receiver's suit.[7]

---

[7] For this reason, Wells Fargo's reliance (Br. 21-22) on *Ciesniewski v. Aries Cap. Partners, Inc*., 2018 WL 4491211 (S.D. Ind. Sept. 19, 2018), is misplaced. There, the court held that a plaintiff had a sufficient injury from litigation expenses incurred to defend against garnishment proceedings brought by debt collectors who could not lawfully collect the debt from him. Here, the Receiver filed suit in connection with a valid judgment.

To the extent Wells Fargo's claim of injury rests on the invalidity of the Stipulated Judgments, that argument fails as the orders were fully lawful at the time they were entered which was more than a year before the Supreme Court's decision. "It has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule." *Teague v. Lane*, 489 U.S. 288, 308 (1989). In other words, "[n]ew legal principles . . . do not apply to cases already closed." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758 (1995). *AMG* changed the law going forward,[8] but a new interpretation does not reopen a final judgment for which "the availability of appeal has been exhausted or has lapsed, and the time to petition for certiorari has passed." *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711 n.14 (1974) (cleaned up); *see also FTC v. Ivy Cap., Inc.*, 340 F.R.D. 602, 606 (D. Nev. 2022) (declining to modify Section 13(b) judgment entered nearly ten years before *AMG*).

Wells Fargo contends that the judgment is not final and the case not closed because the court retains jurisdiction to modify the Stipulated Judgments and has issued some post-judgment orders pertaining to the receivership. Br. 39-40. But all claims on the merits of the FTC's complaint have been resolved and the time for

---

[8] *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) ("When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review.").

appeal has long passed. The case is thus closed for purposes of whether a subsequent change in the law can apply. *See Bradley*, *supra*.

**B.      Intervention Would Not Likely Redress Any Injury**

For reasons related to the absence of injury, Wells Fargo's standing also fails for lack of redressability. "To establish Article III redressability, the plaintiffs must show that the relief they seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Juliana v. U.S.*, 947 F.3d 1159, 1170 (9th Cir. 2020). Even if Wells Fargo could show an injury from the Receiver's lawsuit, it cannot show a substantial likelihood that any such injury will be redressed by intervention and modifying the Stipulated Judgments to bar recovery against Wells Fargo under Section 13(b).

According to Wells Fargo, a favorable decision would "modify [the district court's] Receivership orders so they reflect the proper scope of equitable authority under Sections 13(b) and 19 as understood after *AMG Capital*." Br. 25. Doing so, says Wells Fargo, would change "the financial basis at the foundation of" the Receiver's suit and would "limit the amount and kinds of damages the Receiver can actively pursue." *Id*.

Redressability fails for essentially the same reason why Wells Fargo has no injury in the first place: as the district court put it, "the Stipulated Judgments in this action were also based on the FTC's claims for equitable monetary relief

under FTCA Section 19 and Section 5 of ROSCA[,]" which "redress consumer injury resulting from ROSCA violations" and are "not affected by the *AMG* holding." 1-ER-6. And neither does *AMG* affect the Receiver's state law claims that are not based on the FTC's regulatory scheme. The district court was therefore correct to conclude that "even if [it] modified the Stipulated Judgments in this case to preclude the Receiver from seeking to recover monetary damages under Section 13(b)" – the relief sought by Wells Fargo – "the Receiver could still pursue the state law claims. 1-ER-6. To the extent any funds recovered by the Receiver would be used to satisfy part of the Stipulated Judgments, the district court correctly found that the judgments remains supported by Section 19 and ROSCA. In short, Wells Fargo's asserted injury is not redressable by a favorable ruling.

