**No. 22-55342**

In the

# United States Court of Appeals
## For the Ninth Circuit

———————————

FEDERAL TRADE COMMISSION,
*Plaintiff-Appellee,*

v.

APEX CAPITAL GROUP, LLC, a Wyoming limited liability company, *et al.,*
*Defendants-Appellees.*

v.

WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A., proposed Intervenors,
*Movants-Appellants,*

———————————

THOMAS W. MCNAMARA,
*Receiver-Appellee.*

———————————

On Appeal from the United States District Court
for the Central District of California
The Honorable John F. Walter
Case No. 2:18-cv-09573-JFW-JPR

———————————

**REPLY BRIEF OF APPELLANTS WELLS FARGO & COMPANY AND WELLS FARGO BANK, N.A.**

———————————

*(Counsel listed on following page)*

———————————

December 1, 2022

Kevin M. Lally
MCGUIREWOODS LLP
355 South Grand Avenue
Suite 4200
Los Angeles, CA 90071
T: (213) 457-9862
klally@mcguirewoods.com

David C. Powell
Alicia A. Baiardo
MCGUIREWOODS LLP
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111
T: (415) 844-9944
dpowell@mcguirewoods.com
abaiardo@mcguirewoods.com

Brian D. Schmalzbach
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1000
bschmalzbach@mcguirewoods.com

*Counsel for Movants-Appellants Wells Fargo & Co.*
*and Wells Fargo Bank, N.A.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................3

I.     Wells Fargo Has Article III Standing. ...........................................................3

      A.      Wells Fargo has a Cognizable, Concrete Injury. .................................4

      B.      Wells Fargo's Injury Can Only Be Redressed by the District Court That Issued the Challenged Orders. ..........................................6

II.     Wells Fargo Has a Right to Intervene. ..........................................................8

      A.      Wells Fargo Has a Significant Protectable Interest. ...........................8

      B.      Wells Fargo's Ability to Protect its Interests is Impaired. ..................9

      C.      Wells Fargo Timely Moved to Intervene. .........................................11

           1.      The District Court Abused its Discretion in Applying an Incorrect Legal Standard. .........................................................11

           2.      The District Court's Determination was Illogical, Implausible, and Without Support in the Record. ..................13

           3.      Wells Fargo Could Not Intervene Until the Receiver Filed the Wells Fargo Litigation. ..............................................14

           4.      Wells Fargo Could Not Intervene Until It Satisfied the District Court's Strict Meet-and-Confer Requirements...........18

           5.      The District Court Abused Its Discretion in Finding that Wells Fargo Brought Its Motion Late in the Proceeding.........20

           6.      The District Court Abused its Discretion in Finding Prejudice....................................................................................23

CONCLUSION ....................................................................................................25

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMG Capital Management, LLC v. FTC*,
   141 S. Ct. 1341 (2021)................................................................1, 21

*Bradley v. School Bd. of City of Richmond*,
   416 U.S. 696 (1974)................................................................6

*Chavez v. PVH Corp.*,
   2014 WL 6617142 (N.D. Cal. Nov. 20, 2014) ..................................11

*Ciesniewski v. Aries Cap. Partners, Inc.*,
   No. 1:16-CV-817-WTL-TAB, 2018 WL 4491211
   (S.D. Ind. Sept. 19, 2018) ......................................................5

*Clark v. City of Seattle*,
   899 F.3d 802 (9th Cir. 2018) ...................................................16

*FTC v. Ivy Cap., Inc.*,
   340 F.R.D. 602 (D. Nev. 2022) ................................................6

*FTC v. Noland*,
   No. CV-20-00047-PHX-DWL, 2021 WL 1237206 (D. Ariz. Apr. 2, 2021),
   *appeal dismissed*, No. 21-15767, 2021 WL 3176107
   (9th Cir. July 23, 2021).........................................................15

*FTC v. Zurixx, LLC*,
   No. 2:19-cv-00713-DK-DAO, 2021 WL 3510804
   (D. Utah Aug. 10, 2021) ..................................................15, 16

*Grant v. A.B. Leach & Co.*,
   280 U.S. 351 (1930)................................................................7

*Grondal v. United States*,
   37 F.4th 610 (9th Cir. 2022) ...................................................17

*Johnson-Bennett v. Select Portfolio Servicing, Inc.*,
   No. CV 15-5408-JFW (JCX), 2015 WL 12806455
   (C.D. Cal. July 24, 2015).......................................................19

*Lujan v. Defs. Of Wildlife,*
   504 U.S. 555 (1992) .............................................................................6

*Maya v. Centex Corp.,*
   658 F.3d 1060 (9th Cir. 2011) ...........................................................6

*Mullis v. U.S. Bankr. Court for Dist. of Nev.,*
   828 F.2d 1385 (9th Cir. 1987) ....................................................7, 10

*Orange Cnty. v. Air Cal.,*
   799 F.2d 535 (9th Cir. 1986) ............................................................23

*Perry v. Schwarzenegger,*
   630 F.3d 898 (9th Cir. 2011) ..............................................................8

*Smith v. Los Angeles Unified Sch. Dist.,*
   830 F.3d 843 (9th Cir. 2016) ......................................11, 12, 13, 23

*Smith v. Marsh,*
   194 F.3d 1045 (9th Cir. 1999) ..........................................................23