Furthermore, it is highly speculative whether Wells Fargo could succeed in getting the Stipulated Judgments modified to provide the relief it seeks even if it were permitted to intervene. Doing so would require persuading the district court to undo the Stipulated Judgments the parties had agreed to and the court had approved two years earlier, and to retroactively apply the change of law wrought by *AMG*. Wells Fargo has said it would achieve this relief by moving under Fed. R. Civ. P. 60(b) to vacate the monetary liability provisions in the Stipulated Judgments as they apply to the bank. *See* FTCSER-108–117. But getting such relief would require the court to accept Wells Fargo's arguments about the

23

application of *AMG* to a closed case, the scope of Sections 13(b) and 19, and the impact of a modification of the judgment on the parties**.** Those same arguments that Wells Fargo would put forth to support its "anticipated" Rule 60(b) motion, *see* FTCSER-111–117, are markedly similar to the ones already made (and lost) by the Transact Pro defendants in their modification request. FTCSER-120–125 There is no reason to think Wells Fargo will have any more success.[9]

Wells Fargo complains that the district court "impermissibly" skipped a "preliminary determination" of redressability and wrongly assessed instead "the merits of whether Wells Fargo ultimately would succeed in its post-intervention challenges." Br. 24, 25. There was no error. The district court considered (1-ER-6) whether Wells Fargo's "injury could be redressed through intervention" and "a favorable ruling," which is the exact determination *Lujan* demands. *Lujan*, 504 U.S. at 561 (whether it is "likely" that the "injury will be redressed by a favorable decision").

---

[9] Courts have had little difficulty rejecting *AMG*-based challenges under Rule 60(b) especially where Section 19 relief is also available. *See, e.g., FTC v. John Beck Amazing Profits, LLC*, 2021 WL 4313101 (C.D. Cal. Aug. 19, 2021) (declining to reopen case which would culminate in "the same or a substantially similar end result" even where original ruling made no express finding under Rule 19); *FTC v. AH Media Grp., LLC*, 339 F.R.D. 612 (N.D. Cal. 2021) (denying request to vacate stipulated judgment under Rules 60(b)(4), -(5), or -(6)).

24

## II.  THE DISTRICT COURT CORRECTLY DENIED WELLS FARGO'S MOTION TO INTERVENE

Even if Wells Fargo had standing, it did not meet its burden of establishing a right to intervene under Fed. R. Civ. P. 24(a)(2).[10] An intervenor must show four things: (1) its motion is timely; (2) it has a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) disposing of the action without intervention may impair or impede the intervenor's ability to protect that interest; and (4) its interest is not adequately represented by the parties. *Cooper*, 13 F.4th at 864–65 (citations omitted). Failing to satisfy any one of these requirements is fatal to the attempted intervention. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). "Postjudgment intervention," as Wells Fargo sought, "is generally disfavored because it creates delay and prejudice to existing parties." *Calvert v. Huckins*, 109 F.3d 636, 638 (9th Cir. 1997) (cleaned up). Such belated intervention is reserved for "exceptional cases." *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978). Wells Fargo failed to satisfy each of the four factors, the absence of any one of which suffices to affirm the denial of intervention.

---

[10]  Rule 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

### A.   The District Court Properly Exercised its Discretion in Finding Wells Fargo's Motion Untimely

Timeliness "is the threshold requirement for intervention." *Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021); *League of Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). Timeliness turns on the totality of the circumstances, but courts "focus on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Smith*, 830 F.3d at 854 (cleaned up).

As a threshold matter, Wells Fargo challenges the timeliness benchmark applied by the district court. The district court found the intervention motion untimely measured against when Wells Fargo "ha[d] reason to know that [its] interests might be adversely affected by the outcome of the litigation." 1-ER-7 (quoting *Cal. Dept. of Toxic Subst. Control v. Comm. Realty Projects, Inc.*, 309 F.3d 1113, 1120 (9th Cir. 2002)). This formulation has been cited repeatedly, including in this Court's most recent cases discussing timeliness. *See*, *e.g.*, *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022); *California Dep't of Toxic Substances Control*, 309 F.3d at 1120; *United States v. Alisal Water Corp.*, 370 F.3d 915, 923 (9th Cir. 2004). Many of these cases attribute the standard articulated above as deriving from *United States v. State of Oregon*, 913 F.2d 576, 589 (9th Cir. 1990).