*Town of Chester v. Laroe Estates, Inc.,*
   137 S. Ct. 1645 (2017) ......................................................................14

*TransUnion LLC v. Ramirez,*
   141 S. Ct. 2190 (2021) ........................................................................3

*U.S. v. Palomar-Santiago,*
   141 S. Ct. 1615 (2021) ......................................................................10

*U.S. v. State of Or.,*
   745 F.2d 550 (9th Cir. 1984) ............................................................24

*Underwriters Nat. Assur. Co. v. N.C. Life & Acc. & Health*
   *Ins. Guar. Ass'n,*
   455 U.S. 691 (1982) ...........................................................................10

*W. Watersheds Project v. Haaland,*
   22 F.4th 828 (9th Cir. 2002) ......................................................12, 13

*Yniguez v. Arizona,*
   939 F.2d 727 (9th Cir. 1991) ..............................................................8

iii

**Other Authorities**

Donald R. C. Pongrace, *Requirement of Notice of Third-Party Subpoenas Issued in Sec Investigations: A New Limitation on the Administrative Subpoena Power*,
33 AM. U. L. REV. 701 (1984) ............................................................ 18

SEC, *Investor Bulletin: SEC Investigations* (Oct. 22, 2014),
https://www.sec.gov/oiea/investor-alerts-bulletins/ib_investigations ................................................................ 18

## INTRODUCTION

The question in this case is whether Wells Fargo can intervene to challenge the district court's orders allowing the Receiver to wage a litigation war against Wells Fargo based on an invalid theory of authority. The district court, the FTC and the Receiver, however, have miscast Wells Fargo's basis for intervention as an attempt to reopen the Stipulated Judgments with third parties. They are wrong. Wells Fargo has rejected and continues to reject any intent to disturb those underlying Stipulated Judgments. It simply objects to the ongoing unlawful campaign to satisfy those judgments by pursuing Wells Fargo's assets.

That mischaracterization of Wells Fargo's motion to intervene underscores the district court's errors in barring Wells Fargo's challenge under Article III and Rule 24. This Court should reverse and allow Wells Fargo to challenge the district court's orders. These orders set a bounty on Wells Fargo based on the construction of the FTC Act that the Supreme Court just rejected in *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341, 1352 (2021) (holding that Section 13(b) of the FTC Act "does not grant the Commission authority to obtain equitable monetary relief"); *see* Opening Br. at 1.

As to Article III standing, Wells Fargo's injury is concrete and particularized because Wells Fargo is *now* being pursued based on orders appointing the Receiver and granting him authority to pursue Wells Fargo that are rooted in an invalidated

construction of Section 13(b). Wells Fargo's injury can be redressed by the district court vacating or modifying its orders granting the Receiver authority to pursue Wells Fargo to collect monetary damages awarded in the Stipulated Judgments. Indeed, this redress can *only* be made before the district court that issued the orders because challenges to the orders elsewhere would be barred by the collateral-attack doctrine.

As to Wells Fargo's intervention, again, the district court, the FTC, and the Receiver fail to understand that a court cannot begin to measure timeliness until an intervening party has Article III standing to intervene. In Wells Fargo's case, it did not have Article III standing until the Receiver filed the Wells Fargo Litigation in July of 2021. Also critical to the timeliness analysis is that Wells Fargo was bound by the district court's Standing Order, which required Wells Fargo to meaningfully meet and confer before moving to intervene. In doing so, Wells Fargo complied with the letter and spirit of the Standing Order, by considering the FTC's and the Receiver's arguments and consequently narrowing the issues for intervention. The upshot of the district court's erroneous ruling is that Wells Fargo will be boxed out from challenging orders that have *already* created concrete and particularized injury.

And the district court's circumvention of recent Supreme Court precedent will be rendered effectively unreviewable. This Court should reverse.

**ARGUMENT**

## I.  Wells Fargo Has Article III Standing.

The FTC and the Receiver continue to mischaracterize and marginalize Wells Fargo's injuries as "too conditional" to meet the requirement that its injury is actual or imminent. Receiver Br. at 37-38; FTC Br. at 19-20. However, Wells Fargo showed that it satisfies all the Article III requirements to challenge the erroneous orders instigating the Receiver's monetary damages campaign. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); Opening Br. at 21-27. First, Wells Fargo is suffering the Article III injury of being subject to that litigation campaign, which the district court ignored in miscasting Wells Fargo's injury as the "cost or potential damages of litigation." 1-ER-6. The Receiver and the FTC parrot that analysis without offering any persuasive explanation why Article III requires federal courts to turn a blind eye to Wells Fargo's injury. Receiver Br. at 37; FTC Br. at 18-19. Second, Wells Fargo's injury is redressable. The district court erroneously held that Wells Fargo's injury could be redressed in the Wells Fargo Litigation. Like the district court, the FTC and the Receiver have failed to address the collateral-attack doctrine that requires Wells Fargo to seek redress before the district court in this case. And there is no dispute that Wells Fargo satisfies the traceability requirement.

3

Opening Br. at 23.