26

Wells Fargo's argument that the district court adopted the wrong timing benchmark rests on semantic hair splitting. It contends that the time should start "when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." Br. 32 (quoting *Smith*, 830 F.3d at 858). Wells Fargo never explains, however, how its preferred formulation meaningfully differs from the one applied by the district court. It would be hard pressed to do so in light of this Court's recent recognition that the two verbal formulations are different ways of saying the same thing. In *Kalbers*, the Court described the "crucial date" as "when 'proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties,'" and then cited in support of that proposition the formulation articulated in *State of Oregon* and relied on by the district court. *Id.*, 22 F.4th at 822–23. Wells Fargo has shown no abuse of the district court's discretion in assessing timeliness based on when the bank should have known its interests were at stake. Against that benchmark, Wells Fargo's attempt to intervene was plainly untimely on each of the three factors.

> ### 1. Wells Fargo sought to intervene long after it had reason to know that its interests were at stake.

Wells Fargo moved to intervene in January 2022. It had known about the FTC's investigation into Apex since 2017, when the FTC subpoenaed information from the bank about Apex's accounts. *See* FTCSER-134–135 ¶¶ 32-33. In

November 2018, when the district court entered the TRO and asset freeze, the FTC served the order on Wells Fargo, which acknowledged it and froze the accounts. *See* FTCSER-17 ¶¶ 4, 5. Wells Fargo then participated in third-party discovery seeking information about Apex's accounts. *See* FTCSER-10 ¶ 6. At the very least, Wells Fargo was on notice at this time that its interests might become implicated, since it is no stranger to lawsuits brought by receivers appointed in government law enforcement cases.[11]

Any doubt would have been removed in February 2020 when the Receiver sought the district court's permission to sue the bank. 2-ER-180-182. The district court found as fact that the filing definitively put Wells Fargo "on notice that its interests could be affected." *See* 1-ER-7.

Wells Fargo seeks to excuse itself on the ground that it was not a party to the case, and was not served with the Receiver's filing, claiming that it did not know about the case while it was pending. Br. 33. That seems implausible given Wells Fargo's repeated experience with receiver lawsuits and the obvious possibility that Wells Fargo would ultimately be implicated. This is why large companies have

---

[11] *See, e.g.*, *Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 989 (11th Cir. 2014) (FTC receiver); *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1320 (M.D. Fla. 2015) (SEC receiver), *aff'd*, 677 F. App'x 573 (11th Cir. 2017); *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 958-59 (5th Cir. 2012) (SEC receiver); *Cotton v. Wells Fargo Bank N.A.*, 2011 WL 13227816, at *1 (C.D. Cal. Feb. 22, 2011) (SEC receiver).

general counsel's offices. Unsurprisingly, Wells Fargo provided the district court with no proof of its claim through an affidavit or other evidence.

Wells Fargo is wrong that it could not have known about the Receiver's filing and that the district court clearly erred in determining otherwise because the Receiver's supporting declaration was filed "under seal expressly to prevent Wells Fargo from learning this information." Br. 33-34. The argument falls flat because the Receiver filed a brief *on the public record* supporting the motion to hire counsel, which named Wells Fargo and explained that the Receiver's investigation into Wells Fargo's role in connection with Apex's scheme showed conduct that "was troubling to say the least" and that "the potential recovery [against Wells Fargo] for the Receivership Estate is significant." FTCSER-127

The sealed declaration issue is largely a sideshow in any event. Wells Fargo never explains why the declarations were necessary to its case and never relied on them in a pleading. Further, by April 2020, Wells Fargo and the Receiver had begun settlement negotiations, which unquestionably provided Wells Fargo with notice. The Receiver gave the bank the proposed complaint detailing legal claims and requesting damages, *see* FTCSER-10 ¶ 10, and leaving the bank without any doubt that its interests were at stake in the *Apex* case.