### A.   Wells Fargo has a Cognizable, Concrete Injury.

Wells Fargo's injury is concrete and actual. Relying on an inaccurate view of Wells Fargo's injury, the FTC and the Receiver argue that Wells Fargo's injury is too speculative to confer standing because any liability or damages judgment is uncertain. Receiver Br. at 37-38; FTC Br. at 18-22; 1-ER-6. The FTC and the Receiver rely on the district court's erroneous analysis focusing only on the "injuries stemming from the cost of potential damages of litigation," but those injuries are just the consequential effects of Wells Fargo's actual injury. 1-ER-6. Even though Wells Fargo does not seek to alter or vacate the Stipulated Judgments, the FTC mischaracterizes Wells Fargo's injury by arguing that the Stipulated Judgments were valid orders at the time they were entered into. FTC Br. at 21.

Wells Fargo does not assert that its injury is based upon a future, potential finding of liability or a potential judgment for damages as a result of the Receiver's lawsuit. *See* Opening Br. at 21. Instead, Wells Fargo's injury is the district court's deputization of the Receiver to hire outside counsel and sue Wells Fargo for monetary damages that the Receiver is no longer properly entitled to pursue. With orders founded on a now invalid construction of Section 13(b), the district court empowered the Receiver to pursue Well Fargo. The Receiver took full advantage of the impermissible grant of power, such that once the Receiver sued Wells Fargo,

Wells Fargo suffered a concrete and actual injury. *See, e.g., Ciesniewski v. Aries Cap. Partners, Inc.*, No. 1:16-CV-817-WTL-TAB, 2018 WL 4491211, at *2 (S.D. Ind. Sept. 19, 2018) (finding standing where plaintiff had to defend himself in a prior garnishment action later found to be brought by parties who were not entitled to collect).[1] In other words, it is *not* the potential damages and liability stemming from the Receiver's unlawful pursuit that is Wells Fargo's concrete injury, but rather the unlawful pursuit itself.

Further, the FTC's arguments about the validity of the Stipulated Judgments are a red herring. *See* FTC Br. at 21-22. Wells Fargo's motion to intervene, and this appeal, do not seek to vacate or amend those Stipulated Judgments. Wells Fargo was not a party to the Stipulated Judgments and thus does not have standing to challenge the Stipulated Judgments – unlike the SIA Transact Pro defendants, who challenged the Stipulated Judgments as a consenting party to the Stipulated Judgments. Wells Fargo's intervention to challenge the district court's orders is further distinguishable because Wells Fargo's challenge is only to the overbroad and unlawful reach granting the Receiver the ability to sue Wells Fargo to recover based upon the monetary judgments to the extent they are erroneously predicated on Section 13(b).

---

[1] The FTC's attempt to distinguish *Ciesniewski* from the Wells Fargo Litigation by arguing the Receiver's state law claims were valid misses the mark. The validity of underlying state claims is not at issue here. Rather, the Receiver pursues Wells Fargo based on the invalidated application of Section 13(b) which renders the overall pursuit unlawful. *See* FTC Br. at 20.

It is not a direct challenge to the Stipulated Judgments. *See* Opening Br. at 1, 3, 18,21, 23, 30, 31. Therefore, the FTC's citations to *Bradley v. School Bd. of City of Richmond*, 416 U.S. 696, 711 n.14 (1974), and *FTC v. Ivy Cap., Inc*., 340 F.R.D. 602, 606 (D. Nev. 2022), are beside the point. *See* FTC Br. at 21.

### B. Wells Fargo's Injury Can Only Be Redressed by the District Court That Issued the Challenged Orders.

Wells Fargo's injury stems from the district court's orders appointing the Receiver and authorizing the Receiver to sue Wells Fargo. Opening Br. at 18, 21, 30, 31; *see also* 2-ER-157; 3-ER-438. Its injury can be redressed by vacating or modifying those orders. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). The district court, the FTC, and the Receiver all erroneously engaged in a merits-based analysis whether the Receiver could nevertheless pursue monetary damages under Section 19, ROSCA, and state law claims to determine redressability – even though those issues were not before the district court. Receiver Br. at 38-41; FTC Br. at 22-24; 1-ER-6; 2-ER-26–30. It is well established that redressability is a preliminary determination, with the merits to be decided after full briefing of the substantive issues post-intervention. *Maya v. Centex Corp*., 658 F.3d 1060, 1068 (9th Cir. 2011). Wells Fargo has been denied the ability to fully brief the substantive issues.

If Wells Fargo succeeds in challenging the appointment orders, its injury will be redressed. If the district court were to modify its order appointing the Receiver to reflect the proper scope of his equitable authority, the Receiver would no longer be

able to pursue Wells Fargo for monetary damages rooted in the Stipulated Judgments. Such a determination would need to be made after Wells Fargo is permitted to intervene and then to brief the merits.

Further, the district court erred in holding that Wells Fargo's injury could be redressed by raising the issue in the Wells Fargo Litigation. 1-ER-8. The collateral-attack doctrine—which both the FTC and the Receiver ignore in their response briefs—requires Wells Fargo's challenge to be brought in the action that entered the challenged orders. Any challenges to the Receiver's authority must be made to the district court that issued the order; challenges in any other district court would be stricken as a collateral attack on the orders. The collateral-attack doctrine thus requires that Wells Fargo's injury be redressed by the district court – and *only* the district court—so it is redressable by a favorable decision. *See Mullis v. U.S. Bankr. Court for Dist. of Nev.*, 828 F.2d 1385, 1393 (9th Cir. 1987); *Grant v. A.B. Leach & Co.*, 280 U.S. 351, 359 (1930) (holding that an erroneous appointment of a receiver "plainly…[can] not [be] questioned by a collateral attack in another court."). Wells Fargo's challenge of the district court's orders in any other district court would put Wells Fargo and the parties right where we are now – knocking on the doorstep of the district court that issued the challenged orders.