Wells Fargo attempts to excuse its inaction by claiming that there was no reason to intervene in 2020 because the FTC's right to monetary remedies under

29

Section 13(b) had not yet been overturned in *AMG*. That position does not withstand even casual scrutiny. Wells Fargo could not strategically sit out the fight until the law had changed in its favor. It should have intervened to protect its interests within a reasonable time of knowing they were at stake. Indeed, by 2018, two judges on the Ninth Circuit had expressed their view that Section 13(b) did not authorize monetary remedies. *See FTC v. AMG Cap. Man.*, 910 F.3d 417 (9th Cir. 2018). The next year, the Seventh Circuit overruled its precedent and held that Section 13(b) did not allow such remedies. *See FTC v. Credit Bureau Center, LLC*, 937 F.3d 764 (7th Cir. 2019). The *Credit Bureau* decision dramatically increased the odds that the Supreme Court would resolve the issue — as it ultimately did in July 2020 after granting petitions that had been pending for months. *AMG Cap. Man.*, 910 F.3d 417, *cert. granted*, 141 S. Ct. 194 (U.S. July 9, 2020) (No. 19-508); *Credit Bureau Center,* 937 F.3d 764, *cert. granted*, 141 S. Ct. 194 (U.S. July 9, 2020) (No. 19-825). On that background, any reasonable party in Well Fargo's position would have known no later than 2020 during negotiations with the Receiver that the time for intervention was at hand.

In any event, the district court also determined that, even if the triggering date was July 8, 2021, when the Receiver filed its suit, Wells Fargo nonetheless unreasonably waited another six months to seek intervention. The court pointed particularly to the fact that Wells Fargo notified the Receiver's counsel in August

30

2021 that it intended to file the motion to intervene at the end of that month, FTCSER-5 ¶¶ 30-31, FTCSER-12–13, yet waited five more months to do so. 1-ER-7. The court found that Wells Fargo failed to explain that "inordinate delay," 1-ER-7, since by then the case had long been closed. Indeed, Wells Fargo never submitted an affidavit or other proof establishing a factual basis for its delay.

Wells Fargo insists that the case was not closed. Br. 39-42. The docket sheet shows otherwise. So does any reasonable understanding of "closed." All of the FTC's claims against all of the defendants had been resolved in January 2020 through the Stipulated Judgments; no claims or parties remained beyond then. The district court considered the amount of time since the case closed as a factor that "weighs heavily against intervention," mainly due to its effect of undoing settlements that the parties had entered into more than two years earlier. 1-ER-8. It cited cases from this Court affirming denials of intervention that would upend settlement agreements. *E.g.*, *County of Orange v. Air California*, 799 F.2d 535, 538 (9th Cir. 1986); *Cal. Dept. Toxic Subst. Control.* 309 F.3d at 1119. Where movants "desire to relitigate issues already determined," a lack of timeliness "weighs heavily against" them. *Alaniz*, 572 F.2d at 659 and n.2; *State of Oregon*, 913 F.2d at 588.

## 2. Intervention would have prejudiced the parties.

"Prejudice to the parties is the most important consideration" of the three timeliness factors. *Stadnicki on Behalf of LendingClub Corp. v. Laplanche*, 804 F. App'x 519, 521 (9th Cir. 2020) (cleaned up). The district court correctly ruled that allowing Wells Fargo to intervene in January 2022 would prejudice the FTC and Apex by upending their long-agreed-upon, and settled, Stipulated Judgments. 1-ER-7-8. Undoing closed matters is precisely why post-judgment intervention is "generally disfavored." *Calvert*, 109 F.3d at 638.

There can be no doubt that Wells Fargo's intent in intervening here was to upend the settlements and undo the judgments in order to reduce its own possible liability. The whole point of the intervention was to change the monetary remedy agreed to by the parties years before. The district court was correct then to find that "threaten[ing] the parties' settlement" and "upset[ting] the delicate balance achieved" by the Stipulated Judgments was prejudicial. 1-ER-8 (citing *Cal. Dept. of Toxic Subst. Control,* 309 F.3d at 1119). Beyond the FTC and Apex, reopening the case and engaging in additional litigation delay would threaten redress intended for defrauded consumers.