For these reasons, the district court erred in holding that Wells Fargo lacks a concrete injury that can be redressed in this case. To the contrary, Wells Fargo satisfied all the requirements of Article III standing.

## II. Wells Fargo Has a Right to Intervene.

Wells Fargo showed that it satisfied the four elements for intervention as of right because: (1) it has a significant protectable interest in the action; (2) it cannot protect that interest without intervention; (3) its application was timely; and (4) the existing parties do not adequately represent Wells Fargo's interest. *Perry v. Schwarzenegger*, 630 F.3d 898, 903 (9th Cir. 2011); Opening Br. at 27-42. The Receiver and the FTC echo the district court's flawed analysis of those factors, but fail to impeach Wells Fargo's right to intervene.[2]

### A. Wells Fargo Has a Significant Protectable Interest.

Because Wells Fargo has Article III standing, *see supra,* Part I, it follows that Wells Fargo also has a protectable interest warranting intervention. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991) (holding that the standard for a significant protectable interest is less stringent than that of Article III standing). Appellees offer no persuasive argument against Wells Fargo's protectable interest besides doubling

---

[2] Neither the FTC nor the Receiver contest that "the existing parties may not adequately represent the applicant's interest." This factor is thus conceded.

down on the mistaken arguments that it lacks Article III standing. Receiver Br. at 35-36; FTC Br. at 35; 2-ER-32–34.

The district court provided a single perfunctory sentence that Wells Fargo failed to demonstrate a protectable interest for the same reasons it failed to establish an injury sufficient to confer standing. 1-ER-8. Likewise, Appellees mischaracterize Wells Fargo's argument regarding its protectable interest and the relief it seeks. The FTC argues that "Wells Fargo can show little to no likelihood of success in getting the district court to modify the Stipulated Judgments" and therefore does not have a significant protectable interest. FTC Br. at 35. The Receiver argues that Wells Fargo's interest "is too nebulous to consider as a real interest." Receiver Br. at 36. But Wells Fargo is *not* seeking to modify the Stipulated Judgments; it seeks to vacate the district court's orders empowering the Receiver to pursue Wells Fargo based on an erroneous construction of Section 13(b) of the FTC Act. Opening Br. at 1, 3, 18, 21, 23, 30, 31. Just as the unlawful pursuit by the Receiver predicated on erroneous district court orders is Wells Fargo's cognizable injury to support Article III standing, it is the core of Wells Fargo's significant protectable interest.

## B. Wells Fargo's Ability to Protect its Interests is Impaired.

The district court also incorrectly found that Wells Fargo can protect its interests by raising its arguments in the Wells Fargo Litigation, because it ignored the collateral-attack doctrine that bars Wells Fargo from challenging the district

9

court's orders in another court. Thus, the district court was wrong in finding that Wells Fargo could protect its interests by raising the scope of the Receiver's authority in the Wells Fargo Litigation. Although the Appellees do not substantively address Wells Fargo's arguments concerning the collateral-attack doctrine in their briefing before this Court, they wrongly urged the district court that Wells Fargo could attack the Receiver's authority in the Wells Fargo Litigation. Receiver Br. at 12; FTC Br. at 14, 36; 2-ER-46. This is wrong as a matter of law.

The collateral-attack doctrine requires that an entity seeking to challenge an order do so before the court that issued the order in the case in which the original order was issued. *U.S. v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021). This doctrine compelled Wells Fargo to challenge the district court's orders related to the Receivership in this case – not in the Wells Fargo Litigation. *See Mullis*, 828 F.2d at 1393. As a matter of law, Wells Fargo was compelled to seek redress from the district court that entered the orders related to the Receivership and is prohibited from raising its arguments in the Wells Fargo Litigation. *Underwriters Nat. Assur. Co. v. N.C. Life & Acc. & Health Ins. Guar. Ass'n*, 455 U.S. 691, 710 (1982). The district court's order denying intervention cut off Wells Fargo's only lawful, procedural vehicle to seek redress from the district court's orders, and it erred in

10

doing so. Thus, Wells Fargo has satisfied that the ability to protect its interests are impaired and no other party can protect its interest.

### C. Wells Fargo Timely Moved to Intervene.

The threshold issue for intervention is not timeliness alone, but the timeliness of intervention once Article III standing is established and whether that timing prejudices the other parties to the litigation. The district court's order, applying the incorrect legal standard, and the Appellees' Answering briefs discuss the purported untimeliness of Wells Fargo's intervention – proposing various points in time when Wells Fargo theoretically should have intervened – without regard to the threshold issue of whether, at those times, Wells Fargo had Article III standing to intervene and whether its intervention would have caused prejudice to the parties. 1-ER-7; Receiver Br. at 17-34; FTC Br. at 25-35.