The court also pointed to the prejudice to the parties that would result from Wells Fargo's potential relitigation of issues that the court resolved when it denied the Transact Pro defendants' motion for modification of their judgment based on

*AMG*. *Id*. Wells Fargo contends that was error because it is situated differently

from the Transact Pro defendants and would apply *AMG* in a different manner so

that intervention would not be prejudicial, Br. 38-39, but fails to explain why that

would be so. Both challenges rested on *AMG*'s invalidation of monetary relief

under Section 13(b) so a repeat by Wells Fargo – especially after the court had

rejected the argument -- would harm the parties.

### 3. Wells Fargo gave no valid reason for its delay.

Further, Wells Fargo provided no good reason for its delay, which "weighs

heavily against intervention." *Wilson*, 131 F.3d at 1302.

*AMG* does not excuse Wells Fargo's delay. As discussed above, the

implications of the case were apparent long before the final decision was rendered,

and a reasonable bank would have acted to protect its interests far sooner.

Moreover, and as discussed above, *AMG* undoes neither the monetary judgments

nor the receivership, which rest on grounds beyond Section 13(b).

Even if the Court were to accept Wells Fargo's calculation that its delay

amounts only to the six months it waited to seek intervention after the Receiver

filed his complaint, that time is similarly without any good justification. Wells

Fargo claims that it first needed to satisfy its meet-and-confer requirements, Br.

36-37, but fails to say why that took many months. Wells Fargo also claims that it

changed its litigation strategy and legal theory after "considering the FTC's and the

Receiver's stated grounds for opposing this motion," Br. 37, but fails to explain how changing legal tactics justifies further delay. And the "stated grounds" Wells Fargo refers to are very likely the FTC's and Receiver's briefs in opposition to Wells Fargo's motion to intervene in the related *Triangle* matter which were filed in December 2021. *See Triangle Media*, *supra* at 11 n.6 (Dkt. Nos. 167, 168). After seeing the rebuttal to its first approach, Wells Fargo tried out a new one, but that does not excuse its months-long delay. Instead, it must bear the consequences of its own "strategic decision." *Herb Reed Enter., Inc. v. Bennet*, 2012 WL 5989632, at *4 (D. Nev. Nov. 29, 2012). "A potential intervenor is not allowed to sit on its rights for the entire litigation to see how things turn out and then move at the late stages of the case for a 'do-over.'" *Cal. Dep't of Toxic Substances Control v. World Cleaners, Inc.*, 2017 WL 4769439, at *1 (C.D. Cal. 2017).

Nor is Wells Fargo's delay excused by a purported inability to obtain the TRO and two Receiver declarations describing the bank's relationship with the defendants. Br. 37. Wells Fargo fails to explain – and never provided an affidavit providing a factual basis for –why it needed those documents to determine if its interests were at stake; as discussed above, the brief of the Receiver that was available on the public docket made clear that the bank's interests were directly implicated. Among other things, the Receiver's brief requesting permission to sue

Wells Fargo spelled out the bank's role and responsibility. Wells Fargo does not explain what the sealed declarations would have added.

**B.    Wells Fargo had no "significantly protectable" interest.**

The district court correctly concluded that Wells Fargo had no "significantly protectable" interest under Rule 24(a)(2) for the same reason it failed to establish an injury sufficient to confer standing: intervention will not affect the amount it may be liable for in the Receiver's suit. 1-ER-8. And as explained above at 23-24, Wells Fargo can show little to no likelihood of success in getting the district court to modify the Stipulated Judgments to lessen its potential monetary liability in that suit. *AMG* applies neither to the Stipulated Judgments in this case nor the Receiver's state law claims in its suit.