### 1. The District Court Abused its Discretion in Applying an Incorrect Legal Standard.

The district court abused its discretion in determining that Wells Fargo had to intervene as soon as it knew or should have known that its "interests might be adversely affected by the outcome of the litigation," because the district court focused on the hypothesized outcome of the litigation, rather than the incentives and actions of the existing parties. *See* 1-ER-7 (citing *Chavez v. PVH Corp.*, 2014 WL 6617142, at *5 (N.D. Cal. Nov. 20, 2014)); *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 858 (9th Cir. 2016). As Appellees agree, "***the crucial date for***

11

***assessing the timeliness of a motion to intervene is when [Wells Fargo] should***
***have been aware that their interests would not be adequately protected by the***
***existing parties.***"  Receiver Br. at 16 (emphasis in original) (citing *Smith*, 830 F.3d
at 858; *W. Watersheds Project v. Haaland*, 22 F.4th 828, 836 (9th Cir. 2002); *see*
*also* FTC Br. at 27.

Using an improper legal standard, the district court incorrectly held that Wells
Fargo's intervention was not timely, without regard to: (a) Article III standing
requirements, (b) its own Standing Order, or (c) prejudice to the parties. On that
basis, the district court held that Wells Fargo was on notice that its interests might
be adversely affected when: (1) the Receiver filed his motion requesting permission
to sue Wells Fargo on February 4, 2020 (even though Wells Fargo was not a party
to the litigation and was not served with the orders); (2) the Receiver entered into
pre-litigation negotiations with Wells Fargo to explore resolution of the Receiver's
threatened claims in April 2020 (even though the Receiver had not filed the Wells
Fargo Litigation); (3) the Receiver filed the Wells Fargo Litigation on July 8, 2021
(before Wells Fargo had met and conferred with the Receiver as required by the
district court's Standing Order); and (4) the SIA Transact Pro Defendants moved to
modify the Stipulated Judgments in the *Apex* case on July 9, 2021 (before Wells
Fargo had met and conferred with the Receiver as required by the district court's
Standing Order). 1-ER-7.

### 2. The District Court's Determination was Illogical, Implausible, and Without Support in the Record.

Wells Fargo has established that the district court abused its discretion in applying the three primary factors identified in *Smith*: "(1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *See* Opening Br. at 31-41; 1-ER-7 (internal quotation marks omitted); *see also W. Watersheds Project*, 22 F.4th at 836 (citing and quoting *Smith*, 830 F.3d at 854). The district court's analysis was flawed for several reasons. First, Wells Fargo established that it intervened at the only stage of the proceeding that it lawfully could, because before the Receiver filed the Wells Fargo Litigation, Wells Fargo lacked Article III standing. *See* Opening Br. at 36. Second, Wells Fargo could not intervene before it met and conferred, as required by the district court's Standing Order, and Wells Fargo consequently narrowed the issues that it challenged. 4-ER-730, 731; Opening Br. at 36, 37. Thus, any purported delay was reasonable. Lastly, the case may have been administratively closed, but remains active and open for purposes of the Receiver's authority which Wells Fargo is challenging, and most importantly no parties will be prejudiced by

13

Wells Fargo's intervention because it is not challenging the Stipulated Judgments and would not force any of the parties to litigate across multiple actions.

### 3. Wells Fargo Could Not Intervene Until the Receiver Filed the Wells Fargo Litigation.

The Receiver exaggerates the facts by arguing that "Wells Fargo chose to sit on the sidelines as key dates passed – month, after month, after month, after month, after month" and therefore the district court did not abuse its discretion in finding that Wells Fargo's intervention was untimely. Receiver Br. at 18. The Receiver's recitation of the many "month[s]" fails to acknowledge or consider – just as the district court did not – that Wells Fargo *did not have Article III standing to intervene* during many of those months. Wells Fargo had to wait to see if the Receiver would *actually* pursue litigation against Wells Fargo based on authority rooted in an invalidated legal theory. Timeliness must be considered from when the intervenor obtained Article III standing to intervene. *See Town of Chester v. Laroe Estates, Inc*., 137 S. Ct. 1645, 1651 (2017) ("For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a co-plaintiff, or an intervenor of right. Thus, at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests."). Waiting to establish Article III standing before intervening is not an excuse, nor is it delay for a "strategic advantage," but it is a constitutional requirement.

The district court held, and the FTC and the Receiver argue, that Wells Fargo could, and should, have intervened when: (1) the Receiver filed his motion requesting permission to sue Wells Fargo on February 4, 2020; and (2) the Receiver entered into pre-litigation discussions with Wells Fargo to explore the Receiver's threatened claims in April 2020. 1-ER-7; Receiver Br. at 19-22 ; FTC Br. at 28-30. But the district court and Appellees fail to identify what injury would have satisfied the "injury" requirement of Article III standing at those points in time. Wells Fargo's concrete and particularized injury was the filing of the Wells Fargo Litigation. Before the Wells Fargo Litigation was filed, there was no particularized or concrete injury, instead all that existed was a hypothetical injury that could only materialize when the Receiver filed a suit against Wells Fargo.[3]