**C.    Wells Fargo's Ability to Protect Its Interest Is Not Impaired.**

Rule 24 requires a movant to be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2). The inquiry is whether "an absentee would be substantially affected in a practical sense by the determination made in an action." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

Disposition of this case will not impair Wells Fargo's ability to protect its interests. Intervention typically focuses on the future effect *pending* litigation will have on the intervenors' interests. *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau*

35

*of Land Mgmt.*, 2020 WL 1052518, at *2 (D. Or. Mar. 4, 2020); *Palmer v. Nelson*, 160 F.R.D. 118, 122 (D. Neb. 1994); *see also United States v. N. Colorado Water Conservancy Dist.,* 251 F.R.D. 590, 598–99 (D. Colo. 2008) ("The claimed impairment under Rule 24(a)(2) must result from some pending action of the court.") This case is closed. There is no future disposition that can affect Wells Fargo's interests because nothing is left to be decided in this action where all claims as to all parties have been resolved. In addition, Wells Fargo is raising a new claim that was not the subject of the FTC's enforcement action.

Finally, the district court observed that Wells Fargo may raise arguments in the Receiver's suit that it intended to make in this case. *See* 1-ER-6; *accord Triangle Media*, 2022 WL 793457, at *4.

## III. THE DISTRICT COURT PROPERLY DENIED PERMISSIVE INTERVENTION

Wells Fargo also moved for permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). Such request may be granted "where the applicant 'shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common.'" *Perry*, 587 F.3d at 955. The "timeliness element" is analyzed "more strictly" in deciding permissive intervention than intervention as of right. *Wilson*, 131 F.3d at 1308.

The district court denied permissive intervention for the same reasons that it denied intervention as of right. 1-ER-9. Wells Fargo's challenge to that ruling fails for all the reasons explained above. Because the court's decision fell well within its discretion, this Court lacks jurisdiction over that ruling. *Cooper,* 13 F.4th at 868.

## CONCLUSION

The district court's denial of Wells Fargo's motion to intervene as of right under Fed. R. Civ. P. 24(a)(2) should be affirmed. The district court's denial of Wells Fargo's motion for permissive intervention under Fed. R. Civ. P. 24(b) should be dismissed for lack of jurisdiction.

Date: October 11, 2022

Respectfully submitted,

ANISHA S. DASGUPTA
   *General Counsel*

JOEL MARCUS
   *Deputy General Counsel*

/s/ *Michael D. Bergman*
MICHAEL BERGMAN
   *Attorney*

FEDERAL TRADE COMMISSION
600 Pennsylvania Avenue, N.W.
Washington, D.C. 20580

Of Counsel:
JONATHAN W. WARE
SARAH WALDROP
*Attorneys*
FEDERAL TRADE COMMISSION
Washington, D.C. 20580

38

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)** _____22-55342_____

The undersigned attorney or self-represented party states the following:

[x ] I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**  _s/_Michael D. Bergman_____ **Date**  **Oct. 11, 2022**_____
*(use "*s/[typed name]*" to sign electronically filed documents)*
+

1

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  __22-55342_____

I am the attorney or self-represented party.

**This brief contains ____8,851____words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App.

P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[x] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
   Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select
   only one)*:
   [ ] it is a joint brief submitted by separately represented parties;
   [ ] a party or parties are filing a single brief in response to multiple briefs; or
   [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** __s/ *Michael D. Bergman*_____ **Date** __Oct. 11, 2022_____
*(use "s/[typed name]" to sign electronically filed documents)*

# ADDENDUM

## STATUTES AND REGULATIONS

Fed. R. Civ. P. 24 provides:        **INTERVENTION**

**(a) Intervention of Right.**

On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

**(b) Permissive Intervention.**

(1) In General. On timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact.

(2) By a Government Officer or Agency. On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

**(c) Notice and Pleading Required.** A motion to intervene must be served on the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing brief using the appellate CM/ECF system on October 11, 2022. All participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ *Michael D. Bergman*
Michael D. Bergman
Attorney
Federal Trade Commission
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580