---

[3] The Receiver's reliance on *Zurixx* and *Noland* is misplaced because unlike those cases, here there was no live case or controversy for Wells Fargo to challenge immediately following the *AMG Capital* decision. In *Noland*, the proposed intervenors sought "to intervene as a class, seek a declaratory judgment that the FTC's litigation of [the] action [] violated their rights to association, contract, and to receive the benefits of their contracts with [defendants], and also seek an injunction preventing the FTC from depriving them of the same." *FTC v. Noland*, No. CV-20-00047-PHX-DWL, 2021 WL 1237206, at *2 (D. Ariz. Apr. 2, 2021), *appeal dismissed*, No. 21-15767, 2021 WL 3176107 (9th Cir. July 23, 2021). In other words, the proposed intervenors' injury was caused by the FTC's litigation. The *Noland* proposed intervenors were seeking to challenge the existence of the FTC's litigation as a whole. The district court found that they could have brought their challenge to the FTC's litigation at any point in the preceding 13 months of litigation. *Id.* at *4-5. The *Noland* court found intervention untimely because the proposed intervenors waited to intervene after many key milestones had already occurred in the case. *Id.* In *Zurixx*, the proposed intervenors were students who had purchased Zurixx's services and did not agree that *Zurixx* had engaged in deceptive practices. *FTC v.*

The Receiver goes further by arguing that non-parties should intervene any time there is a *threat* of a lawsuit based on an unresolved circuit split. Receiver Br. at 20-21. The result would be that every potential non-party with any notion that its interests might be affected by a lawsuit would intervene prematurely to preserve its right to intervene *in the event* an actual lawsuit is filed ***and*** *in the event* a circuit split is ever considered or resolved by the Supreme Court or by legislation. This result invites an unmanageable spike of intervention that Article III standing and constitutional principles are intended to prevent. *Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018) ("Article III of the Constitution empowers us to adjudicate only 'live cases or controversies,' not 'to issue advisory opinions [or] to declare rights in hypothetical cases.'"). Despite well-established constitutional principles, intervening before the Wells Fargo Litigation was filed would have necessarily required that the district court declare rights based on a hypothetical case, with hypothetical claims, and grounded on hypothetical legal theories. It was only after

---

*Zurixx, LLC*, No. 2:19-cv-00713-DK-DAO, 2021 WL 3510804, at *1 (D. Utah Aug. 10, 2021). They therefore sought to intervene to protect their access to the services Zurixx provided. *Id*. at *2. The district court denied intervention, finding that proposed intervenors should have, and could have intervened earlier in the litigation, when the Receiver shut down Zurixx's operations 18 months earlier. *Id*. at *4. Wells Fargo is not similarly situated as the proposed intervenors in *Noland* and *Zurixx* because Wells Fargo was not directly involved in the FTC litigation against the Apex and Triangle Defendants, Wells Fargo does not seek to amend or vacate the Stipulated Judgments, and Wells Fargo did not have standing to intervene at an earlier time.

the Wells Fargo Litigation was filed in July 2021, that a concrete and particularized injury manifested, and a live case or controversy existed.

The Receiver's complaint in the Wells Fargo Litigation concedes that the Receiver is seeking damages "to satisfy the FTC judgments" in order to "make whole the consumers who were defrauded as a result of the Apex and Triangle frauds that Wells Fargo facilitated," and to cover the FTC's costs of defending the *Triangle* and *Apex* matters (including Receivership costs in each matter). *See* FER-122. The Wells Fargo Litigation also seeks treble and punitive damages, increasing the Receiver's potential recovery to more than half a billion dollars to satisfy the FTC judgments. Opening Br. at 13-14. Before the Wells Fargo Litigation was filed, intervention would have been based on conjecture and hypothetical legal theories that Wells Fargo predicted would be the basis of any forthcoming suit. *Grondal v. United States*, 37 F.4th 610, 621-22 (9th Cir. 2022) (where there was only the threat of a lawsuit, "[t]here is no evidence in the record that any such lawsuit has been filed by Mill Bay, and conjectural or hypothetical injuries cannot create Article III standing.").

The FTC contends that Wells Fargo was on notice that its interests might be implicated when the FTC served a subpoena on Wells Fargo during its investigation of the Apex Defendants and when Wells Fargo was served with third-party discovery seeking information about the Apex accounts, thus purportedly triggering the time

to intervene. FTC Br. at 27-28. If this were true, all third-party financial institutions, and other non-parties, would be required to intervene in a government enforcement action every time the regulatory authority serves third-party discovery, so they could preserve a future right to intervene *in the event* the inquiry *could* implicate the non-parties' interests. The SEC and FTC serve hundreds, if not thousands, of subpoenas every year. *See* SEC, *Investor Bulletin: SEC Investigations* (Oct. 22, 2014), https://www.sec.gov/oiea/investor-alerts-bulletins/ib_investigations (The SEC "works on hundreds of investigation each year" and can issue subpoenas requiring the production of documents and witness testimony.); Donald R. C. Pongrace, *Requirement of Notice of Third-Party Subpoenas Issued in Sec Investigations: A New Limitation on the Administrative Subpoena Power*, 33 AM. U. L. REV. 701, 745 (1984) ("The SEC conducts as many as 1200 formal investigations a year, 1982 SEC ANN. REP. 118, and issues thousands of subpoenas in aid of these investigations."). It would be absurd to require the recipients of those hundreds or thousands of subpoenas to intervene when served with a subpoena and clog up the federal courts in an effort to preserve a speculative right that they *may* need to exercise in the future.

### 4. Wells Fargo Could Not Intervene Until It Satisfied the District Court's Strict Meet-and-Confer Requirements.

The district court held, and the FTC and Receiver argue, that Wells Fargo's intervention was untimely because it did not intervene when the Wells Fargo Litigation was filed on July 8, 2021, or when the SIA Transact Pro Defendants

18

moved to modify the Stipulated Judgments in the *Apex* case on July 9, 2021. 1-ER-7; Receiver Br. at 26-27; FTC Br. at 30. That holding ignores the undisputed facts that the Court's Standing Order would have made intervention inappropriate at that time.

In making this finding, the district court failed to acknowledge that its own Standing Order, which it vigorously enforces, requires parties to meaningfully meet and confer before filing motions. 4-ER-730 ("Counsel should discuss [in the pre-filing conference] the issues with sufficient detail so that if a motion is still necessary, the briefing may be directed to those substantive issues requiring resolution by the Court.") (citing L.R. 7-3); FER-48, 49, 50 (striking motions for failure to comply with the Standing Order). *see also Johnson-Bennett v. Select Portfolio Servicing, Inc*., No. CV 15-5408-JFW (JCX), 2015 WL 12806455, at *1 (C.D. Cal. July 24, 2015) (the district court struck the defendants' motion to dismiss for failure to comply with the Court's Standing Order requiring a L.R. 7-3 conference). The district court's Standing Order is more stringent than the local rules and requires the parties to meet and confer in real time communications at least five days before filing a motion. 4-ER-731. It also requires counsel to file a joint statement "indicating the date, duration, and communication method of the conference and the participants in the conference. In addition, the joint statement shall detail the issues discussed and resolved during the conference and the issues

remaining. **Failure to strictly comply with the Court's requirements or Local Rule 7-3 will result in the striking and/or the denial of the motion.**" *Id.* (emphasis added). The record in this case shows that the district court strictly enforces the meet-and-confer requirement as it struck motions that failed to strictly comply with it. *See* FER-48, 49, 50 (striking motions for failure to comply with the Standing Order). In accordance with the district court's Standing Order, Wells Fargo engaged in good-faith discussions with the FTC and the Receiver about its initial framing of a motion to intervene in August 2021. As a result of the required meet and confer, Wells Fargo revised its planned motion, which would have targeted vacating the Stipulated Judgments in their entirety. Opening Br. at 36, 37. After thoroughly considering the FTC's and the Receiver's arguments, Wells Fargo adopted a narrower approach of challenging the orders granting the Receiver authority to pursue Wells Fargo. 2-ER-76–77. Taking the time to meaningful comply with the district court's Standing Order was not only required, but it also did not prejudice the parties in any way because there was no activity in the case during this time. To find Wells Fargo's motion untimely because Wells Fargo was following the district court's own, strictly enforced Standing Order would put intervenors in an unfair bind.

### 5. The District Court Abused Its Discretion in Finding that Wells Fargo Brought Its Motion Late in the Proceeding.

The district court abused its discretion in finding that intervention was untimely because the case was closed since January 2020. 1-ER-8. As an initial

matter, the case is not closed. The district court has left the case open and has retained jurisdiction permitting the Receivership to continue to complete the Receiver's work. 2-ER-189, 159, 158. Moreover, the district court has continued to enter separate orders, at the Receiver's request, to modify the Stipulated Settlements to extend the termination date of the Receivership, most recently to September 1, 2023. FTCSER-1.

The Receiver argues the district court recognized that "granting the relief Wells Fargo seeks would undoubtedly affect the stipulated judgments" which "were entered on September 11, 2019" and should not be disturbed at this point. Receiver Br. at 33. But that is not supported by the record. In the same vein, both the FTC and the Receiver repeatedly, mistakenly claim that Wells Fargo seeks to vacate the Stipulated Judgments. That is also wrong. As Wells Fargo has expressly stated multiple times in the underlying intervention briefing, and in its opening brief, Wells Fargo seeks intervention solely to challenge the district court's orders granting the Receiver authority to pursue monetary damages against Wells Fargo. *See* 2-ER-59, 69, 70, 75, 78; FER-20, 28, 35, 37; Opening Br. at 1, 3, 18, 21, 23, 30, 31.

Put differently, it is an abuse of discretion for a district court to continue to authorize a Receiver, who was initially empowered under Section 13(b), to pursue a monetary judgment secured under Section 13(b), when *AMG Capital* held that no monetary judgments can be permissibly secured under Section 13(b). The district

court in its ruling denying the SIA Transact Pro challenge to the Stipulated Judgments found that "the portion of the Stipulated Judgment granting the FTC equitable monetary relief was erroneous because it was not authorized by Section 13(b)." FTCSER-121. Given this concession that the monetary relief was impermissibly secured, the question simply becomes whether a district court can properly act within its discretion to authorize a receiver – and in this case, a receiver empowered under Section 13(b) – to pursue future monetary relief based on that erroneous judgment post *AMG Capital.* This is the question that Wells Fargo presents and is doing so without disturbing the prior Stipulated Judgments. The Stipulated Judgments will continue to stand – they just will not be buttressed by additional funds prospectively secured from Wells Fargo. That is the distinction that the district Court, the FTC, and the Receiver fail to recognize, and incorrectly interpret as Wells Fargo challenging the Stipulated Judgments.

Additionally, not only does Wells Fargo's intervention not disturb the Stipulated Judgments it also does not disturb the Receiver's other, ongoing work to marshal the assets of the Apex entities. Indeed, on October 28, 2022, the Receiver filed his Sixth Interim Status Report to the district court outlining his "continued [] progress on liquidating the few remaining assets of the Receivership Estate" on several fronts: (1) collecting quarterly interest payments from an entity on matured promissory notes worth $1 million; (2) active litigation and settlement in Greece to

22

pursue recovery of loans totaling € 2.1 million made by an Apex Defendant to Greek entities; and (3) sale of eight pieces of art work. FER-6–8. Notably, the Receiver includes an accounting of the Receivership, and notes that substantial receipts and disbursements were made, including $1.2 million to the FTC to redress consumers. FER-8–9. Clearly, the Receiver's efforts are ongoing and distinct from the Wells Fargo Litigation, and Wells Fargo's challenge to the Receiver's pursuit of Wells Fargo will have no effect of the Receiver's other, separate efforts as outlined in his report.

### 6. The District Court Abused its Discretion in Finding Prejudice.

Significantly, the district court's finding that Wells Fargo's motion to intervene was untimely did not properly assess the lack of prejudice to the parties on account of the timing of the motion. To properly assess timeliness, courts must analyze the prejudice to the other parties. *See Smith*, 830 F.3d at 854. A "'[m]ere lapse of time alone is not determinative'…prejudice to other parties in connection with the proposed intervention is a[n] … important factor in the timeliness determination." *Smith v. Marsh*, 194 F.3d 1045, 1051 (9th Cir. 1999) (citing *Orange Cnty. v. Air Cal.*, 799 F.2d 535, 537 (9th Cir. 1986)). There is no support for the district court's improper determination that the other parties in the *Apex* litigation were prejudiced because: (1) Wells Fargo did not intervene at the time the SIA

Transact Pro Defendants filed their motion to challenge the Stipulated Judgments; and (2) the case was closed since January 2020. 1-ER-7–8.

The parties were not prejudiced by having to litigate the same issues twice because Wells Fargo's motion is not predicated on the Stipulated Judgments but is predicated on the orders giving the Receiver authority to pursue Wells Fargo. In short, it is not the same issue. Wells Fargo *is not seeking to modify the Stipulated Judgments,* like the SIA Transact Pro Defendants were. And just as importantly, the same legal issues were not before the district court because the SIA Transact Pro Defendants, as the Court pointed out and unlike Wells Fargo, voluntarily agreed to be bound by the Stipulated Judgments and were attempting to apply *AMG Capital* retrospectively, instead of prospectively, in order to unwind the Stipulated Judgments they knowingly and voluntarily entered into. Because the basis for Wells Fargo's intervention is different than the SIA Transact Pro Defendants, Wells Fargo was not required to intervene at that time, and not doing so does not present any prejudice to the parties because they are required to re-litigate any issues already decided by the district court. *See, e.g.*, *U.S. v. State of Or.*, 745 F.2d 550, 553 (9th Cir. 1984) (finding no prejudice, in part, because the parties would not have to relitigate matters).

Wells Fargo seeks to vacate or modify the orders authorizing the Receiver to prospectively pursue litigation against Wells Fargo based on those Stipulated

Judgments. The district court has specifically kept the case open for the purpose of monitoring to the Receiver's activity. 2-ER-189, 159, 158. A finding of prejudice on this basis is completely unsupported by the record and is an abuse of discretion.[4]

## CONCLUSION

For these reasons and those the opening brief, this Court should reverse the order denying Wells Fargo's motion for intervention.

Dated: December 1, 2022              Respectfully submitted,

                                     /s/ Brian D. Schmalzbach
                                     Brian D. Schmalzbach
                                     MCGUIREWOODS LLP
                                     800 East Canal Street
                                     Richmond, VA 23219
                                     T: (804) 775-1000
                                     bschmalzbach@mcguirewoods.com

                                     David C. Powell
                                     Alicia A. Baiardo
                                     MCGUIREWOODS LLP
                                     Two Embarcadero Center
                                     Suite 1300
                                     San Francisco, CA 94111
                                     T: (415) 844-9944
                                     dpowell@mcguirewoods.com
                                     abaiardo@mcguirewoods.com

---

[4] Because the district court denied permissive intervention based on the same legal errors, the same analysis would require reconsideration of Wells Fargo's motion under Rule 24(b) on remand. *See* Opening Br. at 43.

Kevin M. Lally
MCGUIREWOODS LLP
355 South Grand Avenue
Suite 4200
Los Angeles, CA 90071
T: (213) 457-9862
klally@mcguirewoods.com

*Counsel for Movants-Appellants Wells*
*Fargo & Co. and Wells Fargo Bank, N.A.*

<u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the length limitations in 9th Cir. R. 32-1(b) because it contains 6,133 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point size Times New Roman font.

Dated:  December 1, 2022          */s/ Brian D. Schmalzbach*
                                                    Brian D. Schmalzbach

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2022, the foregoing was filed with the Clerk of the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system, which will also serve counsel of record.

Dated: December 1, 2022          */s/ Brian D. Schmalzbach*
                                 Brian D. Schmalzbach